COLLEEN S. O'NEAL, ESQ. SBN: 108042
LAW OFFICE OF COLLEEN S. O'NEAL
988 Kenmore Ln.
Santa Rosa, California 95407
Telephone: (707) 696-8514
Email: colleensoneallegal@gmail.com

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANINE NARETTO, MATTHEW ERICKSON, KAMONCHANOK CHUMWANGWAPA, EUGENE REILLY DRAKE, JONATHAN THOMAS HOLDWAY, individuals; HOMELESS ACTION! an unincorporated association, on behalf of itself and those it represents; <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF PETALUMA, PETALUMA POLICE DEPARTMENT, KEN SAVANO in his official capacity, and DOES 1 through 20, in their official capacities, <br><br> Defendants. | Case No. 21-mc-80240-EMC <br><br> **FIRST AMENDED COMPLAINT FOR INJUNCTIVE, DECLARATORY, AND MONETARY RELIEF** <br><br> DEMAND FOR JURY TRIAL <br><br> Complaint filed: October 5, 2021 |

1

**INTRODUCTION**

1.  Plaintiffs are five unhoused individuals and one organizational plaintiff who live or operate at Steamer Landing Park ("Steamer Landing"), in Petaluma, Sonoma County, California.  Steamer Landing is a 9.7-acre public park and includes benches, three picnic tables, and a barn.  Steamer Landing also has a fire pit and two parking lots.

2.  Plaintiffs seek a Court order preventing the City from discriminating against the disabled unhoused residents of Steamer Landing and preventing unconstitutional practices against the most vulnerable group of individuals who need assistance not further trauma.

3.  Plaintiffs expect that the City will likely continue the same pattern of forcibly removing unhoused residents of Steamer Landing without proper placements.  This year alone Defendants evicted Steamer Landing residents two times without first providing proper placements (April 30, 2021, and June 10, 2021).  On Saturday, October 2, 2021, the City posted the third Notice to Vacate at the Steamer Landing encampment in one year.  The instant TRO prevented the City of Petaluma from once again sweeping the unhoused from Steamer Landing.

4.  Based on Petaluma's past practice of on-site property destruction, Plaintiffs expect that the City will likely continue the same pattern of destroying Steamer Landing residents' property and fail to provide adequate time to remove their property and/or store

First Amended Complaint For Injunction, Declaratory, And Monetary Relief, Case No. 21-MC-80240-EMC

any unabandoned non-hazardous property that residents did not have an opportunity to remove.

5. On October 22, 2021, Defendants were given the names of **13** individuals residing at Steamer Landing who were requesting reasonable accommodations in non-congregate shelter placements, **9** individuals who were requesting a placement in the shelter, and were informed of three individuals who had complex and severe mental health conditions. Defendants were also notified that there were at least **10** individuals who Plaintiffs had not contacted.

6. On Wednesday November 24, 2021, just before the beginning of the Thanksgiving holiday, Defendants informed Plaintiffs that they would be out at Steamer Landing Park on November 29, 2021, starting at 9 a.m. to complete applications for placements. Defendants further informed Plaintiffs that Committee on the Shelterless ("COTS") staff would be primarily focused on the list of 24 community members previously identified in their October 22, 2021, correspondence.

7. On November 29, 2021, prior to the scheduled arrival of the COTS staff at Steamer Landing, Plaintiffs provided Defendants with an updated list which included 8 new reasonable accommodation requests and 3 requests for congregate shelter.

8. On November 29th Steamer Landing residents lined up to complete applications and the COTS representatives were busy the entire time doing intakes. Steamer Landing residents were still coming to the table to request intakes as COTS staff were packing up. A number of Steamer Landing residents were unable to complete intakes prior to COTS

3

packing up on Nov. 29th and a couple of residents were able to complete intake the following day.  The County's COVID testing staff was at Steamer Landing to do COVID testing but were not able to stay for the entire time.

9.  Plaintiffs were informed on or about November 30, 2021, that the Sonoma County Health officials temporarily prevented intakes at Mary Isaak Center Emergency Shelter ("MIC"), the congregate shelter due to a resident testing positive for Covid.

10. On December 1, 2021, Plaintiffs informed Defendants that there were Steamer Landing residents who had not had an opportunity to complete their applications.

11. On or about December 2, 2021, **six** Steamer Landing residents who were identified by Plaintiffs on October 22, 2021, were placed in non-congregate shelter placements at Petaluma People Services, 1500 Petaluma Blvd South, Petaluma, CA ("PPS"). Those that entered PPS include Ron Potter, Robert Tournahu, Sharon McQuillen, Janine Naretto, Jonathan Thomas Holdway, and Bradley Brown.  Plaintiffs are informed that placements at PPS will be available for only 90 days.

12. As of December 10, 2021, there were approximately **34** individuals residing at Steamer Landing in tents or vehicles.

13. On information and belief, as of December 15, 2021, the City currently has 5 non-congregate shelter placements and at least 16 disabled Steamer Landing residents have outstanding Reasonable Accommodation requests and have not been offered adequate placements.  Further, there are at least **five** Steamer Landing residents who Plaintiffs believe need reasonable accommodations but have not requested them due to

4

their complex and severe disabilities preventing them from doing so including: Dale Hart, Zack, Anthony (tent next to Zack), a Latino male (near Matthew Irving), and disabled white male (near Matthew Irving). **Four** individuals waiting for placements at MIC congregate shelter are as follows: Joel Silva, Edwin Reyes Caballero, Eric Conroy and Daniel Randall.

14. Plaintiffs bring this action to enjoin the enforcement of the closure of the Steamer Landing Park encampment until:

> a. Each disabled individual requesting reasonable accommodations in non-congregate shelter placements has had an opportunity to engage in the interactive process with Defendants to discuss disability related needs for the requested accommodation and each has had an opportunity to be placed at the non-congregate shelter placement,
>
> b. Each individual residing at Steamer Landing who has requested a placement at the Mary Isaak Center emergency shelter has had an opportunity to be placed at the shelter.
>
> c. That those Steamer Landing residents who have not had an opportunity to be placed in adequate placements be allowed to remain at the Steamer Landing encampment until such placement becomes immediately available and the resident has had an opportunity to relocate.
>
> d. Plaintiffs also bring this action to enjoin the unlawful seizure of property and to order Defendants to comply with 4th am search and seizure

5

protections and 14th amendment due process standards, including proper bagging, tagging, and storage of property that Steamer Landing residents are unable to remove before a sweep.  That those encampment residents requesting additional time to remove their property be given a reasonable opportunity to do so.

## JURISDICTION AND VENUE

15. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, 42 U.S.C. § 12132 and 42 U.S.C. § 1983 because Plaintiffs' claims arise under the Laws and Constitution of the United States.  Jurisdiction also exists under the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202.

16. Venue is proper in the Northern District of California because the events and conduct complained of herein all occurred in Sonoma County.

## PLAINTIFFS

17. Plaintiffs JANINE NARETTO, MATTHEW ERICKSON, KAMONCHANOK CHUMWANGWAPA, EUGENE REILLY DRAKE, and JONATHAN THOMAS HOLDWAY, are unhoused individuals who reside at the Steamer Landing encampment.

18. Plaintiff HOMELESS ACTION! (hereinafter HA!), an unincorporated association, is a group of grassroots activists in Northern California working towards ending the suffering of people who do not have a home.  HA! works with and for homeless people in Sonoma County.  HA! is made up of housed and unhoused individuals and advocates. Named plaintiffs are HA! members.

6

First Amended Complaint For Injunction, Declaratory, And Monetary Relief, Case No. 21-MC-80240-EMC

19. HA! has helped create safe parking programs, held events, protests, and marches, educated the public, done emergency response work, lobbied county and city officials, provided unhoused people with food, clothing, tents, etc. and published articles in local papers.

20. Ensuring that the residents of Steamer Landing are not forcibly removed from the Steamer Landing camp without alternative shelter, that their personal possessions are not seized and destroyed without pre-deprivation process of law, and that residents with disabilities are offered referrals appropriate to their disability-related needs is consistent with the mission and purpose of HA!, and the planned sweep of the Steamer Landing encampment would frustrate that mission.

## DEFENDANTS

21. Defendant City of Petaluma ("City") is a municipal corporation organized under the laws of the state of California and the Petaluma City Charter, with the capacity to sue and be sued. The acts complained of herein constitutes policies, practices and customs of the City.

22. The Petaluma Police Department ("PPD") is an agency of Petaluma and as such, separately sueable as a public entity. The acts complained of herein constitutes policies, practices and customs of the PPD.

23. Defendant Ken Savano ("Savano") is the Police Chief of the PPD, and the PPD

First Amended Complaint For Injunction, Declaratory, And Monetary Relief, Case No. 21-MC-80240-EMC

policymaker.  As such, Plaintiffs are informed and believe and based thereon allege

Savano is responsible for enforcing PPD policies on the interpretation and/or application

of California Vehicle Section 22651 (o).  Plaintiffs are informed and believe that Savano

has ratified and/or approved of the unconstitutional acts complained of herein.  Savano is

sued in his official capacity.  The acts complained of herein constitute policies, practices

and customs of the PPD.

24. Plaintiffs are ignorant of the true names and capacities of Defendants sued

herein as DOES 1 through 20 inclusive, and therefore sues these Defendants by such

fictitious names. Plaintiffs sue Doe Defendants to add, if necessary, other Defendants,

and who otherwise are appropriate and/or necessary to allow Plaintiffs to fully pursue

their claims.

25. Defendants, and each of them, at all times relevant hereto, were acting

under color of state law and are recipients of federal funds.

///

///

///

8

## STATEMENT OF FACTS

26. According to the 2020 Sonoma County Homeless Census Comprehensive Report ("Homeless Census Report") there are 296 unhoused individuals in the City of Petaluma.[1] Of those 40 percent of unhoused persons surveyed identified as having a disability.[2] Moreover, 28 percent of unhoused persons were counted in vehicles. [3]

27. The 80 emergency congregate shelter beds at Mary Isaak Center ("MIC") that are offered to all of the 2,745 unhoused persons in the County are insufficient for the size of the unhoused in the City of Petaluma and the County. [4]

28. The lack of adequate placements in the City of Petaluma have forced unhoused individuals to live outside.  This is especially true for unhoused disabled individuals who are unable to accept congregate shelter beds.

29. Rather than providing adequate placements that accommodate their disability related needs, and complying with statutory and constitutional requirements, the City has instead chosen to place the health, safety, and lives of unhoused individuals at risk by

---

[1] At page 12
https://srcity.org/DocumentCenter/View/30661/2020_Sonoma_County_Homeless_Census_Comprehensive_Report

[2] At page 8
https://srcity.org/DocumentCenter/View/30661/2020_Sonoma_County_Homeless_Census_Comprehensive_Report
[3] At page 12
https://srcity.org/DocumentCenter/View/30661/2020_Sonoma_County_Homeless_Census_Comprehensive_Report
[4] https://cots.org/housing/ ;

9

evicting unhoused individuals from place to place and seizing essential property including vehicular homes, and thereby causing further trauma and instability.

30. The City swept Steamer Landing in 2020. Attached as **Exhibit B** is a copy of a citation one individual received for camping at Steamer Landing in 2020. At that time the City failed to offer all the residents immediately available and adequate placements and destroyed personal property.

31. In April of 2021 the City swept Steamer Landing where about three dozen residents were evicted.[5] Many of those previously evicted from Steamer Landing park were not offered adequate placements and were unable to remove their personal belongings prior to leaving their former encampments. The City destroyed all of the property that residents were unable to gather before the heavy equipment destroyed property. In April of 2021 Steamer Landing encampment residents lost tents, food, water, and survival gear when the City of Petaluma destroyed their property.

32. Again, on June 7, 2021, Petaluma Police Department posted a 72-Hour Notice to Vacate at Steamer Landing. Steamer Landing residents were given until June 10, 2021, to vacate the park and remove their property. On information and belief, there were approximately 20 individuals who were not offered proper placements before the sweep.

33. Pursuant to Coordinated Entry and MIC procedures Steamer Landing residents

---

[5] Petaluma leaders search for solutions amid homeless crisis (petaluma360.com)

First Amended Complaint For Injunction, Declaratory, And Monetary Relief, Case No. 21-MC-80240-EMC

would not have been able to secure placements within 72 hours. That is especially true for those who are disabled and required non-congregate shelter placements.

34. Defendants' agent MIC emergency shelter requires unhoused individuals seeking emergency shelter to complete a pre-application which would add their name to MIC's internal waitlist or to go through coordinated entry.[6] MIC's practice is that unhoused individuals complete the pre-application and then wait to be called. Many do not have phones. Assuming there is availability, it takes at least a week for a placement. MIC takes applications (but not necessarily intakes) for the shelter from 11:30a.m.-12:30 p.m. and from 5:00p.m.-6:00 p.m. Monday through Friday. No applications or intakes are done on the weekends.

35. Defendants again intend to close this encampment without providing sufficient placement opportunities for its residents prior to the evictions.

36. While the City states that it has 20-25 beds at MIC, they have not offered immediately available placements for the shelter or for all those residing at Steamer Landing requiring non-congregate placements based on disabilities. On November 30, 2021, Plaintiffs were informed that MIC emergency shelter was not taking intakes due to a MIC resident testing positive for COVID at the shelter.

37. While the City created 11 non-congregate units for Steamer Landing residents on

------

[6] Need Help? - C O T S

11

December 2, 2021, the units will only be available for 90 days and there are at least another **20** disabled Steamer Landing residents who still need non-congregate placements.

38. Plaintiffs are informed that the City currently anticipates that 10 tiny home units could still be completed by December 31, 2021 as there have been further delays in the Petaluma People's Village (tiny homes village). [7]

39. The City of Petaluma has an anti-camping ordinance which makes it illegal to camp on public property without prior approval from the City. The City's anti-camping ordinance 13.28.180 (H) provides that no person, shall camp unless written permission has been obtained from the director.[8] Plaintiffs have not received written permission from the director. As such, the only viable camping option is to camp in unsanctioned encampments on public and private land.

40. On information and belief, in the past year the City has increased its enforcement of the camping ordinance and related quality of life laws to force unhoused people to move without first providing alternative adequate placements.[9]

41. On information and belief, on September 15, 2021, in an effort to force unhoused

---

[7] Petaluma officials hopeful for 'tiny homes' following shipping delays (petaluma360.com)
[8] https://petaluma.municipal.codes/Code/13.28.180
[9] Petaluma police seek to address long-parked vehicles (pressdemocrat.com) 12-4-21;

First Amended Complaint For Injunction, Declaratory, And Monetary Relief, Case No. 21-MC-80240-EMC

people to move without first being provided alternative adequate placements, the City turned off the water in the park that the Steamer Landing encampment residents used for cooking, cleaning, and bathing. It wasn't until September 17, 2021, when Steamer Landing camp residents had a protest to demand the water be turned on that the City restored the water a few days later.

42. On or about, Saturday October 2, 2021, the Petaluma Police Department ("PPD") served a "72 Hour Notice to Vacate Illegal Campsite & Debris Removal". The Notice indicated that Steamer Landing encampment residents had 72 hours to vacate, or they would be subject to arrest and their property seized. The PPD Notice provided that if they did not vacate the encampment they would face arrest and prosecution including Penal Code 602-trespass, Penal Code Section 647 (e) - unlawful lodging, and Petaluma Municipal Code Section 13.28.180-prohibits camping without permission. The Notice to Vacate was set to expire on Tuesday, October 5, 2021. A copy of the Notice is attached to this complaint as **Exhibit A**. This represents the third sweep of homeless residents this year.

43. The emergency beds at the MIC are not appropriate for many of those living with disabilities including mental disabilities. Many Steamer Landing residents have indicated that being in congregate shelter placements triggers symptoms of their PTSD or other mental health and anxiety disorders. For many, being in congregate shelters where they lack privacy and/or where they cannot control their surroundings exacerbate the symptoms of their disabilities.

13

1

**JANINE NARETTO**

2

3

44. Plaintiff JANINE NARETTO is a 67-year-old grandmother who has lived at

4

Steamer Landing Park ("Steamer Landing") for approximately the past 2 years. She was

5

raised in Sonoma County and has been unhoused for over two decades. Janine cannot

6

afford a home to rent in Sonoma County on her monthly Social Security check.

7

45. Her previous experience at MIC of being subject to eviction without due process

8

9

makes the prospect of returning to MIC untenable for plaintiff Naretto given the anxiety

10

these conditions create. During her previous shelter stays she has not received any

11

assistance with finding permanent supportive housing other than receiving a voucher in

12

13

2018. She was unable to find a landlord that would rent to her due to her low credit score

14

and the voucher expired. Ms. Naretto suffers from severe high blood pressure, which is

15

exacerbated by anxiety and stressful situations. Further, due to her mobility disabilities

16

17

Ms. Naretto relies on assistance from others for things such as assistance with cooking

18

and other daily living needs and needs to be in permanent supportive housing where she

19

is able to have an in-home support caregiver. Ms. Naretto is a qualified individual with

20

21

disabilities within the meaning of the Americans with Disabilities Act ("ADA"), 42

22

U.S.C. § 12102.

23

46. On October 22, 2021 Ms. Naretto requested a reasonable accommodation in a non-

24

25

26

27

28

14

First Amended Complaint For Injunction, Declaratory, And Monetary Relief, Case No. 21-MC-80240-EMC

congregate shelter placement. That accommodation was granted on or about December 2, 2021. Ms. Naretto was placed at the Petaluma Blvd winter shelter for 90 days. She does not know where she will go after 90 days.

## MATTHEW ERICKSON

47. Plaintiff MATTHEW ERICKSON resides at Steamer Landing Park encampment in a small trailer. Mr. Erickson was in a car accident 11 years ago that has left him with brain damage which changed his behavior. Mr. Erickson's disabilities include anxiety, schizophrenia and personality disorders (mental disabilities) causing anxiety of people, places and things. Mr. Erickson is a qualified individual with disabilities within the meaning of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102.

48. A shelter bed at MIC is functionally unavailable for Mr. Erickson as the conditions of shelters, including the high noise level would trigger his anxiety symptoms. Mr. Erickson needs to be in a private place where he is able to get up and leave when his anxiety symptoms are triggered, something that is not available at shelters. Mr. Erickson also cannot go into a placement where his movement would be restricted.

49. Mr. Erickson was swept from the west side of Steamer Landing over a year ago and lost many of his possessions at that time. In addition to the threats of citation/arrest occasioned by the Notice to Vacate/Debris Removal, Petaluma Police Department officers have threatened to impound his trailer and have seized and destroyed property which he was unable to place inside his trailer, including building materials which he uses to build furniture. The threat of impoundment terrifies him and exacerbates his

15

disabilities, including anxiety, as his trailer contains all his tools and other possessions. The City of Petaluma does not have any safe parking lots where Mr. Erickson can park his small trailer and as a result Mr. Erickson remains at risk for having his trailer impounded. Since he has minimal income, he would not be able to afford to pay the impound fees in order to retrieve his trailer from impoundment.

50. On October 22, 2021, Mr. Erickson requested a reasonable accommodation in non-shelter placement. Mr. Erickson has been offered a placement at the Petaluma Blvd winter shelter however, that placement is only for 90 days, and he is unable to park his trailer at PPS. The thought of having to choose between a 90-day placement and getting rid of his trailer that has been his home for over 9 months is exacerbating his disabilities and preventing Mr. Erickson from accepting a placement at PPS. Mr. Erickson is awaiting a response from the Petaluma Blvd shelter regarding whether he will be allowed to park his trailer at the shelter.

## KAMONCHANOK CHOMWANGNAPI

51. Ms. Chomwangnapi was born in Thailand and goes by the nickname Nok. Ms. Chomwangnapi immigrated to California at age 15. She became unhoused about six months ago when she was no longer able to pay the rent on her San Francisco apartment. Most recently, she worked for four years as a home care assistant in San Francisco but had to give it up when she could no longer afford to live there. She has completed three years of English, her high school degree and about one year of a certified nursing assistant program.

16

52. Ms. Chomwangnapi and her partner Mr. Reilly both moved from Steamer Landing Park to a spot under a freeway overpass when the October 2nd notice was posted for fear of being arrested and/or losing their belongings. They returned to the park after the TRO was granted.

53. Ms. Chomwangnapi has high blood pressure and is also a self-described slow learner. She was diagnosed as autistic in Thailand. Ms. Chomwangnapi is partners with Plaintiff Drake and acts as his care provider, keeping him on a consistent regimen with his medications, making his doctor appointments, and getting him to work on time.

54. On October 22, 2021, Ms. Chomwangnapi and Plaintiff Drake requested a reasonable accommodation for a non-congregate shelter placement. On December 2, 2021, they were offered a placement at the Petaluma Blvd winter shelter for 90 days but were told they could not cook or use the refrigerator to store fresh fruits and vegetables. This is despite the fact that they have been informed that the former families that had been using the facility were allowed to use the refrigerator and kitchen. Ms. Chomwangnapi is pregnant and requires having access to fresh fruits and vegetables. On December 2nd Ms. Chomwangnapi and Plaintiff Drake were informed that they were unable to take their emotional support animals, two female mice, without a doctor note. They set up an appointment to obtain a doctor note, however, on December 8th were informed through the City's legal representative that they would not allow their two emotional support animals.

55. In about mid-November Ms. Chomwangnapi and Plaintiff Drake were told by Mr.

17

Drake's case worker at the North Bay Regional Center that they would be receiving a housing voucher and would be in an apartment within two weeks. They are currently staying in a motel while waiting for a housing placement.

**EUGENE REILLY DRAKE**

56. Plaintiff EUGENE REILLY DRAKE was born in Fort Bragg, CA and moved to Petaluma when he was two years old. He graduated from the vocational high school and has lived in group homes prior to moving to Steamer Landing. Mr. Drake is bi-polar and receives SSI benefits for his disabilities.

57. Mr. Reilly and Ms. Chomwangnapi both moved from Steamer Landing to a spot under a freeway overpass when the October 2nd notice was posted for fear of being arrested and/or losing their belongings. They returned to the park after the TRO was granted.

58. Mr. Drake is unable to be in large, crowded shelters due to his bi-polar diagnosis, ADHD, depression. He is partners with Plaintiff Chomwangnapi and relies on her to maintain his medication regimen and calm him down when he gets agitated. Mr. Drake is a qualified individual with disabilities within the meaning of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102.

59. On October 22, 2021, Mr. Drake requested a reasonable accommodation in non-congregate housing. On December 2, 2021, Mr. Drake and Ms. Chomwangnapi were offered a placement at the Petaluma Blvd winter shelter however, that placement is only

18

for 90 days.  Further, Mr. Drake was initially informed he could take his emotional

support animals with a doctor's note.  That was later rescinded without discussion.  In

about mid-November Mr. Drake was told by his case worker that they would be receiving

a housing voucher and would be in an apartment within two weeks.  They are temporarily

staying in a motel while waiting for a housing placement.

## JONATHAN THOMAS HOLDWAY

60. Mr. Holdway had been residing at Steamer Landing for approximately the past

year.  Mr. Holdway first became homeless as a result of the Tubbs fire in October of

2017.  Mr. Holdway suffers from PTSD and cannot be in confined spaces.  Mr. Holdway

is a qualified individual with disabilities within the meaning of the Americans with

Disabilities Act ("ADA"), 42 U.S.C. § 12102.

61. Mr. Holdway has stayed at MIC but as documented in Defendants' pleadings,

during each stay he slept outside of the shelter under the dryer vent.  Sleeping outdoors of

MIC provided a warm, dry place where he was not subjected to harassment by the police.

62. On or about September 29, 2021, a week before the planned sweep, Mr. Holdway

was residing at Steamer Landing in his van, which was safely parked in a parking space

at Steamer Landing, when the Petaluma Police Department seized his vehicular home for

lack of registration.  The registration fees had been paid off but there was a mix up with

the DMV paperwork.  When the vehicle was impounded, Mr. Holdway was not offered

an alternative placement.  Further, Mr. Holdway was told he only had five minutes to

First Amended Complaint For Injunction, Declaratory, And Monetary Relief, Case No. 21-MC-80240-EMC

take what he could out of his vehicular home. Mr. Holdway was unable to retrieve most of his essentials and instead was forced to seek food, tent, and blankets from others residing at Steamer Landing. Mr. Holdway had no alternative but to set up a tent in the dirt at Steamer Landing.

63. Mr. Holdway was only able to retrieve his vehicular home after a donation assisted him in paying for the impound fees in the amount of approximately $968.00 which included a release fee paid to Petaluma Police Department of $168.00.

64. On December 2, 2021, pursuant to his request for accommodations Mr. Holdway was offered a placement for 90 days at the Petaluma Blvd winter shelter where he is currently residing. Mr. Holdway is concerned about where he will go after the 90 days is up. Just last week a Petaluma Police Department warned Mr. Holdway about being parked in the same place for more than 72 hours.

**HOMELESS ACTION!:**

65. Ensuring that the residents of the Steamer Landing Park Encampment are not forcibly removed from the Steamer Landing site, that residents with disabilities are offered alternative options that are appropriate to their disability-related needs, that all Steamer Landing residents who are able to accept a placement at MIC are placed prior to the sweep, and that their personal possessions are not seized and destroyed without pre-deprivation process of law is consistent with the mission and purpose of Homeless Action!, and the planned sweep of the Steamer Landing Encampments would frustrate that mission.

20

66. Homeless Action! has provided advocacy and supplies to the Steamer Landing encampment residents. Homeless Action! brings this suit on behalf of itself and on behalf of the homeless individuals it supports at the Steamer Landing encampment. Homeless Action! has had to divert resources to providing advocacy and support to those at Steamer Landing facing evictions, including individually named plaintiffs.

## CLAIMS

### FIRST CLAIM FOR RELIEF

### Violation of Americans with Disabilities Act

### (42 U.S.C. § 12132)

67. Plaintiffs reallege and incorporate the allegations set forth in the preceding paragraphs as though fully set forth herein.

Title II of the ADA 42 U.S.C. § 12132, provides in pertinent part that:

"[N]o qualified individual with a disability shall, by reason of such disability, be … excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

68. At all times relevant to this action, the Named Plaintiffs and those similarly situated parties represented by Homeless Action! were each "qualified persons with disabilities" as defined under the ADA. 42 U.S.C. § 12102, 42 U.S.C. § 12131; 28 C.F.R. §35.104.

69. California incorporates all of these federal protections into state law, such that

21

violations of the ADA are also state law violations and also contains a broad and

independent disability civil rights mandate. (Cal. Gov't Code Section 1135 et seq.)

70. The term "disability" includes persons with mental or physical impairments that

limit one or more major life activities. 42 U.S.C. § 12102, Cal. Gov't Code § 12926 (i)

(medical condition), 12926(j) (mental disability).

71. Under the ADA's broad language, a "program, service, or activity" includes within

its scope "anything a public entity does." *Yeskey v. Pennsylvania Dep't*

*of Corr.*, 118 F. 3d 168, 171 & n. 5 (3d Cir. 1997), *aff'd* 524 U.S. 206 (1998)

(quoting 28 C.F.R. Pt. 35, App. A, preamble to ADA regulations).

72. The actions of Defendants alleged in this Complaint relate to services, programs,

and activities under Title II.  Many members of Homeless Action! and Steamer Landing

residents are persons with disabilities.

73. At all times relevant to this action, Defendants, their employees and agents, were

public entities within the meaning of Title II of the ADA and provided programs,

services, or activity to the general public.

74. Defendants' forcible removal from Steamer Landing Park will have a disparate

impact on people with disabilities who are unable to enter into congregate emergency

shelters.  By Defendants own accounts, the City only has 20-25 beds at an emergency

shelter and 11 non-congregate winter shelter beds that are available for 90 days.

Accordingly, if the eviction is allowed to proceed, those with disabilities which prevent

them from being in congregate shelters will be forced to move or threatened with citation

22

and/or arrest as currently the City has only made 11 non-congregate shelter placements available for the 20 individuals needing non-congregate placements.

75. Forcibly evicting residents of the Steamer Landing encampment without first offering immediately available adequate alternative placements that meets the individualized needs of people with disabilities and by refusing to postpone the sweep as a reasonable modification, does not serve any sufficiently compelling legitimate interest of Defendants and discriminates against Plaintiffs and those similarly situated on the basis of their disabilities under the ADA.

76. The various public parks offered to its residents are "services, programs, or activities" of the City. In addition, the City's enforcement of seizure of vehicles is a service, program, or activity of the City.

77. Defendants' policies and practices in evicting unhoused individuals from public places and failing to provide adequate alternative placements violate Plaintiffs' rights on the basis of their disabilities. 28 C.F.R. § 35.130(b)(3).

78. The acts and omissions of the Defendants, their agents and employees, subjected Named Plaintiffs to discrimination on the basis of their disabilities in violation of Title II of the ADA by failing to offer adequate alternative placements that are immediately available.  In addition, the discrimination, has caused injury to Plaintiff Homeless Action via the frustration of its mission and the diversion of its resources.

79. Defendants knew, or should have known, that the incidence of disabilities for

23

people who are homeless is extremely high, with estimates as high as more than one in two homeless individuals suffering from some significant mental, medical or physical disability, and many, like Plaintiff DRAKE, suffering from compound disabilities. As a public entity, Defendants are required to "make reasonable modifications in policies practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability" where, as here, modifications would not "fundamentally alter the nature of the service, program or activity." 28 C.F.R. § 35.130(b)(7). This includes the need to make reasonable accommodations for those who are unable to accept placements at congregate shelters such as Mary Isaak's Center.

80. Defendants committed the acts and omissions alleged herein with intent and/or reckless disregard for the rights of each of these Plaintiffs.

81. Plaintiffs are informed and believe that Defendants and their agents and employees have failed and continue to fail to adopt and enforce adequate policies and procedures for interacting with unhoused individuals with disabilities.

82. Plaintiffs sought a reasonable accommodation from Defendants to postpone the sweep of the Steamer Landing Park encampment temporarily, until all residents with disabilities have been offered placements that meet their disability-related needs. Such a request was denied even though such a request would not impose an undue burden on Defendants or a fundamental alternation in Defendants' programs. By refusing to grant the reasonable accommodations Defendants violated the ADA.

83. As a result of Defendants' unlawful acts, Named Plaintiffs and those similarly

24

situated represented by Homeless Action!, have suffered and continue to suffer injuries, and have no adequate remedy at law and are therefore entitled to injunctive, declaratory and other equitable relief. Plaintiffs are also entitled to attorneys fees and costs.

## SECOND CLAIM FOR RELIEF

### Violation of the Fair Housing Act

### [36 U.S.C. § 3604]

84. Plaintiffs reallege and incorporate the allegations set forth in the preceding paragraphs as though fully set forth herein.

85. The Fair Housing Act (FHA) makes it illegal to discriminate against people with disabilities in the provision of housing-related services. Such discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. §3604(f)(3)(B).

86. Emergency shelters, motels, and other housing placements are "dwellings" for purposes of the Fair Housing Act, and Defendants' and their contract agencies' activities with respect to assessment, prioritization, and placement of homeless individuals are housing-related services for purposes of the FHA.

87. By administering the County's Coordinated Entry System in a manner that fails to take into account the disability-related needs of homeless individuals, by limiting placement options to options that are inaccessible to those individuals, and by their systematic failure to provide reasonable accommodations, Defendants and their contract

25

agencies are discriminating against people with disabilities in violation of the FHA.

88. Named Plaintiffs are persons with disabilities as defined by the FHA, as are a significant number of the individuals with and on whose behalf Plaintiff Homeless Action! works.

89. Named Plaintiffs and those similarly situated at Steamer Landing represented by Homeless Action! are aggrieved persons as defined by the Fair Housing Act because they have been injured by Defendants' discriminatory housing actions. 42 U.S.C. § 3602(i).

90. As a result of Defendants' unlawful acts, Named Plaintiffs and those similarly situated, have suffered and continue to suffer injuries, and have no adequate remedy at law and are therefore entitled to injunctive and declaratory relief, damages, attorneys fees, and costs.

## THIRD CLAIM FOR RELIEF

### Violation of Cruel and Unusual Punishment
### Eighth Amendment
### [42 U.S.C. §§ 1983]

91. Plaintiffs reallege and incorporate the allegations set forth in the preceding paragraphs as though fully set forth herein.

> The Eighth Amendment to the U.S. Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

92. Defendants' Notice to Vacate the Steamer Landing Park encampment have threatened to forcibly remove residents from the park and to enforce the City's

26

anti-camping ordinance. The City's anti-camping ordinance makes it illegal to camp outdoors, "except in places designated as such by official action of the city".    (See Petaluma Municipal Code Section 13.28.180 (H)).  The City's official Notice to the unhoused at Steamer Landing Park is that they are not to camp at Steamer Landing Park. The Notice, however, does not provide any alternative place to camp.

93. The 20-25 emergency shelter beds that the City of Petaluma states it has available are not appropriate to Named Plaintiffs and those similarly situated, who are unable to stay in congregate emergency shelters due to disability-related mental health symptoms.  By criminalizing camping herein and threatening to cite or arrest Plaintiffs and those similarly situated, Defendants are preventing Named Plaintiffs and those similarly situated from sleeping, without breaking the law.  The City effectively punishes the status of homelessness. *See Robinson v. California*, 370 U.S. 660 (1962); *Jones v. City of Los Angeles*, 444 F.3d 1118 (9th Cir. 2006), *vacated after settlement*, 505 F.3d 1006 (9th Cir. 2007).

94. Defendants' actions and threatened actions are with deliberate indifference to the danger Plaintiffs will suffer.

95. As a result, Defendants are inflicting cruel and unusual punishment in Violation of the Eighth Amendment.

96. Plaintiff THOMAS and others similarly situated were injured and damaged in that

27

they were forced to pay exorbitant fines they could not afford to pay, and/or were deprived of the use of their only available shelter-their vehicle and were forced to bear the cost of finding and securing whatever other accommodations they could obtain.

97. An actual controversy exists between Plaintiffs and Defendants as to whether Defendants have violated and/or are imminently threatening to violate the law.

98. As a result of Defendants inflicting cruel and unusual punishment, the Named Plaintiffs were injured and damaged in that they are being forcibly evicted, threatened with citation and/or arrest.

99. Named Plaintiffs and those similarly situated represented by Homeless Action! residing at Steamer Landing Park have no adequate remedy at law and are therefore entitled to injunctive and declaratory relief and attorney's fees and costs.

## FOURTH CLAIM FOR RELIEF

### Right to Be Secure From Unreasonable Seizures
### 42 U.S.C. §1983 - Fourth Amendment; Art. 1, §13, California Constitution

100.       Plaintiffs reallege and incorporate the allegations set forth in the preceding paragraphs as though fully set forth herein.

101.       Defendants and their employees and agents violated Plaintiff ERICKSON'S and others similarly situated Fourth Amendment rights to be free from unreasonable seizure of their property by confiscating and then destroying Plaintiffs' property without a warrant. Plaintiffs have an expectation to be free from meaningful interference with their property rights, even if their property is stored on public property.

28

102.    Defendants and their employees and agents violated Plaintiff THOMAS' Fourth Amendment rights to be free from unreasonable seizure of his property by seizing his vehicle without a warrant. The initial warrantless seizure of Plaintiff THOMAS vehicle was subject to and limited by the Fourth Amendment. *E.g., Soldal v. Cook County*, 506 U.S. 56 (1992). The warrantless seizure of plaintiff's vehicle violated the Fourth Amendment because it was made without consent, emergency, exigent circumstances, community caretaking concerns or any other specifically established or well-delineated exceptions to the warrant requirement.

103.    Plaintiffs have no adequate remedy at law and are therefore entitled to injunctive and declaratory relief, and attorneys' fees and costs.

## FIFTH CLAIM FOR RELIEF

### Right to Due Process of Law
### Fourteenth Amendment of the United States Constitution
### 42 U.S.C. §1983

104.    Plaintiffs reallege and incorporate the allegations set forth in the preceding paragraphs as though fully set forth herein.

105.    Defendants owed Plaintiffs a duty under the due process clause of the Fourteenth Amendment to the U.S. Constitution to protect the personal property of Plaintiffs. The City's anti-camping ordinance, as enforced by Defendants, deprives Steamer Landing unhoused residents of due process by authorizing the on-site destruction of property without specific notice and an opportunity to be heard.

106.    Defendants have seized and destroyed the personal property of unhoused

29

individuals residing at Steamer Landing without due process or lawful justification.   The

summary destruction of property without an opportunity to be heard violates the

Fourteenth Amendment.  Defendants were deliberately indifferent to the likelihood that

the property would be seized and destroyed without due process based on the past

occurrences of these same constitutional and statutory violations of the law.

107.    Plaintiffs have no adequate remedy at law and are therefore entitled to

injunctive, declaratory, and other equitable relief.  Plaintiffs are also entitled to attorneys

fees and costs.

## INJUNCTIVE RELIEF

108.    Plaintiffs reallege and incorporate the allegations set forth in the preceding

paragraphs as though fully set forth herein.

109.    A real and immediate difference exists between Plaintiffs and those

represented by Plaintiff Homeless Action! and Defendants regarding Plaintiffs' rights and

Defendants' duty owed to Plaintiffs to offer unhoused many who are disabled Steamer

Landing residents proper placements that are immediately available prior to closing an

encampment and to protect personal property present on public property at Steamer

Landing.  Defendants' policies and actions have resulted and will result in irreparable

injury to Plaintiffs.  There is no plain adequate or complete remedy at law to address the

wrongs described herein.  Defendants have made clear by their repeated actions of the

criminalization of the homeless at Steamer Landing that they intend to continue these

practices of evicting unhoused individuals without providing adequate alternative

placement options that are immediately available to those who have disabilities and can't reside in communal shelters or otherwise can't be in congregate shelter like MIC due to the shelter being functionally unavailable, confiscating and immediately destroying the property of unhoused individuals from public places, and impounding their vehicular homes.  Unless restrained by this Court, Defendants will continue to implement these unlawful policies and practices.

110.    Defendants' acts alleged above violate established constitutional rights of Plaintiffs and Defendants could not reasonably have thought that the conduct of their agents and employees in evicting unhoused disabled persons who have nowhere else to go from a public place without first offering adequate alternative placement options that are immediately available and seizing and immediately destroying property of unhoused individuals from public places without a warrant or an exception to the warrant requirement was lawful.

111.    An actual controversy exists between Plaintiffs and Defendants in that Defendants, their agents and employees, have engaged in the unlawful and unconstitutional acts alleged herein and intend to continue to do so.  Plaintiffs claim that these acts are contrary to law and seek a declaration of their rights with regard to these controversies.

112.    As a direct and proximate consequence of the acts of Defendants' agents and employees, Plaintiffs have suffered and will continue to suffer injury including being removed from a public place without anywhere else to go, loss of their personal property

31

including their vehicles, clothing, food, bedding, and other possessions, thereby dispossessing them of the essentials needed for their well-being and placing them at serious and immediate risk of illness.

113.     Plaintiff HOLDWAY has filed an administrative claim with the Defendant CITY.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Court grant them relief as follows:

a. For an injunction, enjoining and restraining Defendants and agents from evicting, ticketing, arresting, prosecuting or threatening arrest or prosecution against Named Plaintiffs and others similarly situated for camping on public property, pursuant to Petaluma Municipal Code Section 13.28.010, Penal Code Sections 602 and 647 (e) until after such time that adequate housing placements are made immediately available to each individual for at least 6 months;

b. For an injunction, enjoining and restraining Defendants and agents from ticketing, arresting, prosecuting or threatening arrest or prosecution against Named Plaintiffs and others similarly situated for Fish and Game Code Section 5652 (a) while camping on public property, until such time that adequate housing placements are made immediately available to each individual for at least 6 months;

c. For an injunction, enjoining and restraining Defendants and agents from ticketing, arresting, prosecuting or threatening arrest or prosecution against Named Plaintiffs and others similarly situated for Vehicle Code Section 22651 (k), for parking

32

longer than 72 hours, while residing in a vehicular home, until such time that adequate

housing placements are made immediately available to each person residing in their home

at Steamer Landing for at least 6 months;

      d. For an injunction, enjoining and restraining Defendants and agents from

impounding vehicles of Named Plaintiffs and others similarly situated pursuant to

Defendants enforcement of California Vehicle Code Section 22651 (o) (1) (A) for lack of

registration without first providing Plaintiffs or those similarly situated alternative

adequate housing placements that are made immediately available to each individual for

at least 6 months;

      e. For an injunction enjoining and restraining Defendants and agents from

seizing and disposing of Named Plaintiffs and others similarly situated property in

violation of their Fourth and Fourteenth Amendment rights;

      f. For a declaratory judgment that Defendants' policies, practices and

conduct alleged herein violate Plaintiffs' rights under the ADA laws;

      g. For a declaratory judgment that Defendants' policies, practices and

conduct alleged herein violate Plaintiffs' rights under the United States and California

constitutions and the laws of California;

      h. For an order directing Defendants to provide replacement blankets, tents,

tarps, medication, food, clothing and replacement of critical personal documents to

anyone whose property is seized for whatever reason, including purported health and

safety grounds;

33

i.       That the Court retain jurisdiction and exercise oversight as to

defendants' compliance with its Orders;

j. For damages in an amount to be determined according to proof;

k.  For costs of suit and attorney fees as provided by law;

l. For such further relief that the Court deems just and proper.


Dated:  December 15, 2021                    Respectfully submitted,

                                             /s/ Colleen S. O'Neal

                                             By: Colleen S. O'Neal

34

First Amended Complaint For Injunction, Declaratory, And Monetary Relief, Case No. 21-MC-80240-EMC

# EXHIBIT A

# EXHIBIT A

First Amended Complaint For Injunction, Declaratory, And Monetary Relief, Case No. 21-MC-80240-EMC



## 72 Hours Notice to Vacate Illegal Campsite & Debris Removal

BY ORDER OF THE PETALUMA POLICE DEPARTMENT

Penal Code 602(k) thru (o) - willfully entering or remaining on the property of another
Penal Code 647(e) - Any person who lodged in any building, structure, vehicle or place, whether public or private, without the permission of the owner or person
to the possession or in control of it.
Petaluma Municipal Code 13.28.180 – No person shall camp in City Parks except in designated places.

**YOU HAVE 72 HOURS TO CLEAN UP YOUR PROPERTY AND VACATE THE AREA OR YOU MAY BE
ARRESTED AND YOUR PROPERTY WILL BE SEIZED**

POSTING DATE: 10/1/2021    OFFICER: _____

LOCATION: Steele Lane Place    EVENT or CASE NUMBER: _____

All encampment, personal property and debris are to be removed by: _____
Any personal property left at the site after this date will be considered abandoned and will be handled in accordance with PPD Policy.
Any personal property not disposed of will be stored for Ninety Days (90) without charge. After Ninety Days (90) days, unclaimed property will be disposed of.

The City of Petaluma will make a reasonable effort to identify all personal property left at the site but, City Staff will not open backpacks, boxes, and bags because of
health and safety concerns. If personal items are left in plain view, the City of Petaluma will collect these items and store them for safe keeping for a period of not less
than ninety (90) days. Food, perishables, and soiled, wet or moldy bedding materials will not be stored due to health and safety reasons. Individuals wishing to
reclaim personal property may contact the Property Unit at the Petaluma Police Department, 969 Petaluma Blvd North or call 707-778-4328 to schedule a date and
time to claim their property.

### HOMELESS OUTREACH SERVICES:
COTS Mary Isaak Center-900 Hopper Street, Petaluma 707-765-6530
Sonoma Co. Housing & Shelter Services Coordinated Entry Managed by Catholic Charities 866-542-5480
Salvation Army Petaluma 721 S. McDowell Blvd. 707-769-0716
Catholic Charities Homeless Services Center 600 Morgan Street, Santa Rosa 707-525-0226
Sam Jones Hall 4020 Finley Avenue, Santa Rosa, 707-523-3900



## ATTENTION!!!
## YOU ARE TRESPASSING ON PRIVATE PROPERTY

The Property Owners have advised the Police Department that they want all subjects trespassing on their property to leave per the following:

Penal Code 602(m) thru (o) – unlawfully entering or remaining on the property of another
Penal Code 647(e) – Any person who lodges in any building, structure, vessel or place, whether public or private, without the permission of the owner or person entitled to the possession or in control of it
Petaluma Municipal Code 13.28.180 – No person shall camp in City Parks except in designated places.

If you need assistance please contact one of COTS outreach workers or visit the Mary Isaak Center

HOMELESS OUTREACH SERVICES:
COTS Mary Isaak Center-900 Hopper Street, Petaluma 707-765-6530
Sonoma Co. Housing & Shelter Services Coordinated Entry Managed by Catholic Charities 866-542-5480
Salvation Army Petaluma 721 S. McDowell Blvd, 707-769-0716
Catholic Charities Homeless Services Center 600 Morgan Street, Santa Rosa 707-525-0226
Sam Jones Hall 4020 Finley Avenue, Santa Rosa, 707-523-3900



# 72 Hours Notice to Vacate Illegal Campsite & Debris Removal

## BY ORDER OF THE PETALUMA POLICE DEPARTMENT

Penal Code 602(h) thru (o) - willfully entering or remaining on the property of another
Fish and Game Code 5652(a) - Unlawful to place any debris within 150 feet of the high-water mark of waters of the state, etc.
Penal Code of Petaluma person who lodges in any building, structure, vehicle or place, whether public or private, without the permission of the owner or person entitled to the possession or in control of it
Petaluma Municipal Code 13.28.180 - No person shall camp in City Parks except in designated places.

### YOU HAVE 72 HOURS TO CLEAN UP YOUR PROPERTY AND VACATE THE AREA OR YOU MAY BE ARRESTED AND YOUR PROPERTY WILL BE SEIZED

POSTING DATE: 06/07/2021          OFFICER: VAN RIPER

LOCATION: STEAMER LANDING   EVENT or CASE NUMBER: P2-21571035

1. All encampments, personal property and debris are to be removed by: Bobbie Schulten
2. Any personal property left at the site after this date will be considered abandoned and will be handled in accordance with PPD Policy.
3. Any personal property not disposed of will be stored for Ninety Days (90) without charge. After Ninety Days (90) days, unclaimed property will be disposed of.

The City of Petaluma will make a reasonable effort to identify all personal property left at the site but, City Staff will not open backpacks, boxes, and bags because of health and safety concerns. If personal items are left in plain view, the City of Petaluma will collect these items and store them for safe keeping for a period of not less than ninety (90) days. Food, perishables, and soiled, wet or moldy bedding materials will not be stored due to health and safety reasons. Individuals wishing to reclaim personal property may contact the Property Unit at the Petaluma Police Department, 969 Petaluma Blvd North, call 707-778-4372 to schedule a date and time to claim their property.

### HOMELESS OUTREACH SERVICES:

COTS Mary Isaak Center-900 Hopper Street, Petaluma 707-765-653?

Sonoma Co. Housing & Shelter Services Coordinated Entry Managed by Catholic Charities 866-542-54??

Salvation Army Petaluma 721 S. McDowell Blvd, 707-769-0716

Catholic Charities Homeless Services Center 600 Morgan Street, Santa Rosa 707-525-0226

Sam Jones Hall 4020 Finley Avenue, Santa Rosa, 707-523-3900

38

# EXHIBIT B

# EXHIBIT B

First Amended Complaint For Injunction, Declaratory, And Monetary Relief, Case No. 21-MC-80240-EMC

10/15/20, 1:42 PM

City of Petaluma Police Department
Sonoma County
**NOTICE TO APPEAR**  ☐ Traffic  ☐ MISDEMEANOR  **493145**
                                ☐ Non-traffic

Date of Violation: 10/14/20    Time: 2035  ☐ AM  ☒ PM    Day of Week: S M T W T F S    Case No. 20-3516

Name (First, Middle, Last): ERIC    CONROY    ☐ Owner's Responsibility (Veh. Code, § 40001)

Address: TRANSIENT PETALUMA

City: PETALUMA    State: CA    ZIP Code: 94952    Phone No. ( )

Driver Lic. No.: C4251207    State: CA    Class: 1    Comm. Yes ☐ No ☒    Birth Date: 5/18/1968

Sex: M    Hair: BRN    Eyes: BLU    Height: 5'11"    Weight: 300    Race: W    Other Description

Veh. Lic. No.    State    ☐ COMMERCIAL VEHICLE (Veh. Code, § 15210(b))

Yr. of Veh.  Make    Model    Body    Color    ☐ HAZARDOUS MATERIAL (Veh. Code, § 353)

Evidence of Financial Responsibility

Registered Owner or Lessee    ☐ Same as Driver

Address    ☐ Same as Driver

City    State    ZIP Code

Correctable Violation (Veh. Code, § 40610)  ☐ Booking Required    Misdemeanor or Infraction (Circle)

| Yes | No | Code and Section | Description | M / I |
|-----|----|----|----|----|
| ☐ | ☒ | 19-15(C) | CO CAMPING | Ⓜ I |
| ☐ | ☐ | | PUBLIC PROPERTY | M I |
| ☐ | ☐ | | | M I |
| ☐ | ☐ | | | M I |

Speed Approx. ▶    P.F./Max Spd.    Veh. Lmt.    Safe    Radar/Laser Yes ☐  No ☒

Location of Violation (s): STEAMER LANDING PARK    Beat: 2

Traffic Conditions: Light  Medium  Heavy    Road: Dry  Wet    Direction of Travel: NB  SB  EB  WB

☐ Violations not committed in my presence, declared on information and belief.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct.

Date: 10/14/20    Arresting or Citing Officer: _____    I.D. No: 5341

Date: _____    Name of Arresting Officer, if different from Citing Officer    I.D. No.

WITHOUT ADMITTING GUILT, I PROMISE TO APPEAR AT THE TIME AND PLACE INDICATED BELOW.

X Signature: _____ Conroy

WHEN: Date: 11/16/202_    Time: _____

WHAT TO DO:  FOLLOW THE INSTRUCTIONS ON THE BACK

WHERE:
☒ SUPERIOR COURT    ☐ TRAFFIC COURT    JUVENILE COURT
OF SONOMA COUNTY    600 ADMINISTRATION DR.    7425 RANCH____
600 ADMINISTRATION DR.    RM 109J    SANTA ROSA CA 95403
SANTA ROSA CA 95403    SANTA ROSA CA 95403    (707) 565-6229
(707) 521-6500    (707) 521-6600    (YOU MUST BRING YOUR ____)

40

**VERIFICATION OF GAIL SIMONS**

I, GAIL SIMONS, am a representative of Homeless Action!, a Plaintiff in the above-entitled action. I am aware of the nature of the First Amended Complaint being filed on Homeless Actions! behalf, the legal bases for the Complaint, and the relief being sought. To the extent that the Petition is based upon facts known to me, I verify them to be true, and otherwise, I am informed and believe that all facts herein are true. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 15 day of December, 2021, in Petaluma, California.


GAIL SIMONS

**VERIFICATION OF JANINE NARETTO**

I, JANINE NARETTO, am one of the Plaintiffs in the above-entitled action. I am aware of the nature of the First Amended Complaint being filed on my behalf, the legal bases for the Complaint, and the relief being sought. To the extent that the Petition is based upon facts known to me, I verify them to be true, and otherwise, I am informed and believe that all facts herein are true. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 15 day of December, 2021, in Petaluma, California.

_____
JANINE NARETTO

42

FIRST AMENDED COMPLAINT FOR INJUNCTIVE, DECLARATORY, AND MONETARY RELIEF, CASE NO. 21-MC-80240-EMC

## VERIFICATION OF KAMONCHANOK CHUMWANGWAPA

I, KAMONCHANOK CHUMWANGWAPA, am one of the Plaintiffs in the above-entitled action. I am aware of the nature of the First Amended Complaint being filed on my behalf, the legal bases for the Complaint, and the relief being sought. To the extent that the Petition is based upon facts known to me, I verify them to be true, and otherwise, I am informed and believe that all facts herein are true. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 15 day of December, 2021, in Petaluma, California.

KAMONCHANOK CHUMWANGWAPA

**43**

## VERIFICATION OF EUGENE REILLY DRAKE,

I, EUGENE REILLY DRAKE, am one of the Plaintiffs in the above-entitled action. I am aware of the nature of the First Amended Complaint being filed on my behalf, the legal bases for the Complaint, and the relief being sought. To the extent that the Petition is based upon facts known to me, I verify them to be true, and otherwise, I am informed and believe that all facts herein are true. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 15 day of December, 2021, in Petaluma, California.

EUGENE REILLY DRAKE

**44**

FIRST AMENDED COMPLAINT FOR INJUNCTIVE, DECLARATORY, AND MONETARY RELIEF, CASE NO. 21-MC-80240-EMC

**VERIFICATION OF MATTHEW ERICKSON**

I, MATTHEW ERICKSON, am one of the Plaintiffs in the above-entitled action.  I am aware of the nature of the First Amended Complaint being filed on my behalf, the legal bases for the Complaint, and the relief being sought.  To the extent that the Petition is based upon facts known to me, I verify them to be true, and otherwise, I am informed and believe that all facts herein are true.  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 15 day of December, 2021, in Petaluma, California.


MATTHEW ERICKSON

FIRST AMENDED COMPLAINT FOR INJUNCTIVE, DECLARATORY, AND MONETARY RELIEF, CASE NO. 21-MC-80240-EMC

## VERIFICATION OF JONATHAN THOMAS HOLDWAY

I, JONATHAN THOMAS HOLDWAY, am one of the Plaintiffs in the above-entitled action. I am aware of the nature of the First Amended Complaint being filed on my behalf, the legal bases for the Complaint, and the relief being sought. To the extent that the Petition is based upon facts known to me, I verify them to be true, and otherwise, I am informed and believe that all facts herein are true. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 15 day of December, 2021, in Petaluma, California.

*Jonathan Thomas Holdway*

JONATHAN THOMAS HOLDWAY

46