Kevin E. Gilbert, Esq. (SBN: 209236)
kgilbert@ohhlegal.com
Kelly Houle-Sandoval, Esq. (SBN: 267958)
khoule-sandoval@ohhlegal.com
**ORBACH HUFF & HENDERSON LLP**
6200 Stoneridge Mall Road, Suite 225
Pleasanton, CA  94588
Telephone: (510) 999-7908/Facsimile: (510) 999-7918

Eric W. Danly, City Attorney (SBN: 201621)
Jordan M. Green, Assistant City Attorney (SBN: 247126)
jgreen@cityofpetaluma.org
CITY OF PETALUMA/CITY ATTORNEY'S OFFICE
11 English Street
Petaluma, CA  94952
Telephone: (707) 778-4362/Facsimile: (707) 206-6040

Attorneys for Defendants
CITY OF PETALUMA, PETALUMA POLICE DEPARTMENT
and KEN SAVANO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JANINE NARETTO, MATTHEW ERICKSON, KAMONCHANOK CHUMWANGWAPA, EUGENE REILLY DRAKE, JONATHAN THOMAS HOLDWAY, individuals; HOMELESS ACTION! an unincorporated association, on behalf of itself and those it represents,<br><br>               Plaintiffs,<br><br>v.<br><br>CITY OF PETALUMA, PETALUMA POLICE DEPARTMENT, KEN SAVANO in his official capacity, and DOES 1 through 20, in their official capacities,<br><br>               Defendants. | Case No.  21-cv-10027-EMC<br><br><br>**DEFENDANTS CITY OF PETALUMA, PETALUMA POLICE DEPARTMENT AND KEN SAVANO'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>DATE:     March 3, 2022<br>TIME:     1:30 p.m.<br>DEPT:    Courtroom 5, 17th Floor<br>JUDGE:   Hon. Edward M. Chen |

ORBACH HUFF & HENDERSON LLP

# TABLE OF CONTENTS

**Page(s)**

NOTICE OF MOTION .................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 3

I.     SUMMARY OF ARGUMENT .............................................................................. 3

II.    FACTUAL AND PROCEDURAL BACKGROUND ............................................ 4

III.   LEGAL ARGUMENT ........................................................................................... 6

    A.     Legal Standard for a Motion to Dismiss Under F.R.C.P. 12(b)(1) ...................... 6

    B.     Legal Standard for a Motion to Dismiss Under F.R.C.P. 12(b)(6) ...................... 6

    C.     Plaintiff Homeless Action! Lacks Standing for Any of the Claims in the FAC ...... 7

        1.     HA! Has Not Pled Organizational Standing ................................. 7

        2.     HA! Has Not Pled Representational Standing ............................... 9

    D.     Plaintiffs' Claims Against Police Chief Ken Savano are Deficient ...................... 11

    E.     The Petaluma Police Department is Not a Separate Entity ................................. 12

    F.     The First Cause of Action for Violation of the Americans with Disabilities
        Act Fails to State a Cause of Action .................................................................. 12

        1.     Plaintiffs Have Not Established They Were Discriminated Against
            Because of Those Disabilities or That They Are "Qualified
            Individuals" ............................................................................. 13

        2.     Plaintiffs Do Not Allege any City Programs, Services and Activities
            in Connection with Which They Were Discriminated Against ................. 14

    G.     The Second Cause of Action for Violation of the Fair Housing Act Fails
        Because Plaintiffs Do Not State Facts Showing a Violation ................................. 17

    H.     Plaintiffs' Section 1983 Claims are Precluded by *Monell* ................................. 19

    I.     The Third Cause of Action for Violation of the Eighth Amendment Prohibition
        on Cruel and Unusual Punishment Fails Since Plaintiffs Have Not Been
        Charged with a Crime ......................................................................... 21

ORBACH HUFF & HENDERSON LLP

# TABLE OF CONTENTS

**Page(s)**

J.    Plaintiffs' Claims for Violation of the Fourth and Fourteenth Amendment
    Related to Seizure of Property Do Not State a Claim ............................................. 23

      1.    The Fourth Cause of Action ......................................................................... 23

      2.    The Fifth Cause of Action Fails as a Matter of Law ................................... 25

IV.    CONCLUSION .......................................................................................................... 25

Defs' Notice of Motion and Motion to Dismiss Plts' First Amended Complaint; Memo of P&A [21-cv-10027-EMC]

ORBACH HUFF + HENDERSON LLP

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.E. ex rel. Hernandez v. Cnty. of Tulare*,
  666 F.3d 631 (9th Cir. 2012) ......................................................... 20

*Access 123, Inc. v. Markey's Lobster Pool, Inc.*,
  2001 WL 920051 (D.N.H. Aug.14, 2001) ...................................... 10

*American Diabetes Organization v. United States Department of Army*,
  938 F.3d 1147 (9th Cir. 2019) .................................................... 8, 9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ....................................................................... 7

*Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
  459 U.S. 519 (1983) ....................................................................... 7

*Ayala v. Cnty. of Imperial*,
  2017 WL 469016 (S.D. Cal. Feb. 3, 2017) ................................... 21

*Butcher v. City of Marysville*,
  2019 WL 918203 (E.D. Cal. Feb. 25, 2019) .............................. 2, 22

*Cain v. City of Sacramento*,
  2017 WL 4410116 (E.D. Cal. 2017) ............................................ 20

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*,
  657 F.3d 936 (9th Cir. 2011) ......................................................... 8

*Community House, Inc. v. City of Boise, Idaho*,
  490 F.3d 1041 (9th Cir. 2007) .................................................. 2, 18

*Conley v. Gibson*,
  355 U.S. 41 (1957) ......................................................................... 6

*Coons v. Sec'y of U.S. Dep't. of Treasury*,
  383 F.3d 879 (9th Cir. 2004) ....................................................... 13

*Crago v. Knackle*,
  2020 WL 3073771 (E.D. Cal. 2020) ............................................ 24

- iii -

ORBACH HUFF + HENDERSON LLP

# TABLE OF AUTHORITIES

**Page(s)**

*Ctr. for Bio-Ethical Reform, Inc. v. L.A. Cty. Sheriff Dep't,*
533 F.3d 780 (9th Cir. 2008) ................................................................. 11

*Disabled in Action of Metropolitan New York v. Trump Intern. Hotel & Tower*
2003 WL 1751785 (S.D.N.Y. 2003)....................................................... 10

*Does 1–5 v. Chandler,*
83 F.3d 1150 (9th Cir.1996) ............................................................. 1, 13

*Fair Hous. of Marin v. Combs,*
285 F.3d 899 (9th Cir. 2002) .............................................................. 1, 8

*Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.,*
528 U.S. 167 (2000)...................................................................... 2, 7, 23

*FW/PBS, Inc. v. City of Dallas,*
493 U.S. 215 (1990)................................................................................. 6

*Garcia v. City of Merced,*
637 F.Supp.2d 731 (E.D. Cal. 2008)................................................. 1, 12

*Gladstone, Realtors v. Village of Bellwood,*
441 U.S. 91 (1979)................................................................................ 10

*Gomes v. County of Kauai,*
2020 WL 6937435 (D. Hawai'i November 24, 2020)........................... 22

*Hunt v. Wash. State Apple Adver. Comm'n,*
432 U.S. 333 (1977)................................................................................ 9

*Ileto v. Glock, Inc.,*
349 F.3d 1191 (9th Cir. 2003) ............................................................... 7

*Ingraham v. Wright,*
430 U.S. 651 (1977).............................................................................. 21

*Kentucky v. Graham,*
473 U.S. 159 (1985) ..................................................................... 1, 11, 12

*La Asociacion de Trabajadores v. City of Lake Forest,*
624 F.3d 1083 (9th Cir. 2010)........................................................... 8, 9

ORBACH HUFF + HENDERSON LLP

- iv -

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

*Lavan v. City of Los Angeles,*
4
   693 F.3d 1022 (9th Cir. 2012) ............................................................ 23

5
*Le Van Hung v. Schaaf,*
   2019 WL 1779584 (N.D. Cal. Apr. 23, 2019) ..................................... 22
6

7
*Leslie v. City of Sand City,*
   615 F.Supp.2d 1121 (N.D. Cal. 2009) ............................................ 2, 24
8

9
*Lewis v. Casey,*
   518 U.S. 343 (1996) ........................................................................... 6, 9
10

11
*Lindsey v. Normet,*
   405 U.S. 56 (1972) ................................................................................ 19
12

13
*Los Angeles v. Lyons,*
   461 U.S. 95 (1983) .................................................................................. 6
14

15
*Magdeleno v. Washington County*
   277 Fed.Appx. 679 (2008) ..................................................................... 14
16

17
*Martin v. City of Boise,*
   902 F.3d 1031 (9th Cir. 2018) .................................................... 3, 21, 22
18

19
*McHenry v. Renne,*
   84 F.3d 1172 (9th Cir. 1996) ......................................................... 11, 13
20

21
*Melendres v. Arpaio,*
   784 F.3d 1254 (9th Cir. 2015) .............................................................. 11
22

23
*Miralle v. City of Oakland,*
   2018 WL 6199929 (N.D. Cal. Nov. 28, 2018) ........................ 2, 3, 21, 22
24

25
*Monell v. Dep't of Social Serv.,*
   436 U.S. 658 (1978) ........................................................................*passim*
26

27
*Monteilh v. Cty. of Los Angeles,*
   820 F.Supp.2d 1081 (C.D. Cal. 2011) .................................................. 11
28

*Murray v. City of Philadelphia,*
   481 F.Supp.3d 461 (E.D. Penn. 2020) .................................................. 15

ORBACH HUFF + HENDERSON LLP

- v -

# TABLE OF AUTHORITIES

**Page(s)**

*Peterson v. City of Fort Worth*,
 588 F.3d 838 (5th Cir. 2009) .................................................................... 19

*Plumeau v. Sch. Dist. No. 40 Cnty. Of Yamhill*,
 130 F.3d 432 (9th Cir. 1997) .................................................................... 19

*Reed v. City of Emeryville*,
 2021 WL 4974973 (N.D.Cal. October 26, 2021) ..................................... 16

*Renne v. Geary*,
 501 U.S. 312 (1991) .................................................................................... 6

*Sanchez v. County of San Diego*,
 464 F.3d 916 (9th Cir. 2006) .................................................................... 25

*Sandoval v. City of Sonoma*,
 912 F.3d 509 (9th Cir. 2018) .................................................................... 24

*Sierra Club v. Morton*,
 405 U.S. 727 (1972) .................................................................................... 8

*Smith v. City of Oakland*,
 2020 WL 2517857 (N.D. Cal. April 2, 2020) .......................................... 17

*Smith v. Pac. Props and Dev. Corp.*,
 358 F.3d 1097 (9th Cir. 2004) ................................................................ 1, 7

*Starr v. Baca*,
 652 F.3d 1202 (9th Cir. 2011) .............................................................. 15, 24

*Steffen v. Rowland*,
 972 F.2d 1343 (9th Cir. 1992) .................................................................. 21

*Sullivan v. City of Berkeley*,
 2017 WL 4922614 (N.D. Cal. Oct. 31, 2017) .......................... 2, 23, 24, 25

*Thissel v. Murphy*,
 2016 WL 3057382 (N.D. Cal. May 31, 2016) .......................................... 11

*Trevino v. Gates*,
 99 F.3d 911 (1996) .................................................................................... 19

ORBACH HUFF + HENDERSON LLP

Defs' Notice of Motion and Motion to Dismiss Plts' First Amended Complaint; Memo of P&A [21-cv-10027-EMC]

# TABLE OF AUTHORITIES

**Page(s)**

*Warth v. Seldin,*
  422 U.S. 490 (1975) .................................................................................................. 10

*Watson v. Chessman,*
  362 F.Supp.2d 1190 (S.D. Cal. 2005) ....................................................................... 6

*Western Mining Council v. Watt,*
  643 F.2d 618 (9th Cir. 1981) ..................................................................................... 7

*Young v. City of Visalia,*
  687 F.Supp.2d 1141 (E.D.Cal. 2009) ...................................................................... 20

## Statutes

36 U.S.C. section:
  3604(f)(3)(B) ............................................................................................................ 18

42 U.S.C. section:
  1983 .......................................................................................................... 12, 19, 21
  3602(b) ..................................................................................................................... 18
  3603 ...................................................................................................................... 2, 18
  12102 ........................................................................................................................ 13
  12132 ................................................................................................................. 12, 17

Federal Rules of Civil Procedure Rule:
  8 ................................................................................................... 3, 11, 13, 15
  12(b)(1) ................................................................................................................. 1, 6
  12(b)(6) .............................................................................................................. 1, 6, 7

California Government Code section:
  1135 .......................................................................................................................... 17

California Vehicle Code section:
  22651 ........................................................................................................................ 20
  22651(o) ............................................................................................................. 11, 20
  22651(o)(1)(A) ......................................................................................................... 24

ORBACH HUFF + HENDERSON LLP

Defs' Notice of Motion and Motion to Dismiss Plts' First Amended Complaint; Memo of P&A [21-cv-10027-EMC]

**NOTICE OF MOTION**

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 3, 2022, at 1:30 p.m. in Courtroom 5, 17th Floor, in the above-referenced Court, Defendants CITY OF PETALUMA ("City"), PETALUMA POLICE DEPARTMENT and KEN SAVANO (collectively "Defendants"), will move this Court, pursuant to Federal Rules of Civil Procedure Rule 12(b)(1) and Federal Rules of Civil Procedure Rule 12(b)(6), for an order dismissing the First Amended Complaint (Dkt. 48) filed by Plaintiffs JANINE NARETTO, MATTHEW ERICKSON, KAMONCHANOK CHUMWANGWAPA, EUGENE REILLY DRAKE, JONATHAN THOMAS HOLDWAY, individuals; HOMELESS ACTION! an unincorporated association, on behalf of itself and those it represents (collectively "Plaintiffs"), as against Defendants.  The specific issues for adjudication include the following:

1. Should Plaintiff Homeless Action!'s entire First Amended Complaint be dismissed where it has not alleged either organizational standing through direct injury to the organization or representational standing on behalf of its members?  *Smith v. Pac. Props and Dev. Corp.*, 358 F.3d 1097, 1101 (9th Cir. 2004); *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002).

2. Should Plaintiffs' entire First Amended Complaint be dismissed as to Police Chief Ken Savano because there are no allegations against him in his individual capacity, and where the allegations against him in his official capacity are duplicative of the claims against the City of Petaluma?  *Kentucky v. Graham*, 473 U.S. 159, 167 (1985).

3. Should Plaintiffs' entire First Amended Complaint be dismissed as to the Petaluma Police Department since it is a municipal department of the City of Petaluma, and not a separate legal entity?  *Garcia v. City of Merced*, 637 F.Supp.2d 731, 760 (E.D. Cal. 2008).

4. Should Plaintiffs' First Cause of Action for violation of the Americans with Disabilities Act be dismissed because each Plaintiff has failed to allege they are a qualified individual with a disability who was denied the benefit of or participation in a public entity's "program, service, or activity" solely on the basis of their disability? *Does 1–5 v. Chandler*, 83 F.3d 1150, 1154–1155 (9th Cir.1996).

5. Should Plaintiffs' Second Cause of Action for violation of the Fair Housing Act be dismissed because Plaintiffs fail to allege that the Mary Isaak Center (and/or any of the shelter options that have been offered to Plaintiffs) is/are a "dwelling" for purposes of the Act, and also fail to allege that the Mary Isaak Center refused to make a reasonable modification in any of its "rules, policies, or practices" that,

ORBACH HUFF & HENDERSON LLP

- 1 -

had the modification been implemented, would have enabled Plaintiffs to use and enjoy the Mary Isaak Center?  42 U.S.C. § 3603; *Community House, Inc. v. City of Boise, Idaho*, 490 F.3d 1041, 1044 n. 2 (9th Cir. 2007)

6. Should Plaintiffs' Third Cause of Action for violation of the Eighth Amendment prohibition on cruel and unusual punishment be dismissed due to each Plaintiff failing to allege any facts that they have been criminally prosecuted for camping in the park or are at credible risk for criminal prosecution?  *Miralle v. City of Oakland*, 2018 WL 6199929, at *2 (N.D. Cal. Nov. 28, 2018); *Butcher v. City of Marysville*, 2019 WL 918203, at *1-2, 7 (E.D. Cal. Feb. 25, 2019).

7. Should the Fourth Cause of Action for violation of the Fourth Amendment by Plaintiff Holdway be dismissed because impounding a vehicle with expired registration is not a violation of the Fourth Amendment?  *Leslie v. City of Sand City*, 615 F.Supp.2d 1121, 1126 (N.D. Cal. 2009).

8. Should the Fourth Cause of Action for violation of the Fourth Amendment by Plaintiff Erickson be dismissed because the allegations are too vague, but nevertheless establish that Plaintiffs were provided with adequate notice prior to any property being seized?  *Sullivan v. City of Berkeley*, 2017 WL 4922614, at *6 (N.D. Cal. Oct. 31, 2017).

9. Should the Fourth Cause of Action for violation of the Fourth Amendment by all other Plaintiffs be dismissed because they do not allege any injury, as necessary to plead a prima facia violation of the Fourth Amendment?  *Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.,* 528 U.S. 167, 180-181 (2000).  Further, does the lack of any facts to suggest that the purported constitutional violation was caused by a City policy or custom preclude Plaintiffs' attempts to hold the City liable for its officers' actions? *Monell v. Dep't of Social Serv.*, 436 U.S. 658, 691 (1978).

10. Should Plaintiffs' Fifth Cause of Action for violation of the Fourteenth Amendment be dismissed because the allegations of the First Amended Complaint establish that Plaintiffs were provided with adequate notice prior to any property being seized? *Sullivan v. City of Berkeley*, 2017 WL 4922614, at *6 (N.D. Cal. Oct. 31, 2017).

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Request for Judicial Notice and exhibit attached thereto, any other matters subject to judicial notice, all pleadings, files and records in this matter together with all other argument and evidence as may be presented for the Court's consideration.

Dated:  January 21, 2022    **ORBACH HUFF & HENDERSON LLP**

By:___/s/ *Kevin E. Gilbert*_____

Kevin E. Gilbert
Kelly Houle-Sandoval
Attorneys for Defendants
CITY OF PETALUMA, PETALUMA POLICE
DEPARTMENT and KEN SAVANO

ORBACH HUFF + HENDERSON LLP

ORBACH HUFF + HENDERSON LLP

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.     SUMMARY OF ARGUMENT

As the Court is aware, this case involves Defendant City of Petaluma's ("City") ongoing efforts to transition unsheltered persons that are camping in Steamer Landing Park into shelters. This lawsuit was filed in response to the City's planned abatement of the encampments located on both public and private property in Steamer Landing Park (the "Park") in October 2021.  The planned abatement was to address the serious public safety threat posed by the Steamer Landing encampment.  Among other things, residents of the encampment continue to discard feces into the public waterway, discard used needles in the Park, threaten members of the public who are using the Park, and continue to pose a fire hazard by setting fires in and around their tents.

This lawsuit appears to be copied and pasted from similar lawsuits filed throughout the Ninth Circuit which are based on principles set forth in *Martin v. City of Boise* ("*Martin*"), 902 F.3d 1031, 1048 (9th Cir. 2018), opinion amended and superseded on denial of reh'g, 920 F.3d 584 (9th Cir. 2019).  As a result, the specific legal violations alleged by Plaintiffs are often difficult to ascertain from the complaint.  See F.R.C.P. Rule 8.  Aside from this, it is important to note that *Martin* does not establish a constitutional right to occupy property indefinitely at Plaintiffs' option.  See *Miralle v. City of Oakland*, 2018 WL 6199929, at *2 (N.D. Cal. Nov. 28, 2018).  As Plaintiffs concede in their First Amended Complaint ("FAC"), each of them has been offered placement in a non-congregate shelter (the Petaluma Temporary Placement Center, "PTPC"), which is what they have alleged was necessary for their disabilities.  Further, almost all of the other unsheltered persons camping at Steamer Landing have been offered placement at the congregate Mary Isaak Center ("MIC"), with many offered placement at the PTPC or with other organizations as appropriate (such as the Veteran's Administration).

There are numerous deficiencies in the FAC which require its dismissal.  The crux of the First Cause of Action seems to be that because the City's enforcement of an anti-camping ordinance in public parks will impact a group that includes at least some people with a variety of different disabilities (some of which are not even identified), the Plaintiffs have stated a claim for discrimination.  But a general grievance is not enough to state a claim; the Plaintiffs

Defs' Notice of Motion and Motion to Dismiss Plts' First Amended Complaint; Memo of P&A [21-cv-10027-EMC]

must state *facts* identifying how the City has discriminated against the Plaintiffs *on the basis of* their particular disabilities.  The Second Cause of Action fares no better; a failure to transform an existing congregate emergency shelter into the exact type of congregate housing Plaintiffs desire is not a violation of the Fair Housing Act ("FHA").  Besides this, Plaintiffs' constitutional claims are either contrary to the law, or rest entirely on vague, conclusory allegations that are insufficient to state a claim.  The Motion to Dismiss must be granted.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Steamer Landing Park is a 9.7-acre public park located in the City of Petaluma.  FAC, ¶ 1.  Plaintiffs Janine Naretto, Matthew Erickson, Kamonchanok Chumwangwapa, Eugene Reilly Drake and Jonathan Thomas Holdway are unsheltered individuals who live in an encampment in the Park.  *Id*.  The residents of the encampment at Steamer Landing have not received written permission to camp in the Park, as required by Petaluma Municipal Code 13.28.180(H).  FAC, ¶ 39.  According to a 2020 report, there were 296 unhoused individuals living in the City.  FAC, ¶ 26.  Of these 296 individuals, 40% identified as having a disability.  *Id*.  Plaintiff Homeless Action! ("HA!") is an unincorporated association which is made up of housed and unhoused persons and advocates and is dedicated to "ending the suffering of people who do not have a home."  FAC, ¶ 18.  The named Plaintiffs are members of HA!.  *Id*.

The named Plaintiffs have various disabilities, but all admit to having previously been offered placement in a non-congregate shelter.  Ms. Naretto has lived at the Steamer Landing encampment for two years.  FAC, ¶ 44.  She has previously stayed at MIC, a congregate emergency shelter, and also received a housing voucher in 2018, which has since expired.  FAC, ¶¶ 27, 45.  Ms. Naretto has severe high blood pressure and has unspecified mobility issues which she claims require assistance for daily needs such as cooking.  *Id*.  In December 2021, Ms. Naretto accepted a placement in the PTPC.  See FAC, ¶ 46.

Matthew Erickson is camping in a small trailer at Steamer Landing.  FAC, ¶ 47.  Mr. Erickson alleges to have brain damage from a car accident, and has anxiety, schizophrenia and personality disorders.  *Id*.  Relevant to the pending claims, Mr. Erickson was offered placement at the PTPC but declined unless he is able to park his trailer at the shelter.  FAC, ¶ 50.

ORBACH HUFF + HENDERSON LLP

- 4 -

Kamonchanok Chomwangnapi stayed at the Steamer Landing encampment with her partner, Plaintiff Eugene Reilly Drake, but both relocated to a different location in October 2021. FAC, ¶ 52. Ms. Chomwangnapi alleges to have high blood pressure and was diagnosed as autistic when she lived in Thailand. FAC, ¶ 53. She is also pregnant. FAC, ¶ 54. Eugene Reilly Drake has been diagnosed as bipolar and has ADHD and depression. FAC, ¶ 58. They were offered shelter at the PTPC but declined because residents were not permitted to use the kitchen, and the PTPC could not allow their two pet rodents. FAC, ¶ *54, 59*. They are currently living in a motel and anticipate receiving a housing voucher shortly. *Id*.

Plaintiff Jonathan Thomas Holdway has camped at Steamer Landing for the last year. FAC, ¶ 60. Mr. Holdway alleges to suffer from PTSD. FAC, ¶ 53. He previously stayed at the MIC. FAC, ¶ 61. On September 29, 2021, Mr. Holdway's vehicle was impounded for lack of registration. FAC, ¶ 62. He paid $968 to retrieve his vehicle. FAC, ¶ 63. Mr. Holdway has since been placed in the PTPC. FAC, ¶ 64.

The Mary Isaak Center ("MIC") is an emergency congregate shelter that is operated by the Committee on the Shelterless ("COTS"). FAC, ¶ 27. Of the 80 total beds at MIC, 20-25 are generally available. FAC, ¶ 36. To be admitted, MIC requires unsheltered persons to complete a pre-application to be added to MIC's internal waitlist, or to go through the County of Sonoma's coordinated entry process. FAC, ¶ 34. After completing the application, the person waits to be called. *Id*. Placement in the shelter takes "at least a week." *Id*. MIC takes applications Monday through Friday, 11:30 a.m.-12:30 p.m. and 5-6 p.m. *Id*. In December 2021, the City opened the PTPC, a non-congregate shelter with eleven (11) rooms where residents may stay for up to 90 days. FAC, ¶ 37. Another non-congregate shelter with an additional ten (10) units called the Petaluma People's Village is expected to open soon. See FAC, ¶ 38.

The City first "swept" (i.e., removed) the encampment at the Park in 2020, and conducted another abatement in April 2021. FAC, ¶¶ 30, 31. During the April 2021 abatement, residents' personal property in the form of tents, food, water and survival gear were seized and destroyed. FAC, ¶ 31. The City conducted another abatement at the Park in June 2021 after posting a 72-hour notice to vacate the Park. FAC, ¶ 32. The 72-hour notice stated that any property

ORBACH HUFF + HENDERSON LLP

confiscated would be stored for 90 days, and also provided information for how to recover any property that was seized.  See FAC, Ex. A.  Another 72-hour notice to vacate with similar language was posted at the Park on October 2, 2021.  FAC, ¶ 42; Ex. A.  Thereafter, Plaintiffs filed a request for a preliminary injunction/temporary restraining order, which was granted by this Court.  On December 15, 2021, Plaintiffs filed their FAC.

## III.    LEGAL ARGUMENT

### A.    Legal Standard for a Motion to Dismiss Under F.R.C.P. 12(b)(1)

To invoke the subject matter jurisdiction of the federal courts pursuant to the U.S. Constitution Article III's case-or-controversy requirement, a plaintiff must provide sufficient facts to demonstrate his or her standing to sue.  *Los Angeles v. Lyons*, 461 U.S. 95, 101-102 (1983).  When it is clear from the face of the complaint that a plaintiff cannot prove any set of facts in support of his claim of standing, the court must grant a motion to dismiss under F.R.C.P. 12(b)(1).  *Watson v. Chessman,* 362 F.Supp.2d 1190, 1194 (S.D. Cal. 2005).  The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction.  *Watson*, 362 F.Supp.2d at 1194.  When the defendant challenges standing, a court must presume lack of jurisdiction "unless the contrary appears affirmatively from the record."  *Renne v. Geary*, 501 U.S. 312, 316 (1991), quoting *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 546 (1986) (internal quotation marks omitted).  "It is a long-settled principle that standing cannot be inferred argumentatively from averments in the pleadings, but rather must affirmatively appear in the record."  *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (internal citations and quotation marks omitted).  A plaintiff must demonstrate standing separately for each form of relief sought.  See, *e.g., Lyons*, 461 U.S. at 109, 103 S. Ct. 1660 (notwithstanding the fact that plaintiff had standing to pursue damages, he lacked standing to pursue injunctive relief); see also *Lewis v. Casey*, 518 U.S. 343, 358, n. 6 (1996) ("[S]tanding is not dispensed in gross.").

### B.    Legal Standard for a Motion to Dismiss Under F.R.C.P. 12(b)(6)

A motion to dismiss under Federal Rules of Civil Procedure Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint and measures whether "plaintiff can prove no set of facts that would entitle him or her to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46

ORBACH HUFF + HENDERSON LLP

1  (1957).  In order to state a claim, the *non-conclusory factual content* of a complaint, and

2  reasonable inferences from that content, must be plausibly suggestive of a claim entitling a

3  plaintiff to relief.  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  In ruling on a Rule 12(b)(6) motion,

4  the court need not accept legal conclusions as true simply because they are asserted as factual

5  contentions.  *See Ashcroft*, 556 U.S. at 678; Ileto v. Glock, Inc., 349 F.3d 1191, 1200 (9th Cir.

6  2003); *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).  It is also improper

7  for a court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." *Assoc.*

8  *Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).  A

9  claim may be dismissed where it presents a viable legal theory, but the plaintiff fails to plead

10  essential facts under that theory.  *Robertson,* 749 F.2d at 534.

11  **C.    Plaintiff Homeless Action! Lacks Standing for Any of the Claims in the FAC[1]**

12  An organization may have standing to sue on behalf of its members ("representational" or

13  "associational" standing) or on its own behalf ("organizational" standing).  *See Smith v. Pac.*

14  *Props and Dev. Corp.,* 358 F.3d 1097, 1101 (9th Cir. 2004). An entity's associational standing

15  depends on the standing of its members to bring suit, while its organizational standing is distinct

16  "from the standing of its members, turning instead on whether the organization itself has

17  suffered an injury in fact." *Id.*  Plaintiff HA! has not alleged facts to support either

18  organizational or representational standing.

19  **1.    HA! Has Not Pled Organizational Standing**

20  To demonstrate standing, "a plaintiff must show (1) [he] has suffered an 'injury in fact'

21  that is (a) concrete and particularized and (b) actual or imminent, not conjectural or

22  hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it

23  is likely, as opposed to merely speculative, that the injury will be redressed by a favorable

24  decision." *Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*, 528 U.S. 167,

25  180-181 (2000) (citations omitted).  Direct organizational injury is typically cognizable where

26  there has been: (1) a diversion of organizational resources to identify or counteract the allegedly

27

28  _____

[1] In hopes of promoting judicial efficiency, Defendants address the named Plaintiffs' lack of
standing within the sections specific to the various causes of action.

Defs' Notice of Motion and Motion to Dismiss Plts' First Amended Complaint; Memo of P&A [21-cv-10027-EMC]

unlawful action, *and* (2) frustration of the organization's mission.  *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002).

HA! has not pled adequate facts to confer standing.  "An organization may sue only if it was forced to choose between suffering an injury and diverting resources to counteract the injury."  *La Asociacion de Trabajadores v. City of Lake Forest*, 624 F.3d 1083, 1088, fn. 4 (9th Cir. 2010), citing to *BMC Marketing Corp.*, 28 F.3d at 1277 (rejecting the idea that a plaintiff organization has standing to sue based solely on its own decision regarding resources allocation, and requiring that the plaintiff be forced to divert resources in order to avoid an injury caused by defendant's conduct).  An organization's abstract interest in a problem, without direct harm, is insufficient to establish standing.  *Sierra Club v. Morton*, 405 U.S. 727, 738–39 (1972). Furthermore, "standing must be established independent of the lawsuit filed by the plaintiff."  *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 943 (9th Cir. 2011).  Thus, an organization "cannot manufacture [an] injury by incurring litigation costs... It must instead show that it would have suffered some other injury if it had not diverted resources to counteracting the problem."  *La Asociacion de Trabajadores*, 624 F.3d at 1088; *see also Combs*, 285 F.3d at 903.

An organization cannot claim a diversion of resources where the resources spent in response to the purported violation were "business as usual" for the organization.  For instance, in *American Diabetes Organization v. United States Department of Army*, 938 F.3d 1147 (9th Cir. 2019), the plaintiff organization conducted advocacy for laws, regulations and policies to keep children with diabetes safe at school and provided legal information and assistance to persons claiming diabetes-related discrimination.  *American Diabetes Organization*, 938 F.3d at 1150.  The organization sued based on the defendant's new and allegedly discriminatory policy for children with diabetes in defendant's childcare programs.  *Id.* at 1150.  The diversion of resources claimed by the organization was the time of one of its staff attorneys to a single intake call from a parent concerning the new policy, because it allegedly prevented the attorney from taking other calls concerning discriminatory practices.  *Id.*  The Court found that the plaintiff could not establish organizational standing because expending resources to provide counseling

- 8 -

ORBACH HUFF + HENDERSON LLP

1  to parents on the new, allegedly discriminatory policy was "business as usual" for the

2  organization, which already dedicated some of its staff attorneys' time to taking calls. *Id.*

3       Aside from a conclusory statement in ¶ 78 that HA! experienced a "diversion of its

4  resources," the only allegation included in the FAC is that "Homeless Action! has had to divert

5  resources to providing advocacy and support to those at Steamer Landing facing evictions,

6  including individually named plaintiffs." FAC, ¶ 66.  However, providing "advocacy and

7  support" to unsheltered persons is exactly the type of work to which HA! already dedicates its

8  resources.  Assisting unsheltered persons with locating and transitioning to adequate shelter,

9  which is what HA! has done in response to the planned abatement of the encampment, is simply

10 "business as usual" for the organization.  No facts are contained within the FAC to show any

11 *diversion* of resources by HA! due to each of the violations alleged in the First through Fifth

12 Causes of Action, as required to establish a direct and concrete injury to the organization.[2]  In

13 other words, HA! has not pled that it was forced to divert resources to assisting the residents of

14 Steamer Landing in order to avoid an injury to the organization.  See *La Asociacion de*

15 *Trabajadores*, 624 F.3d at 1088.  Accordingly, HA! lacks organizational standing to assert any

16 claim.

17     **2.**    **HA! Has Not Pled Representational Standing**

18      HA! also has not pled facts that would establish associational standing on behalf of its

19 members.  An association has standing to sue on behalf of its members only if each of the

20 following conditions are met: (1) the association's members would otherwise have standing in

21 their own right, (2) the interest the association is seeking to protect is germane to the

22 association's purpose, and (3) neither the claim asserted, nor the relief requested, requires

23 participation of individual members in the lawsuit.  *Hunt v. Wash. State Apple Adver. Comm'n*,

24

25 ───────────────

26 [2] The only attempt HA! makes to allege organizational standing is in the First Cause of Action
   for Violation of the ADA, wherein HA! conclusory alleges that "the [ADA] discrimination…
   has caused injury to Plaintiff Homeless Action! via the frustration of its mission and the
27 diversion of its resources." FAC, ¶ 78.  HA! cannot rely on a general claim of standing, but
   rather must allege facts establishing standing for each cause of action.  See *Lewis*, 518 U.S. at
28 358, n. 6 (1996) ("[S]tanding is not dispensed in gross.").

Defs' Notice of Motion and Motion to Dismiss Plts' First Amended Complaint; Memo of P&A [21-cv-10027-EMC]

ORBACH HUFF + HENDERSON LLP

1    432 U.S. 333 (1977).  An association can only have standing to seek a declaration, injunction, or

2    some other form of prospective relief on behalf of its members; it does not enjoy standing to

3    seek damages for monetary injuries peculiar to individual members.  *Warth v. Seldin*, 422 U.S.

4    490, 515-16 (1975).  Thus, HA! cannot have standing to seek damages on any claim, including

5    the Second Cause of Action.  See FAC, ¶ 90 (requesting "damages" on FHA claim).

6         Further, even when seeking injunctive relief, an organization's representational standing

7    is still limited by prudential considerations, including the general prohibition on a litigant's

8    raising another person's legal rights.  See, e.g., *Warth v. Seldin,* 422 U.S. 490, 499 (1975).

9    Courts "limit access to the federal courts to those litigants best suited to assert a particular

10   claim."  *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 100 (1979).  Here, the only

11   unsheltered persons HA! identifies as members are the named Plaintiffs, who are asserting their

12   own claims.  Importantly, *HA! does not allege that any other resident of Steamer Landing is a*

13   *member of the organization*; from the allegations, it appears the other members of HA! are

14   activists and advocates.  See FAC, ¶ 18.  The relief sought by HA! is therefore identical to the

15   relief sought by the named Plaintiffs.  Where an organization plaintiff merely repeats the claims

16   of individual plaintiffs, and seeks the same relief, the individuals are the better plaintiffs and the

17   organization lacks standing.  See *Disabled in Action of Metropolitan New York v. Trump Intern.*

18   *Hotel & Tower* 2003 WL 1751785 at * 10 (S.D.N.Y. 2003); *Access 123, Inc. v. Markey's*

19   *Lobster Pool, Inc.*, 2001 WL 920051, at *4 (D.N.H. Aug.14, 2001) ("In this case, Access 123 is

20   merely repeating the claims brought by Muehe, himself.  Muehe appears to be the better party to

21   assert his own claims.  Therefore, Access 123 lacks standing to assert claims on Muehe's behalf,

22   and lacks standing to assert claims on behalf of its other members.").  Accordingly, HA! has

23   also not pled associational standing.

24   ///

25   ///

26   ///

27   ///

28   ///

ORBACH HUFF + HENDERSON LLP

ORBACH HUFF + HENDERSON LLP

### D.    Plaintiffs' Claims Against Police Chief Ken Savano are Deficient[3]

The only reference to Chief Savano is his identification in ¶ 23.  Plaintiffs do not allege that Chief Savano directly participated in any of the underlying events, and therefore cannot maintain a suit against him in his individual capacity.  See *Thissel v. Murphy*, 2016 WL 3057382 at * 3 (N.D. Cal. May 31, 2016); see also *Monteilh v. Cty. of Los Angeles*, 820 F.Supp.2d 1081, 1089, n.10 (C.D. Cal. 2011), citing *Jones v. Williams*, 297 F.3d 930, 935-936 (9th Cir. 2002).  In fact, Plaintiffs explicitly allege that Chief Savano is "sued in his official capacity," apparently based on his ratification and/or approval "of the unconstitutional acts complained of herein."  FAC, ¶ 23.  Based on the reference to "California Vehicle [sic] Section 22651 (o)" in this same paragraph, Plaintiffs presumably mean to refer to the unreasonable seizure claim of Mr. Holdway's vehicle for expired registration, under the Fourth Cause of Action.  See FAC, ¶ 23; see also ¶¶ 62, 102.  However, there are no additional allegations against Chief Savano.  See FAC, ¶¶ 100-103.

To the extent Plaintiffs are attempting to include Chief Savano under a "supervisory liability" theory, established precedent precludes Plaintiffs' claim.  It is well-established that "[t]here is no longer a need to bring official-capacity actions against local government officials, for . . . local government units can be sued directly for damages and injunctive or declaratory relief."  *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985); see also *Monell*, 436 U.S. at 690 n.55 (noting that "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent").  Accordingly, where a plaintiff sues both an official and their employer, the claims against the individual are redundant and should be dismissed.  *Melendres v. Arpaio*, 784 F.3d 1254, 1260 (9th Cir. 2015) (stating that sheriff should be dismissed as claims impermissibly duplicative); *Ctr. for Bio-Ethical Reform, Inc. v.*

---

[3] A complaint like the one here, in which each claim alleges that the conduct of "Defendants" and/or "Defendants, their employees and agents" violates various rights of numerous plaintiffs, without saying which defendants, leaves a defendant, and the court, "guessing as to what facts support the legal claims being asserted against certain defendants" in violation of F.R.C.P. Rule 8.  See *McHenry v. Renne*, 84 F.3d 1172, 1176-1177 (9th Cir. 1996); see FAC, ¶¶ 77, 78, 83, 90, 97, 98, 101, 102, 106.

ORBACH HUFF + HENDERSON LLP

1    *L.A. Cty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008) (dismissing sheriff because "[w]hen

2    both a municipal officer and a local government entity are named, and the officer is named only

3    in an official capacity, the court may dismiss the officer as a redundant defendant").

4           Thus, any claims against Chief Savano in his official capacity must be dismissed because

5    they are duplicative of Plaintiffs' claims against the City.  *See Kentucky v. Graham*, 473 U.S.

6    159, 167 at fn. 14 (1985) (there is "no longer a need to bring official-capacity actions against

7    local government officials" because "local government units can be sued directly" under *Monell*

8    *v. New York City Dept. of Social Services*, 436 U.S. 658, 690 (1978)).  Thus, Chief Savano must

9    be dismissed.

10          **E.      The Petaluma Police Department is Not a Separate Entity**

11          Plaintiffs assert three 42 U.S.C. section 1983 claims for violation of the Eighth, Fourth

12   and Fourteenth Amendments.  FAC, ¶¶ 91-99; 100-103; 104-107.  Section 1983 creates liability

13   for "persons" who violated constitutional or federal rights when acting under of color law.  The

14   term "person" covers "state and local officials sued in their individual capacities, private

15   individuals and entities…, and local governmental entities," but not "municipal departments."

16   *Garcia v. City of Merced*, 637 F.Supp.2d 731, 760 (E.D. Cal. 2008) (dismissing § 1983 claim

17   against City of Merced Police Department because City of Merced – not its police department –

18   is the proper defendant), citing *Vance v. County of Santa Clara,* 928 F.Supp. 993, 995-996 (N.D.

19   Cal. 1996).  Here, there is no claim against the Petaluma Police Department ("PPD"); the proper

20   party is the City of Petaluma.  Therefore, the Third, Fourth and Fifth Causes of Action must be

21   dismissed with prejudice against the PPD.

22          **F.      The First Cause of Action for Violation of the Americans with Disabilities Act**

23                 **Fails to State a Cause of Action**

24          Plaintiffs allege that the planned removal of unsheltered persons from the Park without

25   having "adequate alternative placements" to accommodate their disabilities violates 42 U.S.C.

26   section 12132, which states that "… no qualified individual with a disability shall, by reason of

27   such disability*,* be excluded from participation in or be denied the benefits of the services,

28   programs, or activities of a public entity, or be subjected to discrimination by any such entity."

- 12 -

ORBACH HUFF + HENDERSON LLP

To prove a public program or service violates Title II of the ADA, a plaintiff must show: (1) he or she is a "qualified individual with a disability"; (2) he or she was either excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. *Chandler*, 83 F.3d at 1154–1155. Plaintiffs' allegations of purported ADA violations are unclear and confusing, and do not comply with F.R.C.P. Rule 8, which requires a "short and plain statement" that states "which wrongs were committed by which defendant." *McHenry*, 84 F.3d at 1179. Nevertheless, based on what has been alleged, there is no valid claim stated for ADA violations.

### 1. Plaintiffs Have Not Established They Were Discriminated Against Because of Those Disabilities or That They Are "Qualified Individuals"

While all of the named Plaintiffs have made the conclusory statements that they are "qualified persons with disabilities" under the ADA (see FAC, ¶ 68), none come close to alleging facts (1) establishing a disability and (2) that they were discriminated against in the provision of public services or activities because of that disability. The ADA defines "disability" as "(A) a physical or impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment ..." 42 U.S.C. § 12102. A person is substantially limited in a major life activity when that person is "unable to perform the major life activity" or is "significantly restricted as to condition, manner or duration under which [she] can perform a particular major life activity as compared to ... the average person in the general." *Coons v. Sec'y of U.S. Dep't. of Treasury*, 383 F.3d 879, 885 (9th Cir. 2004); 29 C.F.R. § 1630.2(j).

Plaintiffs' allegations fail to bring their purported disabilities within the requirements for an ADA claim. For instance, Ms. Naretto alleges that she has "severe high blood pressure" and unspecified "mobility disabilities." FAC, ¶ 45. Ms. Naretto does not allege how any *specific* disability substantially limits a major life activity. Ms. Chomwangnapi alleges that she has high blood pressure, is a "self-described slow learner," and was "diagnosed as autistic in Thailand" (FAC, ¶ 53), yet she does not allege how these substantially limit any major life activity. Mr.

- 13 -

ORBACH HUFF + HENDERSON LLP

Drake alleges he is bipolar and has ADHD and depression.  FAC, ¶ 58.  Mr. Drake does not allege how these disorders, which are common in the general public, substantially limit any major life activity.  Mr. Holdway alleges he suffers from PTSD (FAC, ¶ 60),[4] yet fails to allege how this substantially limits any major life activity.  *Magdeleno v. Washington County* 277 Fed.Appx. 679 (2008) finding that PTSD did not constitute a disability under the ADA.

More significantly, none of the Plaintiffs allege how their claimed disabilities are related whatsoever to their placement offers.  MIC and now PTPC is available to all unsheltered members of the community, both those with and without disabilities.  There is no allegation the Plaintiffs have been excluded from participating in MIC or PTPC solely on the basis of their disability.  Indeed, Mr. Erickson alleges he has been offered shelter at PTPC but does not want to go if he cannot take his trailer.  FAC, ¶ 50.  His self-exclusion from shelter placement has nothing to do with his claimed disabilities, but rather his personal preferences.  Mr. Reilly and Ms. Chomwangnapi allege they have been offered placement at PTPC but want access to a refrigerator and kitchen, and also want to take their pet rodents.  FAC, ¶ 54.  Their decision to reject the shelter offers has nothing to do with their disabilities.  Ms. Naretto alleges she had previously stayed at MIC but does not want to do so in the future because of her prior experience of "being subject to eviction without due process."  FAC, ¶ 44.  Mr. Holdway alleges he had previously stayed at MIC but did not want to be "subjected to harassment by the police." FAC, ¶ 61.  Ms. Naretto and Mr. Holdway's exclusion from MIC is due to their personal desires and preferences, not their purported disabilities.

### 2. Plaintiffs Do Not Allege any City Programs, Services and Activities in Connection with Which They Were Discriminated Against

Moreover, Plaintiffs fail to identify the specific City "programs, services and activities" that discriminate against them, which makes it impossible to ascertain exactly what is being alleged against the City.  At one point, Plaintiffs even summarily identify *all of the actions alleged in the complaint* as the "services, programs and activities under Title II" (FAC, ¶ 72),

---

[4] The most that HA! alleges about its members is that "[m]any members of Homeless Action!... are persons with disabilities," which is clearly insufficient.  FAC, ¶ 73.

1   which is far too vague to state a claim under F.R.C.P. Rule 8.  The allegations must be both

2   "sufficiently detailed to give fair notice to the opposing party of the nature of the claim so that

3   the party may effectively defend against it" and sufficiently plausible "such that it is not unfair

4   to require the opposing party to be subjected to the expense of discovery and continued

5   litigation."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  Nevertheless, Defendants will

6   endeavor to examine the allegations and how they fail to state a claim.

7        First, Plaintiffs explicitly allege that the City's public parks constitute the "services,

8   programs, or activities" in violation of the ADA.  See FAC, ¶ 76; see also ¶ 68.  However, the

9   Steamer Landing campers are not being denied the same use of the public park that all members

10  of the public enjoy, and they are certainly not being denied the use of a public park due to their

11  disabilities; they are merely denied the ability to *camp* over extended periods of time.

12       Plaintiffs further state that "[i]n addition, the City's enforcement of seizure of vehicles is

13  a service, program, or activity of the City."  FAC, ¶ 76.  Presumably, Plaintiffs mean to refer to

14  the impounding of Plaintiff Holdway's vehicle.  See FAC, ¶ 62.  Plaintiffs do not allege how

15  enforcing the Vehicle Code discriminated against Mr. Holdway on the basis of his disabilities.

16  Indeed, the FAC admits that the vehicle was seized because the registration was expired.  FAC,

17  ¶ 62.  All that is alleged is that Mr. Holdway is disabled, his registration had expired, and his

18  vehicle was impounded.  See FAC, ¶¶ 60. 62.  There are no allegations his vehicle was

19  impounded *because* he is disabled, or any other connection with his purported disability.

20       Plaintiffs also argue that the City's alleged failure to "provide adequate alternative

21  [shelter] placements" amounts to discriminatory action.  See, e.g., FAC, ¶ 77, 82.  However,

22  such arguments have previously been rejected.  In *Murray v. City of Philadelphia*, on a request

23  for a temporary restraining order, the Court considered an identical claim that the dissolution of

24  the city's homeless encampments would violate the ADA.  The Court found that:

25       On the record currently before the Court, Plaintiffs have not
         demonstrated that they are likely to succeed on the merits of their
26       claim that dissolving the encampments would violate the ADA.
         Plaintiffs allege that encampment residents "have been denied access
27       to shelters or hotel rooms because they do not provide adequate
         disability accommodations" and that "[m]any shelter doors cannot
28

ORBACH HUFF + HENDERSON LLP

- 15 -

ORBACH HUFF + HENDERSON LLP

be opened by wheelchair-bound people." [Citation]. While these allegations may support a claim that City shelters fail to meet ADA requirements, Plaintiffs have not offered sufficient evidence to support a finding that the City's encampment dissolution process is a "program, service, or activity" that excludes or discriminates against Plaintiffs on the basis of disability…" *Murray v. City of Philadelphia*, 481 F.Supp.3d 461, 474 (E.D. Penn. 2020).

The same reasoning applies here. There are no allegations in the FAC to support a claim that the City's encampment abatement process is a "program, service, or activity" that excludes or discriminates against Plaintiffs on the basis of disability. A general allegation that Defendants "knew, or should have known, that the incidence of disabilities for people who are homeless is extremely high" (FAC, ¶ 79) does not suffice to allege that the alleged planned abatement would discriminate against Plaintiffs *on the basis of* their purported disabilities.

Finally, any argument that the shelters or other programs and services provided by COTS are the "program, service, or activity" from which Plaintiffs have been prohibited from receiving fares no better. At the outset, there are no allegations establishing that MIC (or any other shelter), and the services provided by COTS at MIC, are *City* programs, services or activities. There are no factual allegations in the FAC establishing an agency relationship, other than a cursory conclusion that COTS is an agent of the City. See, e.g., FAC, ¶ 11. Leaving this aside, a "Title II claim cannot be based on allegations that given their particular mental health disabilities, plaintiffs need[] *more* support or *additional* services… that are not provided to other homeless people."[5] *Reed v. City of Emeryville*, 2021 WL 4974973 at * 9 (N.D.Cal. October 26, 2021). The Court in *Reed* explained:

> "Here the benefit, as alleged by plaintiffs, is the "homeless strategy program" to "serve and house homeless residents" that – as operated through Operation Dignity – includes "Rapid Rehousing, Emerging Needs Fund and outreach services including access to St. Vincent de Paul shelter beds for homeless individuals." FAC ¶¶ 22-23, 27; *see*

---

[5] According to Plaintiffs' allegations, they have actually been offered *more* and *better* services than other unsheltered community members, including other residents of Steamer Landing. Because of the Court's injunction, the Named Plaintiffs and other *non-party* Steamer Landing residents have received priority access to the limited non-congregate spaces in PTPC, which was opened specifically to meet the Plaintiffs' demands. See, e.g., FAC, ¶¶ 37, 46, 50, 54, 59, 64.

- 16 -

ORBACH HUFF + HENDERSON LLP

*also id.* ¶ 29 ("the City and its contractor do not operate the City's homelessness program in a way that is accessible to people with disabilities. As a result, people with severe mental and physical disabilities suffer outright exclusion from the program or are denied equal access to the benefits of the program, including case management, services, and permanent housing that appropriately accommodate their disabilities."). These are neutral policies with neutral benefits provided to all homeless individuals. What plaintiffs complain about is the failure of the City through its Program to provide additional services (*e.g.*, single room shelter beds, more frequent appointment reminders, additional time to complete tasks). The failure to provide additional services, however, is not a denial of a benefit under Title II. 2021 WL 4974972 at * 9.

The exact same invalid claim is pled here. The outreach and placement services and shelter options offered to Plaintiffs are the same as offered to all unsheltered persons in the community.[6] A failure to provide additional services in the form of non-congregate housing is not a denial of a benefit under Title II of the ADA. As such, Plaintiffs have not stated a claim under any theory.

### G. The Second Cause of Action for Violation of the Fair Housing Act Fails Because Plaintiffs Do Not State Facts Showing a Violation

The Second Cause of Action fails to state a claim for similar reasons to Plaintiffs' ADA claim. Discrimination covered by the FHA includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be

---

[6] To the extent Plaintiffs assert they have pled a separate claim for a failure to make reasonable modifications as required by the ADA's implementing regulations, 28 C.F.R. § 35.130(b)(7) (see FAC, ¶ 79), despite explicitly bringing the First Cause of Action under 42 U.S.C. section 12132 (see FAC, p. 21:8-12), the allegations are deficient to support a cause of action. See *Smith v. City of Oakland*, 2020 WL 2517857 at *6 (N.D. Cal. April 2, 2020) (noting that claims under 42 U.S.C. § 12132 and 28 C.F.R. § 35.130(b)(7) are two separate causes of action). Plaintiffs do not identify, *inter alia*, the reasonable modification to existing "policies, practices, or procedures" they requested that was refused by the City. See 28 C.F.R. § 35.130(b)(7)(i).

Along these lines, the complaint's throwaway reference to California Government Code section 1135, *et. seq.*, with a general allegation that "violations of the ADA are also state law violations" is insufficient to state a separate claim for a state law violation, if this is what Plaintiffs intended to do. See FAC, ¶ 69.

necessary to afford [a handicapped person] equal opportunity *to use and enjoy a dwelling*."  36 U.S.C. § 3604(f)(3)(B); emph. added.

The first deficiency in this claim is that Plaintiffs do not allege any facts showing that each of them are handicapped, as that term is defined in the Act.  See FAC, ¶¶ 88.  The second deficiency is that Plaintiffs do not identify the "dwelling" that they have been denied the use of due to a refusal to make reasonable accommodations in rules, policies or practices.  *Id.*  At most, Plaintiffs offer conclusory allegations that emergency shelters, motels and other housing placements constitute "dwellings."  FAC, ¶ 86.  Presumably, Plaintiffs mean to refer to MIC.  However, a homeless shelter, such as the transitional housing facility at issue here, has never been characterized as a "dwelling" within the context of the FHA.  See *Community House, Inc. v. City of Boise, Idaho* 490 F.3d 1041, 1044 n. 2 (9th Cir. 2007) ["[w]e have never squarely addressed the issue of whether all temporary shelters fit within the Act's definition of dwelling...; nevertheless, we decline to do so here."].  The FHA defines a "dwelling" as "any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a *residence* by one or more families, and any vacant land which is offered for sale or lease for the construction or location thereon of any such building, structure, or portion thereof."  42 U.S.C. § 3602(b) (emph. added); *see* 24 C.F.R. § 100.201 (defining "dwelling unit" as including "sleeping accommodations in shelters intended for occupancy as a *residence* for homeless persons" (emph. added)).  At the very least, there are no factual allegations in the FAC that MIC is a *residence* sufficient to bring it within the definition of "dwelling."

The meaning of "dwelling" aside, the FHA only applies to the *sale or rental* of dwelling units.  42 U.S.C. § 3603.  Plaintiffs' use of the bed offered by COTS at its MIC and/or Petaluma People Services shelters was pursuant to a license agreement, not a tenancy.  No sale or rental of the dwelling occurred, a conclusion that is inescapable based on Plaintiffs' admission that they received nothing more than a temporary bed at the facility.

Plaintiffs' FAC is also void of any factual allegations that MIC refused to make reasonable accommodations in any of its "rules, policies, or practices" that, had they been implemented, would have enabled Plaintiffs to *use and enjoy the "dwelling" – MIC*.  For

- 18 -

ORBACH HUFF + HENDERSON LLP

instance, there are zero allegations that MIC refused a request to modify intake procedures, its common areas, the assigning of top/bottom bunks, or any other aspect of the existing congregate shelters' rules and practices to accommodate the Plaintiffs' purported disabilities.  There are also *zero* allegations that any modification to the assessment, prioritization and placement of homeless individuals (see FAC, ¶ 86) would allow the Plaintiffs – who, by their own allegations refuse to use congregate shelters – to utilize the congregate MIC.  Instead, this claim apparently seeks to impose liability on the theory that an emergency congregate shelter is required to fundamentally change *what it is* (as opposed to modifying any specific rule, policy, practice, or service) and become a congregate shelter, so that Plaintiffs can use that shelter.  This is not an FHA claim.[7]

## H.     Plaintiffs' Section 1983 Claims are Precluded by *Monell*

Plaintiffs' allegations against the City under section 1983 (including the Third Claim under the Eighth Amendment, the Fourth Claim under the Fourth Amendment and the Fifth Claim under the Fourteenth Amendment) are further precluded by the High Court's decision in *Monell v. Dep't of Social Servs. of N.Y.*, 436 U.S. 658 (1978).  A plaintiff pleading a section 1983 claim against a municipality (such as the City of Petaluma) must show: "(1) that the plaintiff possessed a constitutional right of which she was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." *Plumeau v. Sch. Dist. No. 40 Cnty. Of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997) (alterations and internal quotation marks omitted).  Further, "[l]iability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency, and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates,* 99 F.3d 911, 918 (1996); see *Peterson v. City of Fort Worth*, 588 F.3d 838 (5th Cir. 2009) (twenty-seven incidents of excessive force in four years, with no

---

[7] It is well established that there is no fundamental right to housing.  *Lindsey v. Normet*, 405 U.S. 56, 74 (1972).

- 19 -

context as to the overall number of arrests or any comparisons to other cities, is not sufficient evidence of a pattern rising to the level of a policy).

To survive a motion to dismiss, a *Monell* claim must: (1) "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively;" and (2) "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *A.E. ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012).  "Facts regarding the specific nature of the alleged policy, custom, or practice are required; merely stating the subject to which the policy relates (i.e., excessive force) is insufficient." *Cain v. City of Sacramento*, 2017 WL 4410116, at *3 (E.D. Cal. 2017), citing *A.E.*, 666 F.3d at 637.

The vague allegations in the FAC suggest Plaintiffs are attempting to predicate their claims under purported unconstitutional polices or customs, stating: (1) "Defendants' policies and practices in evicting unhoused individuals from public places and failing to provide adequate alternative placements" and (2) unspecified "policies on the interpretation and/or application of California Vehicle [sic] Section 22651 (o)."  See FAC, ¶¶ 77, 23; see also ¶¶ 21, 22 ("[t]he acts complained of herein constitutes policies, practices and customs" of the City and of the PPD).  These allegations are woefully insufficient to state a *Monell* claim against the City and/or the PPD.

As discussed *supra*, Plaintiffs have not pled any deprivation of their constitutional rights. However, even if they had, Plaintiffs have simply not pled facts that the vague and unspecified "policies," "practices" or "customs" asserted in their complaint are adopted official policies of or customs of widespread practice of the City that, "although not authorized by written law or express municipal policy, [are] so permanent and well-settled as to constitute a custom or usage with the force of law."[8]  See *Young v. City of Visalia,* 687 F.Supp.2d 1141, 1147 (E.D.Cal. 2009); citing *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).  Plaintiffs' allegations on these

---

[8] Indeed, with respect to Vehicle Code section 22651 (concerning impounding vehicles with expired registration), Plaintiffs do not attempt to plead what the offending "policies on the interpretation and/or application" even are.

ORBACH HUFF + HENDERSON LLP

1   points are merely conclusions, not actual facts.  *See, Ayala v. Cnty. of Imperial*, 2017 WL

2   469016 at *7 (S.D. Cal. Feb. 3, 2017).  Finally, Plaintiffs have completely failed to plead how

3   any City/PPD policy, practice or custom is connected to their claimed constitutional violations.

4   Accordingly, Plaintiffs' section 1983 claims as plead in their Third Claim under the Eighth

5   Amendment, the Fourth Claim under the Fourth Amendment and the Fifth Claim under the

6   Fourteenth Amendment should be dismissed.

7   **I.    The Third Cause of Action for Violation of the Eighth Amendment**

8   **Prohibition on Cruel and Unusual Punishment Fails Since Plaintiffs Have Not**

9   **Been Charged with a Crime**

10  The Eighth Amendment "circumscribes the criminal process in three ways: First, it limits

11  the kinds of punishment that can be imposed on those convicted of crimes; second, it proscribes

12  punishment grossly disproportionate to the severity of the crime; and third, it imposes

13  substantive limits on what can be made criminal and punished as such." *Ingraham v. Wright,*

14  430 U.S. 651, 667 (1977).  The Eighth Amendment was designed to protect those convicted of

15  crimes.  *See Steffen v. Rowland*, 972 F.2d 1343, at *3 (9th Cir. 1992), citing *Ingraham v. Wright*,

16  430 U.S. 651, 668 (1977).

17  In *Martin v. City of Boise*, a Boise city ordinance made it a misdemeanor to use "any of

18  the streets, sidewalks, parks, or public places as a camping place at any time." 902 F.3d at 1048.

19  The Ninth Circuit held that "the Eighth Amendment prohibits the imposition of criminal

20  penalties for sitting, sleeping, or lying outside on public property for homeless individuals who

21  cannot obtain shelter" within a jurisdiction.  *Id.* at 1048.  However, the Ninth Circuit cautioned

22  that *Martin* "in no way dictate[d] to the City that it must provide sufficient shelter for the

23  homeless, or allow anyone who wishes to sit, lie, or sleep on the streets ... at any time and at any

24  place." *Id.*

25  As explained by the Court in *Miralle v. City of Oakland*, when considering a similar

26  Eighth Amendment claim, "Plaintiffs are not faced with punishment for acts inherent to their

27  unhoused status that they cannot control.... Plaintiffs' theory would therefore require the Court

28  to extend the right described in *Martin* well beyond the parameters set by the Ninth

ORBACH HUFF + HENDERSON LLP

ORBACH HUFF + HENDERSON LLP

1   Circuit.  *Martin does not establish a constitutional right to occupy public property indefinitely at*

2   *Plaintiffs' option*."  2018 WL 6199929, at *2 (N.D. Cal. Nov. 28, 2018) (emph. added).

3       The FAC purports to bring this case within the self-described "narrow" holding of *Martin*

4   (*Martin,* 902 F.3d at 1048) by alleging that the City's anti-camping ordinance, which prohibits

5   camping in public parks, is a wholesale criminalization of sleeping that punishes the status of

6   homelessness.  FAC, ¶ 93.  Numerous courts have rejected similar attempts to expand *Martin* in

7   this way.  In *Butcher v. City of Marysville*, in which the defendant city had evicted homeless

8   occupants and destroyed their property, the court rejected the plaintiffs' Cruel and Unusual

9   Punishment claim because the Eighth Amendment does not extend beyond the criminal process.

10  2019 WL 918203, at *1-2, 7 (E.D. Cal. Feb. 25, 2019); *see also Gomes v. County of Kauai*,

11  2020 WL 6937435 at *3 (D. Hawai'i November 24, 2020) (ordinance criminalizing sleeping in

12  one specific public park did not violate Eighth Amendment because neither the "simple act of

13  sleeping outside" nor someone's status as homeless were criminalized); *Le Van Hung v. Schaaf*,

14  2019 WL 1779584, at *5 (N.D. Cal. Apr. 23, 2019) (no Eighth Amendment claim because a

15  "clean and clear" of the park did not require the arrest of the plaintiffs).

16      In *O'Callaghan v. City of Portland*, the Court noted that while the ordinance in question

17  *did* provide for criminal prosecution, the plaintiff had not alleged that he was arrested, charged,

18  or convicted, or asserted any facts showing a "credible risk of prosecution" despite his camps

19  being swept twenty-five times.  2020 WL 265197, at *1 (D. Or. Jan. 17, 2020) (dismissing

20  Eighth Amendment claim where plaintiff was not prosecuted or fined for violating the

21  anticamping ordinance and failed to allege a credible risk of future prosecution, thus lacking

22  standing to raise an as applied Eighth Amendment claim).

23      Here, there is no allegation that the City's anti-camping ordinance provides for criminal

24  prosecution, or that any of the named Plaintiffs have been charged with or convicted of a crime

25  due to camping in the Park.  The Plaintiffs have not alleged they were arrested, charged, or

26  convicted of any crime, nor have they asserted any facts showing a credible risk of prosecution,

27  despite their camps being abated several times before.  FAC, ¶¶ 30-32.  The only reference in

28  the FAC that any person has been prosecuted for a crime is Exhibit B, which appears to be a

- 22 -

picture of a misdemeanor citation issued to Eric Conroy on October 14, 2020, for camping on public property.  However, Mr. Conroy is not a plaintiff in this case; this case is not a class action; and Mr. Conroy is not alleged to be a member of HA! (which does not have standing regardless, see § III.A, *supra*).  Any citation Mr. Conroy received is irrelevant to the claim and insufficient to confer standing *on the Plaintiffs*.[9]  The anti-camping ordinance simply does not criminalize the status of homelessness, and there is no Eighth Amendment claim stated.

### J.     Plaintiffs' Claims for Violation of the Fourth and Fourteenth Amendment Related to Seizure of Property Do Not State a Claim

In *Lavan v. City of Angeles*, the Court held that homeless individuals are entitled to meaningful notice and an opportunity to be heard before their unattended but unabandoned property is seized and destroyed.  *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1032 (9th Cir. 2012).  If such procedural protections are followed, there will be no Fourth or Fourteenth Amendment violations.  *Id*. at 1032.

#### 1.     The Fourth Cause of Action

In this cause of action, Plaintiffs allege only two instances of potential violations of the Fourth Amendment: (1) the seizure of Plaintiff Jonathan Thomas Holdway's vehicle (FAC, ¶ 102); and (2) the seizure of Plaintiff Erickson's property (FAC, ¶ 101).  Thus, Mr. Holdway and Mr. Erickson are the only two Plaintiffs with potential standing to maintain a claim for violation of the Fourth Amendment; however, neither has alleged sufficient facts to state a claim.  See *Friends of the Earth,* 528 U.S. at 180-181 (plaintiff must allege injury to have standing).

First, the impounding of Mr. Holdway's vehicle is completely unrelated to the City's planned abatement and/or the efforts to help Plaintiffs obtain shelter.  By Plaintiffs' own allegations, Mr. Holdway's vehicle was impounded for lack of registration, in violation of the

---

[9] To the extent Plaintiffs claim their passing mention of the City's trespass laws in ¶ 42 (which do provide for criminal prosecution) are sufficient to allege a threat of criminal prosecution, the enforcement of trespass laws on private property does not constitute an Eighth Amendment violation.  See *Sullivan,* 2017 WL 4922614 at *4 (involving a transit district); see Ex. A (notice of trespass on private property).  Regardless, there are no allegations any Plaintiff has been charged with criminal trespass or has a credible risk of prosecution.

ORBACH HUFF + HENDERSON LLP

1   Vehicle Code.  FAC, ¶ 62.  One exception to the general rule that a seizure without a warrant is

2   per se unreasonable under the Fourth Amendment is the "community caretaking" doctrine,

3   which allows police officers to impound "vehicles from the streets when they 'jeopardize public

4   safety and the efficient movement of vehicular traffic.'"  *Sandoval v. City of Sonoma*, 912 F.3d

5   509, 516 (9th Cir. 2018).  Impounding a vehicle whose registration has expired falls under the

6   community caretaking exception and is a reasonable seizure under the Fourth Amendment.  See,

7   e.g., *Leslie v. City of Sand City*, 615 F.Supp.2d 1121, 1126 (N.D. Cal. 2009); see also Vehicle

8   Code § 22651(o)(1)(A) (allows a peace officer to impound a vehicle where its registration is

9   more than six months expired); *Crago v. Knackle*, 2020 WL 3073771 at * 3 (E.D. Cal. 2020).

10          Second, the alleged seizure and destruction of Plaintiff Erickson's "building materials

11   which he uses to build furniture" that "he was unable to place inside his trailer" at some

12   unspecified point in time is far too vague to state a claim for unreasonable seizure.  See FAC, ¶

13   49.  See *Starr*, 652 F.3d at 1216 (allegations of the complaint must be "sufficiently detailed to

14   give fair notice to the opposing party of the nature of the claim so that the party may effectively

15   defend against it").  Nevertheless, by the allegations in ¶ 49, it appears that Mr. Erickson's

16   property was seized *after* a notice to vacate and debris removal had been posted.  *Id*.; see also

17   Ex. A to FAC.  In *Sullivan v. City of Berkeley*, the Court found the plaintiffs were not likely to

18   succeed on the merits of their claim for seizure of property in violation of the Fourth and

19   Fourteenth Amendment where the City policy was to give Plaintiffs "an opportunity to remove

20   their personal effects," via a 72-hour notice, and to "notif[y] of the location of any seized

21   property" that was stored.  2017 WL 4922614, at *6 (N.D. Cal. Oct. 31, 2017).  Here, the FAC

22   alleges that the City has posted 72-hour notices to vacate and debris removal prior to conducting

23   abatements of the Park.  See FAC, Ex. A.  These notices indicated that all personal property is to

24   be removed by a certain date, and any property not removed by that date will be considered

25   abandoned.  *Id*.  The notices further indicated that the property would be stored and held for

26   safekeeping for ninety (90) days and included information about how to reclaim any property

27

28

ORBACH HUFF + HENDERSON LLP

1    that was seized.  *Id.*  Thus, as a matter of law, any seizure of property was not unreasonable.[10]

2            **2.**        **The Fifth Cause of Action Fails as a Matter of Law**

3            Plaintiffs similarly fail to allege a due process violation.  At the outset, the Fifth Cause of

4    Action does not identify which Plaintiff's property was seized, what property was seized, when

5    it was seized, and explain how it was seized without due process.  All Plaintiffs allege is that

6    "Defendants have seized and destroyed the personal property of unhoused individuals residing at

7    Steamer Landing without due process or lawful justification."  FAC, ¶ 106.  This is a

8    conclusion.  There is no Fourteenth Amendment violation alleged, and therefore this cause of

9    action does not state a claim by any Plaintiff against any Defendant.  Nevertheless, as a matter

10   of law there has not been, nor will there be, a due process violation for any seizure of property,

11   because the City has provided sufficient notice and a method to recover any seized property.

12   See *Sullivan*, 2017 WL 4922614, at *6; see FAC, Ex. A; ¶ 32; see § I.2 *supra*.

13   **IV.**    **CONCLUSION**

14           For the foregoing reasons, Defendants City of Petaluma, Petaluma Police Department and

15   Ken Savano respectfully request this Motion to Dismiss be granted in its entirety and that

16   Plaintiffs' claims against Defendants and Does 1 to 20 be dismissed.

17   Dated:  January 21, 2022         Respectfully submitted,

18                           **ORBACH HUFF & HENDERSON LLP**

19                           By:   /s/ *Kevin E. Gilbert*

20                                Kevin E. Gilbert

21                                Kelly Houle-Sandoval

22                                Attorneys for Defendants
                             CITY OF PETALUMA, PETALUMA POLICE

23                                DEPARTMENT and KEN SAVANO

24

25

26

27

28

---

[10] Plaintiffs reference Art. 1 § 13 of the California Constitution in the caption to the cause of action.  Although Plaintiffs do not attempt to state a separate claim, the rights protected under § 13 of the California Constitution are the same as those protected by the Fourth Amendment. See, e.g., *Sanchez v. County of San Diego*, 464 F.3d 916, 929 (9th Cir. 2006).