COLLEEN S. O'NEAL, ESQ. SBN: 108042
LAW OFFICE OF COLLEEN S. O'NEAL
988 Kenmore Ln.
Santa Rosa, California 95407
Telephone: (707) 696-8514
Email: colleensoneallegal@gmail.com

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANINE NARETTO, MATTHEW ERICKSON, JONATHAN THOMAS HOLDWAY, TODD SIMONE, individuals; HOMELESS ACTION! an unincorporated association, on behalf of itself and those it represents;<br><br>　　　　Plaintiffs,<br><br>　　　　　vs.<br><br>CITY OF PETALUMA and PETALUMA POLICE DEPARTMENT.<br><br>　　　　　Defendants. | Case No. 3:21-cv-10027-EMC<br><br>**SECOND AMENDED COMPLAINT**<br><br>DEMAND FOR JURY TRIAL<br><br>Complaint filed: October 5, 2021 |

1

Second Amended Complaint, Case No. 3:21-CV-10027-EMC

**JURISDICTION AND VENUE**

1.  The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, 42 U.S.C. § 12132 and 42 U.S.C. § 1983 because Plaintiffs' claims arise under the Laws and Constitution of the United States.  Jurisdiction also exists under the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202.

2.  Venue is proper in the Northern District of California because the events and conduct complained of herein all occurred in Sonoma County, California.

**PLAINTIFFS**

3.  Plaintiffs JANINE NARETTO, MATTHEW ERICKSON, JONATHAN THOMAS HOLDWAY and TODD SIMONE are unhoused individuals who reside at Steamer Landing Park encampment ("Steamer Landing"), in Petaluma, Sonoma County, California.

4.  Plaintiff HOMELESS ACTION! (hereinafter HA!), an unincorporated association, is a group of grassroots activists in Northern California working towards ending the suffering of people who do not have a home.  HA! works with and for homeless people in Sonoma County.  HA! is made up of housed and unhoused individuals and advocates. Named plaintiffs are HA! members.

**DEFENDANTS**

5.  Defendant City of Petaluma ("City") is a municipal corporation organized under

2

the laws of the state of California and the Petaluma City Charter, with the capacity to sue

and be sued. The acts complained of herein constitute policies, practices and customs of

the City.

6.   The Petaluma Police Department ("PPD") is an agency of Petaluma and as such,

separately sueable as a public entity. The acts complained of herein constitutes policies,

practices and customs of the PPD.

7.   Defendants, and each of them, at all times relevant hereto, were acting

under color of state law and are recipients of federal funds.

## STATEMENT OF FACTS

8.   According to the 2020 Sonoma County Homeless Census Comprehensive Report

("Homeless Census Report") there are 296 unhoused individuals in the City of Petaluma.[1]

Of those, 40 percent of unhoused persons surveyed identified as having a disability[2] and

28 percent were counted in vehicles. [3]

---

[1] https://srcity.org/DocumentCenter/View/30661/2020_Sonoma_County_Homeless_Census_Comprehensive_Report at page 12 (last visited April 17, 2022).

[2] https://srcity.org/DocumentCenter/View/30661/2020_Sonoma_County_Homeless_Census_Comprehensive_Report at page 8 (last visited April 17, 2022).

[3] https://srcity.org/DocumentCenter/View/30661/2020_Sonoma_County_Homeless_Census_Comprehensive_Report at page 12 (last visited April 17, 2022).

3

1

2

**<u>Petaluma's Funding for the Unhoused</u>**

3

9.  On September 13, 2021, the Petaluma City Council ("City") declared a Shelter

4

Crisis in Petaluma.[4]  This declaration allows City to implement among other housing

5

options, Safe Parking and Sanctioned encampments.[5]

6

10.  For Fiscal Year 2021-2022, Karen Shimizu, Petaluma's Housing manager

7

recommended that the City adopt a resolution approving $150,000.00 for 12 shelter beds

8

9

dedicated for the City at Mary Isaak Center ("MIC") and $60,000.00 for permanent

10

supportive housing programs.[6]

11

11. On November 3, 2021, the City began the process of completing its People's

12

13

14

15 _____

16

17

18

[4]https://cityofpetaluma.org/taking-care-of-petalumas-unsheltered/ (last visited April 17,

19

2022).  Also see, ECF No. 43 p. 50.

20

[5] Sanctioned encampments and safe parking were provided as potential short-term options
for the City of Petaluma.  ECF No. 43, p. 12.  The City of Rohnert Park ("RP"), a small
neighboring City North of Petaluma, opened a sanctioned encampment in February of
2022. The documents obtained through a Public Records Act request show that the total
costs to RP were $4,516.75 for fencing.  RP also had expenses for personal protective
equipment and pizza.  RP stated that it did not have costs for portable toilets,
handwashing stations, and trash pickup services because those were covered by their
existing contract with Recology.  The City of Rohnert Park also doesn't have expenses
for security as the City allows the encampment to manage itself.

21

22

23

24

25

26

[6] ECF No. 43, p. 15-16.

27

4

28

Village for 25 non-congregate shelter units.[7] As of April, 1, 2022, 9 tiny homes had been completed and all 9 units are currently occupied.

12. On March 10, 2022, the City of Petaluma issued a Press Release announcing that Petaluma had been awarded $15,680,382.00 in State of California funding through the Project Homekey program which would support the creation of 60 single occupancy permanent supportive housing units.  The press release stated that, "The project is scheduled to be completed and open by November of this year."[8]

**The MIC Emergency Shelter**

13.  The MIC has 80 emergency congregate shelter beds that are available to all 2,745 unhoused persons in Sonoma County seeking a shelter bed.  The closest alternative congregate shelter is in Santa Rosa, CA, which is a 1.5-hour bus ride from Steamer Landing.

14.  Defendants' agent, MIC emergency shelter, requires unhoused individuals seeking emergency shelter to complete a pre-application which would add their name to MIC's internal waitlist.[9]  The, MIC preapplication states that in order to qualify you,

---

[7] ECF No. 43 p. 5 at par. 15.

[8] https://storage.googleapis.com/proudcity/petalumaca/uploads/2022/03/Project-Homekey-Press-Release.pdf  and https://cityofpetaluma.org/project-homekey/

[9] https://cots.org/need-help/ (last visited April 17, 2022).

Second Amended Complaint, Case No. 3:21-CV-10027-EMC

"Must be able to perform self-care without the assistance of a caregiver" and "Must be able to live peaceably in a communal setting". These pre-qualifications exclude some disabled unhoused persons before they apply. Further, the MIC preapplication states,

> "Once your preapplication is submitted, your name will be placed on our waitlist. When your name reaches the top of this list, you will be contacted to come in for a bed. You will have 24 hours to contact us and schedule an intake appointment. Those who do not call within this timeframe will be removed from the waitlist and will need to reapply."

15. Since October 22, 2021, advocates have assisted Steamer Landing residents with completing and submitting Mary Isaak Center Emergency Shelter Preapplications. The placements at the congregate shelter have been inconsistent. Sometimes it takes about a week to hear back from Mary Isaak Center and sometimes it takes months to hear back. It is rare that someone is able to be placed within 72 hours of submitting their "pre-application".

**The Encampment**

16. The Steamer Landing encampment is located at Steamer Landing Park, a 9.7-acre public park. The park includes benches, three picnic tables, and a barn. Steamer Landing Park also has a fire pit and two parking lots.

17. The number of tents at Steamer Landing have fluctuated but have remained at about 25-30 since October 2021. There are currently closer to 25 tents at Steamer Landing. There are also currently approximately 3 unhoused individuals residing in

Second Amended Complaint, Case No. 3:21-CV-10027-EMC

vehicles, which includes one RV.  The unhoused residing in vehicles at Steamer Landing camp has also fluctuated from approximately 3-6 vehicles.

18.   The tents are not blocking access to the park or otherwise creating a hazardous situation for themselves or others. The Sonoma Marin Area Rail (SMART) has **abandoned** railroad tracks that are near the back entrance of the encampment.  SMART also has active railroad tracks that are across the street from the park.  No tent is located on or near the active railroad or the street adjacent to the railroad.

19.   The City has made portable toilets, handwashing stations, running water, and trash services available for the encampment residents off and on since approximately November 2021.  When the City makes these services available, the encampment residents utilize these services.

20. The emergency beds at the MIC are not appropriate for many of those living with mental disabilities.  Plaintiffs and many other Steamer Landing residents have indicated that being in congregate shelter placements, involving large numbers of people and/or constant noise, triggers symptoms of their PTSD or other mental health and anxiety disorders.  For many, being in congregate shelters where they lack privacy and/or where they cannot control their surroundings exacerbate the symptoms of their disabilities.  Consequently, Steamer Landing disabled residents have requested accommodations in non-congregate shelters.

7

### The Petaluma Police Department

21. The PPD Special Services Division is a City service that responds to situations involving homeless throughout the City of Petaluma.[10]  This service includes issues relating to camping on public property.  According to Defendants, "the City partners with a number of nonprofit and other governmental agencies to help assure that anyone in need (including any homeless individuals) are able to have access to a secure and safe location to stay and any necessary services."[11]

22. Defendants have a homeless encampment abatement program run by the Petaluma Police Department (PPD).  As part of the abatement program, the PPD issues a 72-Hour Notice to Vacate threatening citation or arrest for quality of life violations including camping; issues citations and/or arrests those that do not timely vacate for camping, trespassing, or other quality of life citations such as those under Fish and Game; bring in tractors with scoopers, other heavy machinery, and dump trailers to dispose of property unhoused people are unable to take with them.

23. The City of Petaluma has an anti-camping ordinance that the PPD enforces which makes it illegal to camp on public property without prior approval from the City. The City's anti-camping ordinance 13.28.180 (H) provides that no person, shall camp unless

---

[10] ECF No. 8-7, p. 2, par. 3.

[11] ECF No. 8-7, p. 3, par. 9.

Second Amended Complaint, Case No. 3:21-CV-10027-EMC

written permission has been obtained from the director.[12]  The PPD also enforces Sonoma County's anti-camping Ordinance 19-15(6).

24. On information and belief, PPD collaborates with MIC to discuss congregate shelter bed availability but not non-congregate ("NCS") shelter options for disabled persons that cannot access congregate beds.

25. Prior to December 1, 2021, Defendants agents Committee on the Shelterless ("COTS")/ MIC outreach workers only offered pre-applications for congregate shelter beds to unhoused persons facing evictions, including to unhoused persons with disabilities who are unable to access congregate shelters.  And even those shelter beds are not, in fact, available within 72 hours.

26. During the pandemic, Defendants did not reduce or cease from evicting unhoused residents from public property. Instead, at Steamer Landing alone Defendants conducted at least 3 large sweeps in the middle of the pandemic (October 2020 to October 2021).[13]

_____

[12] https://petaluma.municipal.codes/Code/13.28.180

[13] During the Pandemic the Center for Disease Control and Prevention (CDC) recommended that, "If individual housing options are not available, allow people who are living unsheltered or in encampments to remain where they are." https://www.cdc.gov/coronavirus/2019-ncov/community/homeless-shelters/unsheltered-homelessness.html#facility-encampments

9

Plaintiffs are also aware of other sweeps in the City of Petaluma during this time period including at Lynch Creek camp.

27. Plaintiffs are informed and believe and based thereon allege that pursuant to Defendants past and current custom, policy and practice, PPD forcibly removes unhoused people from public places by issuing Notices to Vacate which threaten citation and/or arrest for quality of life laws including camping, and by issuing citations and/or arresting unhoused people, without first offering alternative or accessible placements that are immediately available. For those, who are able to access congregate shelter but who are unable to enter MIC prior to the expiration of a 72-Hour Notice to Vacate, due to the lack of available shelter and the shelter's intake process, face a credible risk of prosecution of being in violation of anti-camping and other quality of life ordinances if they remain on public property.  For mentally disabled persons, Defendants enforcement of anti-camping ordinances disproportionately impact and prohibit mentally disabled people from living in public places, by citing and threatening them with citation and/or arrest for failing to move from public places even though they have not been offered accessible shelter placements.  Due to the failure of Defendants to offer disabled unhoused persons accessible shelter, Steamer Landing disabled residents who are unable to enter congregate shelter placements face a credible risk of prosecution of being in violation of anti-camping and other qualify of life ordinances if they remain on public property.

28. Defendants agents only offered mentally disabled unhoused residents' applications

10

for MIC even though congregate shelter was not appropriate for certain unhoused residents.  For example, MIC wrote in one note, "was unable to provide the appropriate level of support…during both stays."[14]

29. In October of 2020, April of 2021[15], and June of 2021[16] the City evicted Steamer Landing unhoused residents.  Plaintiffs are informed and believe and based thereon allege that pursuant to past and current custom, policy and/or practice, during each of the sweeps the City failed to offer mentally disabled unhoused residents who were not able to access congregate shelter placements, even though they knew or should have known that the unhoused residents were unable to access congregate shelter.  The only options provided were congregate shelter placements and only some who had previously submitted pre-applications to MIC were able to immediately enter a shelter placement.

30. On October 14, 2020, Eric Conroy was residing at Steamer Landing in a tent.  On the day of the eviction Mr. Conroy was unable to move due to foot injuries.  Mr. Conroy was not provided with medical assistance or assisted into shelter, instead Mr. Conroy was

---

[14]  ECF No. 51, p. 9 (Fred Pressler), ECF No. 51, p. 10 (Melody Thornton).

[15] Petaluma leaders search for solutions amid homeless crisis (petaluma360.com)

[16] On or about June 7, 2021, Petaluma Police Department issued 72-Hour Notices to Vacate to approximately 20 Steamer Landing Park residents.

Second Amended Complaint, Case No. 3:21-CV-10027-EMC

cited for camping on public property pursuant to Sonoma County Ordinance 19-15(6). Attached as **Exhibit B** is a copy of the citation received by Mr. Conroy.

31. Plaintiffs are informed and believe and based thereon allege that pursuant to past and current custom, policy and/or practice, Defendants engage in on-site destruction of personal property, and fail to safekeep property that Steamer Landing residents are unable to remove after the expiration of a 72-Hour Notice to Vacate. Homeless advocates have observed PPD engaging in on-site property destruction of property at Steamer Landing and at other encampments in Petaluma.

32. On information and belief, that based on Defendants policy, custom, and practice, prior to an impending sweep, the City increases its enforcement of quality of life laws and takes away services it provides including water access and trash services to force people to move before they have had access to shelter options.

33. Plaintiffs are informed and believe and based thereon allege that pursuant to past and current custom, policy and/or practice, during the October 2020, April 2021, and June 2021 evictions, PPD used a tractor scooper to scoop up personal property into a dumpster that unhoused individuals were unable to gather prior to the tractors and dumpsters arrival. Property was not stored for safekeeping by the City. Steamer Landing encampment residents lost tents, food, bedding, tools, clothes, hygiene and self-care items, art supplies, books, water, and survival gear when the City of Petaluma destroyed their property. On information and belief, PPD has the same custom and practice of

Second Amended Complaint, Case No. 3:21-CV-10027-EMC

taking heavy machinery, and dumpsters to other encampment evictions, and failing to safekeep property that unhoused residents are unable to take with them during evictions.

34.    In October 2020, a Homeless Action! representative, along with Petaluma unhoused residents, and other advocates, met with City officials to discuss their concerns about 8th Amendment violations and destruction of property.   Also in October of 2020, unhoused Steamer Landing residents and advocates wrote letters to the City Manager and filed Government Tort Claims with Defendants which included issues relating to destruction of property by PPD.

35.   On or about, Saturday, October 2, 2021, the Petaluma Police Department ("PPD") served a "72 Hour Notice to Vacate Illegal Campsite & Debris Removal".  The Notice indicated that Steamer Landing encampment residents had 72 hours to vacate, or they would be subject to arrest and their property seized.  The PPD Notice provided that if they did not vacate the encampment they would face arrest and prosecution including Penal Code 602-trespass, Penal Code Section 647 (e) - unlawful lodging, and Petaluma Municipal Code Section 13.28.180-prohibits camping without permission.  This is the same notice to vacate that unhoused residents have received previously.  The Notice to Vacate was set to expire on Tuesday, October 5, 2021.  A copy of the Notice is attached to this complaint as **Exhibit A**.

36.    Most Steamer Landing residents had completed their coordinated entry assessments (CE) prior to the expiration of the October 2021 eviction notice.  On

Second Amended Complaint, Case No. 3:21-CV-10027-EMC

information and belief, to date, no Steamer Landing resident who has completed their CE assessments have been provided with their Vulnerability Index Service Prioritization Decision Assistance Tool (VI-SPDAT) score to determine where they are on the list for permanent supportive housing placements.

37.    Prior to the issuance of or before the expiration of the October 2, 2021, eviction notice, Defendants failed to offer mentally disabled unhoused residents who were not able to access congregate shelter an accessible placement.  These disabled persons were only offered pre-applications to enter congregate shelters.

38.    The City's practice of threatening with citation/arrest and evicting mentally disabled persons from public places, even though they have not first been offered adequate accessible alternative placements has unduly burdened them and deprived them of the City's Services, programs and activities, which are easily accessible by others, thereby denying them meaningful access to Defendants' services, programs and activities.

39.    As often happens after the issuance of a Notice to Vacate, on information and belief, about 10 people, afraid of losing their property and/or being cited and/or arrested fled the camp before the expiration of the Notice to Vacate and without being offered immediately available alternative or accessible placements.

40.    Plaintiffs are informed and believe and based thereon allege that pursuant to, custom, policy, and/or practices, Defendants fail to acknowledge accommodation

14

Second Amended Complaint, Case No. 3:21-CV-10027-EMC

requests made by mentally disabled persons who cannot access congregate shelter, fail to consider accommodation requests, fail to engage in the interactive process, and fail to offer accommodations of accessible placements prior to being threatened with citation and/or arrest.

41.    As part of their accommodation requests, disabled unhoused Steamer Landing residents have requested from Defendants that they modify their enforcement programs by granting them permission, written or otherwise, to be allowed to stay at Steamer Landing until accessible placements options have been made immediately available. Defendants have denied these requests.  Plaintiffs have alternatively requested that Defendants open an alternative lot where they could camp until they are offered accessible placements.  These requests have all been denied.  Plaintiffs are also open to discussing other arrangements that would provide disabled persons alternative accessible placements.

42.    Since October 22, 2021, Plaintiffs' counsel has submitted over a dozen written requests for accommodations in non-congregate shelter on behalf of disabled Steamer Landing residents that are unable to access congregate shelters.

43.    On November 24, 2021, Defendants counsel emailed Plaintiffs' counsel that delivery of services to the unsheltered community within the City of Petaluma is handled directly by COTS (MIC), the County of Sonoma, and others, and encouraged Plaintiffs' counsel to reach out to those entities directly.  On November 29, 2021, Plaintiffs' counsel

15

reached out to COTS and the County in an attempt to discuss accommodation requests. On November 30, 2021, the County of Sonoma Homeless Program Manager, Will Gayowski, replied to Plaintiffs' counsel's email and asked her to reach out directly to COTS and the City of Petaluma for accommodation requests. On December 8, 2021, COTS representative, Jules Pelican emailed Plaintiffs' counsel that she was instructed that all communications should go through Defendants counsel.

44.     To date, Defendants and their agents have ignored outstanding accommodation requests. Also, neither Defendants nor their attorneys have responded to requests for discussions about outstanding reasonable accommodation requests.

45.     Current outstanding accommodation requests in non-congregate shelter include those for: Alan Alders (a.k.a Martin Tait), Matthew Irving, James Kennedy, Eugenio Lucas, Todd Simone, Robert Tournahu, Brian Lewis, Roberto Cruz Vasquez, William Hudnell, Jonathan Rollstin, Daniel Vanderford, Daniel Lynch, Donna Alger, David Morales, and Steven Alves.

46.     Plaintiffs have also identified at least six Steamer Landing residents who are severely disabled and require assistance through Whole Person Care.[17] For three of

---

[17] Fred Pressler, Hugo Aparecio, Melody Thornton, Zack, Anthony and Joel Silva.

Second Amended Complaint, Case No. 3:21-CV-10027-EMC

those needing Whole Person Care, Defendants have confirmed throughout their pleadings that congregate shelter is not appropriate for them.[18]

47.     Prior to December 1, 2021, Defendants only offered pre-applications to congregate shelter to those they sought to evict from public property even if they knew or should have known that many of these individuals are disabled and unable to access congregate shelter.  Defendants practice of only offering pre-applications to enter inaccessible congregate shelter to unhoused residents it seeks to evict, disproportionately impacts disabled unhoused residents.

48.     On December 1, 2021, Defendants, for the first time, offered non-congregate shelter to 9 Steamer Landing residents through a 90-day winter shelter.  The winter shelter, located on Petaluma Blvd in Petaluma, closed once Petaluma People's tiny home Village opened on or about April 1, 2022.  The 9 tiny home units are now occupied temporarily by those who had been residing at the winter shelter.

49.     From October 2021 to the present Defendants have assisted one Steamer Landing resident into permanent supportive housing.

50.     Plaintiffs are informed and believe and based thereon allege that pursuant to past and current custom, policy, and/or practice, Defendants seized vehicular homes whose

_____

[18] For example, ECF No. 43 p. 68 ("Fred thinks Robin (COTS) works for the FBI and goes off on wild tangents when engaged. States that he is on COTS waitlist, but refused to come in when offered shelter.") See also ECF No. 43-1, p. 7, and ECF No. 51, p. 9.

Second Amended Complaint, Case No. 3:21-CV-10027-EMC

drivers were allegedly in violation of California Vehicle Code § 22651 (o)- unregistered vehicle, without a warrant or evidence that a seizure was justified by consent, exigent circumstances, or the Community Caretaker doctrine. Plaintiffs are informed and thereon believe it has been and continues to be Defendants' policy and practice not to provide a hearing on the constitutional justification for impounding the vehicular home, instead simply relying on the state statute California Vehicle Code § 22651 (o)- unregistered vehicle, to justify the impoundment in each case.

**PLAINTIFFS**

**JANINE NARETTO**

51.    Plaintiff JANINE NARETTO is a 67-year-old grandmother who lived at Steamer Landing Park ("Steamer Landing") for approximately 2 years. She was raised in Sonoma County and has been unhoused for over two decades. Ms. Narretto cannot afford a home to rent in Sonoma County on her monthly Social Security check.

52.    Her previous experience at MIC of being subject to eviction without due process makes the prospect of returning to MIC untenable for plaintiff Naretto given the anxiety these conditions create. During her previous shelter stays she has not received any assistance with finding permanent supportive housing other than receiving a voucher in 2018. She was unable to find a landlord that would rent to her due to her low credit score and the voucher expired.

Second Amended Complaint, Case No. 3:21-CV-10027-EMC

53.     Since her last stay at MIC in early 2020 Ms. Naretto has been told by PPD to "move" from public property several times.  She initially stayed in her car which was safely parked on public property down the street from MIC, when PPD forced her to move.  She moved to Steamer Landing and was living in her car there.  She later moved into a tent at Steamer Landing but lost the tent, clothing and other personal possessions during a sweep there when she failed to move within the 72-hour time period.  She resumed sleeping in her car until July or August 2021 when plaintiff Erickson moved to the park and set up a tent for her beside his trailer.

54.     Ms. Naretto suffers from severe high blood pressure, a documented medical condition, which is exacerbated by anxiety and stressful situations. Due to the high stressful situation previously experienced by Ms. Naretto which included being summarily evicted from MIC, the shelter at MIC would not be accessible to her as her medical conditions would be exacerbated.  Further, due to her mobility disabilities (she currently has cellulitis so bad that her feet are bright red and very painful). Ms. Naretto relies on assistance from others for things such as assistance with cooking and other daily living needs and needs to be in permanent supportive housing where she is able to have an in-home support caregiver.  Ms. Naretto is a qualified individual with disabilities within the meaning of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102.

55.     On October 22, 2021, Ms. Naretto submitted a written reasonable accommodation

Second Amended Complaint, Case No. 3:21-CV-10027-EMC

request for non-congregate shelter placement. Accommodation was granted on or about December 2, 2021. Ms. Naretto was placed at the Petaluma Blvd winter shelter for 90 days. On or about April 1, 2022, Ms. Naretto was placed in the People's Village (tiny home village) where she is currently residing temporarily. Ms. Naretto is able to park her vehicle at P.V.. In the past, due to inability to pay registration Ms. Naretto's registration has lapsed.

**MATTHEW ERICKSON**

56.     Plaintiff MATTHEW ERICKSON resided at Steamer Landing Park encampment in a small trailer. Mr. Erickson was in a car accident 11 years ago that has left him with brain damage which changed his behavior. Mr. Erickson's disabilities include anxiety, schizophrenia and personality disorders (mental disabilities) causing anxiety of people, places and things. These disabilities are documented medical conditions. Mr. Erickson is a qualified individual with disabilities within the meaning of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102.

57.     A shelter bed at MIC is functionally unavailable for Mr. Erickson as the conditions of shelters, including the high noise level would trigger his anxiety symptoms. Mr. Erickson needs to be in a private place where he is able to get up and leave when his anxiety symptoms are triggered, something that is not available at shelters. Mr. Erickson also cannot go into a placement where his movement would be restricted.

58.     On October 22, 2021, Mr. Erickson submitted a written request for reasonable

Second Amended Complaint, Case No. 3:21-CV-10027-EMC

accommodation in non-congregate shelter.  In about January 2022, Mr. Erickson was placed at the Petaluma Blvd winter shelter until about April 4, 2022, when Mr. Erickson was placed in the People's Village (tiny home village) where he is currently residing temporarily.  This placement is not permanent supportive housing and as such he is subject to summary eviction and not afforded due process rights normally available to a tenant.  Also, while at the People's Village Mr. Erickson has experienced anxiety symptoms as a result of being restricted in his movement.  Recently, he was given a warning because he was talking to another resident in his unit with the door wide open.  Further, Mr. Erickson is again having issues with his trailer as he is not allowed to access his trailer and thus unable to work.  He is still in discussions with COTS staff about where his trailer will be allowed.

59.    Mr. Erickson was swept from the west side of Steamer Landing over two years ago and was forced to move from other encampments in Petaluma since then, causing him to lose property he could not place inside his trailer, including building materials, and was threatened with having his trailer towed and impounded.  He was able to get assistance to move his trailer and was advised by a PPD officer to move it to Steamer Landing "out in the field", which he did.

60.    On or about October 2, 2021, Mr. Erickson received a Notice to Vacate.  Prior to receiving the Notice to Vacate or upon expiration of the Notice to Vacate, Mr. Erickson was not offered an accessible shelter.  Mr. Erickson has been threatened with citations

21

Second Amended Complaint, Case No. 3:21-CV-10027-EMC

and/or arrest at least 3 times for camping on public property without first being offered an accessible shelter.

61.    The threat of impoundment terrifies him and exacerbates his disabilities, including anxiety, as his trailer contains all his tools and other possessions.  The City of Petaluma does not have any safe parking lots where Mr. Erickson can park his small trailer and as a result Mr. Erickson remains at risk for having his trailer impounded.  Since he has minimal income, he would not be able to afford to pay the impound fees in order to retrieve his trailer from impoundment.

**JONATHAN THOMAS HOLDWAY**

62.    Mr. Holdway resided in his vehicle and temporarily in a tent at Steamer Landing until approximately December 2, 2021.  Mr. Holdway first became homeless as a result of the Tubbs fire in October of 2017.  Mr. Holdway does not currently have any income.

63.    Mr. Holdway suffers from PTSD. Mr. Holdway cannot sleep in group settings with a lot of people as sleeping in large congregate shelters would aggravate his mental health condition. Mr. Holdway has stayed at MIC but as documented in Defendants' pleadings, during each stay he slept outside of the shelter under the dryer vent.[19]  Mr. Holdway is a qualified individual with disabilities within the meaning of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102.

---

[19] ECF No. 43, p. 67

22

64.    In October of 2020, Mr. Holdway had been staying at Steamer Landing when the PPD served him with a 72 Hour Notice of Eviction.  Mr. Holdway was forced to move, or risked having his vehicle towed, being cited or arrest for camping or failing to move his vehicle within 72 hours.  Mr. Holdway was not offered an accessible placement prior to being forced to move.

65.    On or about September 29, 2021, a week before the planned sweep, Mr. Holdway was residing at Steamer Landing in his van, which was safely parked in a legal parking space at Steamer Landing when a PPD officer seized Mr. Holdway's vehicular home for lack of registration pursuant to California Vehicle Code § 22651 (o)- unregistered vehicle.  Mr. Holdway explained that the registration fees had been paid off but that there was a mix up with the DMV paperwork.  The officer towed the vehicle even though the officer did not present a warrant and the seizure was not justified by consent, exigent circumstances, or the community caretaker doctrine. The PPD officer was aware that Mr. Holdway lived in his vehicle.  Despite this, the officer told Mr. Holdway that he was seizing his vehicle and that he only had five minutes to take what he could out of his vehicular home.  Mr. Holdway was unable to retrieve most of his essentials and instead was forced to seek food, tent, and blankets from others residing at Steamer Landing. When the vehicle was impounded Mr. Holdway was not offered an alternative placement, and had no alternative but to set up a tent in the dirt at Steamer Landing.

66.    At the time of the seizure, Mr. Holdway did not have an income and was only able

Second Amended Complaint, Case No. 3:21-CV-10027-EMC

to retrieve his vehicular home after a donation assisted him in paying for the impound

fees in the amount of approximately $968.00 which included a release fee paid to

Petaluma Police Department of $168.00.

67.     On or about October 2, 2021, Mr. Holdway received a Notice to Vacate from PPD.

Prior to receiving the Notice to Vacate and/or upon expiration of the Notice to Vacate

Mr. Holdway was not offered an accessible shelter.  Prior to receiving the October 2,

2021, Mr. Holdway was threatened with citations and/or arrest multiple times by police

for camping on public property.  The day before moving into the 90-Day winter shelter,

PPD warned Mr. Holdway about being parked in the same place for more than 72 hours.

68.     On December 2, 2021, pursuant to his request for accommodations Mr. Holdway

was offered a placement for 90 days at the Petaluma Blvd winter shelter.  On or about

April 1, 2022, Mr. Holdway was offered a placement at the People's Village (tiny home

village) where he is temporarily placed.  Mr. Holdway currently has his vehicle parked at

the P.V..  In the past, due to his lack of income Mr. Holdway has had difficulties with

registering his vehicle and is likely to have issues in the future due to his economic status.

**TODD SIMONE**

69.     Mr. Simone has been homeless off and on for 20 years.  He has lived in Petaluma

for 10 years at various locations, being forced to move from public places by various

PPD officers.

Second Amended Complaint, Case No. 3:21-CV-10027-EMC

70.    Mr. Simone requested a reasonable accommodation for a non-congregate shelter ("NCS") on December 1, 2021, because he suffers from P.T.S.D. and extreme anxiety when living around large groups of people.  He cannot sleep under those conditions and his anxiety overwhelms him. Mr. Simone is a qualified individual with disabilities within the meaning of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102.

71.    Mr. Simone was offered and admitted to the NCS winter shelter at Petaluma Peoples Services in or about December 17, 2021, but had a meltdown after only 4 or 5 days when he erupted into yelling and somewhat losing control of himself, allegedly damaging some facility property at the time.

72.    Mr. Simone found that having people (staff) coming into his room everyday (purportedly for a welfare check), having cameras everywhere he went at the facility, not being allowed to visit other inmates in their rooms, having a 10:00 p.m. curfew and just generally being treated like a child difficult to deal with.

73.    Mr. Simone was told to leave the facility during/after his meltdown and was not given the opportunity to take his belongings with him.  He learned later that his belongings were set out on the street.  Only recently was he advised by staff that they had eventually stored his belongings.

74.    Mr. Simone doesn't believe he can survive in a living situation where he is subjected to the kind of petty and dehumanizing rules the MIC imposes on people, taking away their dignity by constant observation and denying people the freedom to make

Second Amended Complaint, Case No. 3:21-CV-10027-EMC

choices for themselves. The only place he can find a level of comfort or normalcy at this point is at an encampment, at least so long as an injunction is in place to prevent the continuous threat of citation or arrest. Or possibly permanent supportive housing where he is not under constant surveillance and arbitrary rules.

75.     The only income he has is from selling his artwork and recycling. He was cited by PPD for trespassing a number of years ago, for which he successfully completed court probation. Since that time, he has received threats of citation or arrest by PPD numerous times unless he moved from public places. Prior to being threatened with citation or arrest for being unhoused in public places he was not offered any placement options. While residing at various public places in Petaluma, Petaluma and its agents have deprived him of artwork and other personal items when he has been unable to move his things quickly enough.

**HOMELESS ACTION!**:

76.     Homeless Action! brings this suit on behalf of itself and on behalf of the homeless individuals it supports at the Steamer Landing encampment. Homeless Action! has had to divert resources to providing advocacy and support to unhoused Steamer Landing residents facing evictions, including individually named plaintiffs.

77.     Ensuring that the residents of the Steamer Landing Park Encampment are not forcibly removed from the Steamer Landing site, that residents with disabilities are offered accessible options that are appropriate to their disability-related needs, that all

26

Steamer Landing residents who are able to accept a placement at MIC are placed prior to the sweep, and that their personal possessions are not seized and destroyed without pre-deprivation process of law is consistent with the mission and purpose of Homeless Action!, and the planned sweep of the Steamer Landing Encampments would frustrate that mission.

78.     Homeless Action! has provided advocacy and supplies to the Steamer Landing encampment residents. Allowing these unhoused people to be swept from Steamer Landing carries the additional burden of allowing these people to be scattered throughout Petaluma, and possibly even the County, making it ever more difficult to help them and to advocate for services for them.

79.     Homeless Action! (HA!) functions primarily as an advocacy (Board of Supervisors, Continuum of Care, City Council, etc.) and educational (providing speakers, articles, reports, resource guides, etc.) group, and has as its primary goal easing the suffering of homeless people through changing homeless policy through its advocacy and educational functions.  The group meets on a weekly basis both virtually and in person. The direct advocacy (providing food, clothing, tents, etc.) previously carried on by HA! is now performed by a non-profit that arose from HA! called Sonoma Applied Village Services (SAVS) which operates primarily in Santa Rosa and Sebastopol.

80.     HA! has followed the progress of the instant case from its inception.  One of the early examples of a diversion of HA! resources is found in the Declaration of Victoria

27

Yanez dated October 29, 2021, and filed in support of Plaintiffs' reply in support of the application for the TRO and/or Order to Show Cause Re: Issuance of a Preliminary Injunction. Ms. Yanez, a member of Homeless Action! has been a volunteer attorney with HA! for seven years and, as such, is a valuable resource of the organization. As outlined in her declaration, as a member of Homeless Action! she donated her time interviewing residents of Steamer Landing and more importantly, assisted residents on multiple occasions by taking them to the MIC (or meeting them at the MIC) to apply for admission. Her participation was most helpful in determining the actual availability, or lack thereof, of placements at the MIC emergency shelter, and the difficulty Steamer Landing residents have had actually accessing admission to the MIC emergency shelter. In doing so, Ms. Yanez's time serving as a volunteer attorney for HA!, being available for speaking engagements with other organizations and/or advocating with government agencies on behalf of homeless people and policies was diverted to hands-on support of Steamer Landing residents.

81. As an all-volunteer agency HA! is funded solely by individual donations. Consequently, HA! has limited financial resources. Nevertheless, HA! diverted some of its resources to the support of Steamer Landing residents by providing a motel room (and food) for a Steamer Landing resident, Matthew Irving, who was being denied the reasonable accommodation of an emotional support animal, his cat, at PTPC at a time when his health required that he be indoors. Indeed, when Mr. Irving was taken from the

Second Amended Complaint, Case No. 3:21-CV-10027-EMC

motel to the Petaluma Health Center he tested positive for Covid.  He was referred to the hospital for chest Xray's and was admitted that same day with pneumonia.  Additionally, HA! diverted some of its limited financial resources to assist Matthew Erickson, another Steamer Landing resident, by paying for materials needed for repairs to his trailer in order to try to avoid losing his home and source of income.

82.    Additional examples of diversion of resources of HA! include: reimbursing Ms. Yanez for gas for her many  trips from Santa Rosa to Petaluma to  interview Steamer Landing residents and accompany Steamer Landing residents to the MIC emergency shelter; buying and distributing tarps for Steamer Landing residents during the "atmospheric river" rains that occurred in November; driving Steamer Landing resident James Kennedy to and from hospital, picking up and paying for medication/medical supplies, storing belongings for Mr. Kennedy while he was in the hospital, and buying and delivering food while he was recuperating and paying the phone bill for at least one Steamer Landing Resident.

## CLAIMS

### FIRST CLAIM FOR RELIEF

### Violation of Americans with Disabilities Act

### (42 U.S.C. § 12132)

83.    Plaintiffs reallege and incorporate the allegations set forth in the preceding paragraphs as though fully set forth herein.

Second Amended Complaint, Case No. 3:21-CV-10027-EMC

84.    Title II of the ADA 42 U.S.C. § 12132, provides in pertinent part that:

> "[N]o qualified individual with a disability shall, by reason of such disability, be … excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

85.    The term "disability" includes persons with mental or physical impairments that limit one or more major life activities.  42 U.S.C. § 12102, Cal. Gov't Code § 12926 (i) (medical condition), 12926(j) (mental disability).

86.    At all times relevant to this action, the Named Plaintiffs and those similarly situated parties represented by Homeless Action! were each "qualified persons with disabilities" as defined under the ADA. 42 U.S.C. § 12102, 42 U.S.C. § 12131; 28 C.F.R. §35.104.

87.    California incorporates all of these federal protections into state law, such that violations of the ADA are also state law violations and also contains a broad and independent disability civil rights mandate. (Cal. Gov't Code Section 1135 et seq.)

88.    Under the ADA's broad language, a "program, service, or activity" includes within its scope "anything a public entity does." *Yeskey v. Pennsylvania Dep't of Corr.*, 118 F. 3d 168, 171 & n. 5 (3d Cir. 1997), *aff'd* 524 U.S. 206 (1998) (quoting 28 C.F.R. Pt. 35, App. A, preamble to ADA regulations).

89.    At all times relevant to this action, Defendants, their employees and agents, were

Second Amended Complaint, Case No. 3:21-CV-10027-EMC

public entities within the meaning of Title II of the ADA and provided programs, services, or activity to the general public.

90.    The actions of Defendants alleged in this Complaint relate to services, programs, and activities under Title II.  For example, the City's encampment abatement, homeless housing placement programs which include shelter and permanent supportive programs, park programs, enforcement of parking, quality of life ordinances, and anti-camping ordinances - including Petaluma Municipal Code Section 13.28.180 (H) prohibiting outdoor camping, "except in places designated as such by official action of the city", are all services, programs and activities under Title II.

91.    Defendants' policies and practices in evicting unhoused individuals from public places and failing to provide adequate alternative placements violate Plaintiffs' rights on the basis of their disabilities. 28 C.F.R. § 35.130(b)(3).

92.    Forcibly evicting residents of the Steamer Landing encampment without first offering immediately available accessible placements that meets the individualized needs of people with disabilities, excluding unhoused disabled residents from the housing programs for the unhoused, and by refusing to cease encampment abatement, provide camping permits, and/or enforcement of ordinances/laws until accessible placements are offered as a reasonable modification, does not serve any sufficiently compelling legitimate interest of Defendants and has the effect of discriminating against Plaintiffs and those similarly situated on the basis of their disabilities under the ADA.

93.    The acts and omissions of the Defendants, their agents and employees, subjected Named Plaintiffs to discrimination on the basis of their disabilities in violation of Title II of the ADA by failing to offer adequate alternative placements that are immediately available.  In addition, the discrimination, has caused injury to Plaintiff Homeless Action! via the frustration of its mission and the diversion of its resources.

94.    Defendants knew, or should have known, that the incidence of disabilities for people who are homeless is extremely high, with estimates as high as more than one in two homeless individuals suffering from some significant mental, medical or physical disability. As a public entity, Defendants are required to "make reasonable modifications in policies practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability" where, as here, modifications would not "fundamentally alter the nature of the service, program or activity." 28 C.F.R. § 35.130(b)(7).  This includes the need to make reasonable accommodations for those who are unable to accept placements at congregate shelters such as Mary Isaak's Center.

95.    Defendants committed the acts and omissions alleged herein with intent and/or reckless disregard for the rights of each of these Plaintiffs.

96.    Plaintiffs are informed and believe that Defendants and their agents and employees have failed and continue to fail to adopt and enforce adequate policies and procedures for interacting with unhoused individuals with disabilities.

97.    Plaintiffs sought a reasonable accommodation from Defendants to postpone the

Second Amended Complaint, Case No. 3:21-CV-10027-EMC

sweep of the Steamer Landing Park encampment temporarily, until all residents with

disabilities have been offered placements that meet their disability-related needs.

Plaintiffs have also been open to discussing other possible non-congregate alternatives.

Such requests have been denied even though they would not impose an undue burden on

Defendants or a fundamental alternation in Defendants' programs.  By refusing to grant

the reasonable accommodations Defendants violated the ADA.

98.     As a result of Defendants' unlawful acts, Named Plaintiffs and those similarly

situated represented by Homeless Action!, have suffered and continue to suffer injuries,

and have no adequate remedy at law and are therefore entitled to injunctive, declaratory

and other equitable relief.

## SECOND CLAIM FOR RELIEF

### Violation of the Fair Housing Act

[42 U.S.C. § 3604]

99.     Plaintiffs reallege and incorporate the allegations set forth in the preceding

paragraphs as though fully set forth herein.

100.    The Fair Housing Act (FHA) makes it illegal to discriminate against people with

disabilities in the provision of housing-related services.  Such discrimination includes "a

refusal to make reasonable accommodations in rules, policies, practices, or services,

when such accommodations may be necessary to afford such person equal opportunity to

use and enjoy a dwelling." 42 U.S.C. §3604(f)(3)(B).

33

Second Amended Complaint, Case No. 3:21-CV-10027-EMC

101.   Permanent supportive housing, motels, and other housing Placements discussed herein, including COTS permanent supportive housing and Integrity Housing Programs,[20] are "dwellings" for purposes of the Fair Housing Act, and Defendants' and their contract agencies' activities with respect to prioritization and placement of homeless individuals are housing-related services for purposes of the FHA.  The City's permanent supportive housing and emergency shelters offered through their contract agencies are paid for in part by Defendants and other government agencies, including the County of Sonoma. Further, unhoused persons entering permanent supportive housing programs may enter with federal subsidy Section 8 Project Based Vouchers and Housing Choice Vouchers.

102.   By limiting placement options to options that are inaccessible to unhoused disabled individuals Defendants seek to evict from public property, and by their systematic failure to provide reasonable accommodations, Defendants and their contract agencies are discriminating against people with disabilities in violation of the FHA.

103.   Named Plaintiffs are persons with disabilities as defined by the FHA, as are a significant number of the individuals with and on whose behalf Plaintiff Homeless Action! assists.

_____

[20] See ECF No. 43, p. 2, par. 4 stating in part:…"The City housing and community development programs and services available to unsheltered individuals in the City are administered through a variety of means.  For example, the City itself has certain programs and services that it provides, including certain housing options and services that it directly funds and implements."

Second Amended Complaint, Case No. 3:21-CV-10027-EMC

104.    Named Plaintiffs and those similarly situated at Steamer Landing represented by Homeless Action! are aggrieved persons as defined by the Fair Housing Act because they have been injured by Defendants' discriminatory housing actions. 42 U.S.C. § 3602(i).

105.    As a result of Defendants' unlawful acts, Named Plaintiffs and those similarly situated, have suffered and continue to suffer injuries, and have no adequate remedy at law and are therefore entitled to injunctive, declaratory relief, and other equitable remedies.

## THIRD CLAIM FOR RELIEF

**Violation of Cruel and Unusual Punishment
Eighth Amendment
[42 U.S.C. §§ 1983]**

106.    Plaintiffs reallege and incorporate the allegations set forth in the preceding paragraphs as though fully set forth herein.

> The Eighth Amendment to the U.S. Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

107.    Defendants custom, practice, and policy of serving Notices to Vacate on unhoused residents in Petaluma including Plaintiffs and those represented by Homeless Action!, who reside in tents or vehicles on public property, and citing/arresting and threatening to cite/arrest unhoused persons for quality of life citations including camping on public property and parking more than 72 Hours (Cal. Veh. Code § 22651(k)) without first

Second Amended Complaint, Case No. 3:21-CV-10027-EMC

offering practically available and /or accessible alternative places to go, constitutes cruel and unusual punishment and violates the Eighth Amendment.

108.    The 20-25 emergency shelter beds that the City of Petaluma states it has available are not appropriate to Named Plaintiffs and those similarly situated, who are unable to stay in congregate emergency shelters due to disability-related mental health symptoms.  By criminalizing camping herein and threatening to cite or arrest Plaintiffs and those similarly situated, Defendants are preventing Named Plaintiffs and those similarly situated from sleeping, without breaking the law.

109.    Plaintiff Holdway and others similarly situated represented by Homeless Action! were additionally injured when they were deprived of the use of their only shelter and forced to pay excessive fines that they could not afford to pay.

110.    Defendants' actions and threatened actions are with deliberate indifference to the danger Plaintiffs and those they seek to represent will suffer. As a result, Defendants are inflicting cruel and unusual punishment in Violation of the Eighth Amendment.

111.    An actual controversy exists between Plaintiffs and Defendants as to whether Defendants have violated and/or are imminently threatening to violate the law.

112.    As a result of Defendants inflicting cruel and unusual punishment, the Named Plaintiffs were injured and damaged in that they are being forcibly evicted, threatened with citation and/or arrest.

113.    Named Plaintiffs and those similarly situated represented by Homeless Action!

residing at Steamer Landing Park have no adequate remedy at law and are therefore entitled to injunctive and declaratory relief.

## FOURTH CLAIM FOR RELIEF

**Right to Be Secure From Unreasonable Seizures**
**42 U.S.C. §1983 - Fourth Amendment; Art. 1, §13, California Constitution**

114.    Plaintiffs reallege and incorporate the allegations set forth in the preceding paragraphs as though fully set forth herein.

115.    Plaintiffs are informed and believe and based thereon allege that pursuant to custom, policy and/or practice and continuing up until the present, Defendants and their employees and agents seized and destroyed unhoused residents personal property including Plaintiffs Simone, Erickson and others similarly situated persons Homeless Action! represents, violating their Fourth Amendment rights to be free from unreasonable seizure of property.

116.    Plaintiffs are informed and believe and based thereon allege that pursuant to custom, policy and/or practice and continuing up until the present, Defendants seized vehicles, including Plaintiff Holdway's, whose vehicles were allegedly in violation of Cal. Vehicle Code § 22651 (o)-lack of registration, without a warrant, or evidence that the seizure was justified by the community caretaker doctrine or Cal. Vehicle Code §

Second Amended Complaint, Case No. 3:21-CV-10027-EMC

22650 (a)(b)[21] in violation of Fourth Amendment rights  to be free from unreasonable seizures. The warrantless seizure of Plaintiff Holdway's vehicle violated the Fourth Amendment because it was made without consent, emergency, exigent circumstances, or community caretaking concerns.

117.   Plaintiffs are also informed and believe and based thereon allege that pursuant to custom, policy and/or practice and continuing up until the present, PPD does not consider facts evidencing that the seizure was not justified under the community caretaker doctrine and that Defendants have a blanket policy of impounding vehicles that lack registration without determining the reasonableness as required under the Fourth Amendment and under Cal. Vehicle Code § 22650 (a)(b) which additionally deprive Plaintiffs of due process.

118.   Plaintiffs have no adequate remedy at law and are therefore entitled to injunctive and declaratory relief, and attorneys' fees and costs.

///

///

///

---

[21] Cal. Vehicle Code § 22650 (a)(b) provides that removal of a vehicle pursuant to Cal. Veh. Code § 22651 is only reasonable if removal is necessary to achieve community caretaking need, "such as ensuring the safe flow of traffic or protecting property from theft or vandalism".

Second Amended Complaint, Case No. 3:21-CV-10027-EMC

# FIFTH CLAIM FOR RELIEF

### Right to Due Process of Law
### Fourteenth Amendment of the United States Constitution
### 42 U.S.C. §1983

119.    Plaintiffs reallege and incorporate the allegations set forth in the preceding paragraphs as though fully set forth herein.

120.    Defendants owed Plaintiffs a duty under the due process clause of the Fourteenth Amendment to the U.S. Constitution to protect the personal property of Plaintiffs.  The City's anti-camping ordinance, as enforced by Defendants, deprives Steamer Landing unhoused residents of due process by authorizing the on-site destruction of property without specific notice and an opportunity to be heard.

121.    Plaintiffs are informed and believe and based thereon allege that pursuant to custom, policy and/or practice and continuing up until the present, Defendants, their employees and agents seized and destroyed unhoused residents personal property including Plaintiffs Simone, Holdway, Erickson's, and others similarly situated persons Homeless Action! represents.  The summary destruction of property without an opportunity to be heard violates the Fourteenth Amendment.  Defendants were deliberately indifferent to the likelihood that the property would be seized and destroyed without due process based on the past occurrences of these same constitutional and statutory violations of the law.

122.    Plaintiffs have no adequate remedy at law and are therefore entitled to

39

injunctive, declaratory, and other equitable relief.  Plaintiffs are also entitled to attorneys

fees and costs.

## **INJUNCTIVE RELIEF**

123.   Plaintiffs reallege and incorporate the allegations set forth in the preceding

paragraphs as though fully set forth herein.

124.   A real and immediate difference exists between Plaintiffs and those

represented by Plaintiff Homeless Action! and Defendants regarding Plaintiffs' rights and

Defendants' duty owed to Plaintiffs to:

    a.   Offer unhoused, many who are disabled, proper and accessible placements that
are immediately available, prior to being threatened with citation or arrest for
quality-of-life citations including, camping violations,

    b.  To protect personal property that unhoused residents are unable to retrieve prior
to fleeing in response to a threat of citation and/or arrest,

    c.  To not seize property without a warrant or exception to the warrant requirement,
including the community caretaker doctrine; and

    d.  To not charge excessive bail to retrieve seized property.

125.   Defendants' policies and actions have resulted and will result in irreparable injury

to Plaintiffs and those unhoused persons it represents at Steamer Landing.  There is no

plain adequate or complete remedy at law to address the wrongs described herein.

Second Amended Complaint, Case No. 3:21-CV-10027-EMC

126.    Defendants have made clear by their repeated actions of the criminalization of the homeless at Steamer Landing and at other encampments throughout the Petaluma City limits that they intend to continue these practices of:

a)  Evicting unhoused individuals from public places without providing alternative and accessible placement options that are immediately available,

b)  Summarily destroying the property of unhoused persons,

c)  Impounding unhoused persons vehicular homes without a warrant or an exception to the warrant requirement, and

d)  Charging an excessive fee to retrieve seized vehicles.

127.    Unless restrained by this Court, Defendants will continue to implement these unlawful policies and practices.

128.    Defendants' acts alleged above violate established constitutional rights of Plaintiffs and Defendants could not reasonably have thought that the conduct of their agents and employees in evicting unhoused disabled persons who have nowhere else to go from a public place under threat of citation and/or arrest without first offering alternative or accessible placement options that are immediately available, summarily destroying property of unhoused individuals from public places, impounding vehicles without a without a warrant or an exception to the warrant requirement, or charging an excessive fee to retrieve seized vehicles was lawful.

129.    An actual controversy exists between Plaintiffs and Defendants in that

41

Defendants, their agents and employees, have engaged in the unlawful and unconstitutional acts alleged herein and intend to continue to do so. Plaintiffs claim that these acts are contrary to law and seek a declaration of their rights with regard to these controversies.

130.    As a direct and proximate consequence of the acts of Defendants' agents and employees, Plaintiffs have suffered and will continue to suffer injury including being removed from a public place without anywhere else to go, loss of their personal property including their vehicles, clothing, food, bedding, and other possessions, thereby dispossessing them of the essentials needed for their well-being and placing them at serious and immediate risk of illness.

131.    Plaintiff Holdway has filed an administrative claim with Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court grant them relief as follows:

a.    For an injunction, enjoining and restraining Defendants and agents from evicting, ticketing, arresting, prosecuting or threatening arrest or prosecution against Named Plaintiffs and others similarly situated for camping on public property or other quality of life citations, including Vehicle Code § 22651 (k), for parking longer than 72 hours and Fish and Game Code Section 5652 (a) until after such time that alternative (congregate) or accessible (NCS)

Second Amended Complaint, Case No. 3:21-CV-10027-EMC

placements are made immediately available to each unhoused resident residing

at Steamer Landing for at least 6 months;

b.  For an injunction enjoining and restraining Defendants and agents from

seizing and disposing of Named Plaintiffs and others similarly situated

property in violation of their Fourth and Fourteenth Amendment rights;

c.   For an injunction, enjoining and restraining Defendants and agents from

impounding vehicles of Named Plaintiffs and others similarly situated pursuant

to Defendants enforcement of California Vehicle Code Section 22651 (o) (1)

(A)-unregistered, without a warrant or evidence that a seizure was justified by

consent, exigent circumstances, or the Community Caretaker doctrine and

without first providing Plaintiffs or those similarly situated alternative

(congregate) or accessible (NCS) adequate housing placements that are made

immediately available for at least 6 months;

<u>For a declaratory judgment that Defendants' policies, practices and conduct alleged</u>

<u>herein violate Plaintiffs and Others Similarly Situated Rights</u>:

d.  Defendants' failure to offer <u>disabled</u> unhoused persons who they know or

should know, are unable to enter congregate shelter, accessible non-congregate

shelter, violates the 8th Amendment and *Martin v. City of Boise, 920 F.3d 584*

*(9th Cir. 2019),* which requires that unhoused residents be provided with

practically available shelters prior to being forced to move from a public place.

43

e. Defendants' summarily denying reasonable accommodation requests for non-congregate shelter, made by unhoused residents who have been threatened with citation or arrest for camping, violates Title II of the ADA 42 U.S.C. § 12132.

f. Defendants threats to cite or arrest unhoused persons for camping when they have not been offered immediately available alternative (congregate) and accessible (NCS) placements, violates the 8th Amendment and *Martin v. City of Boise, 920 F.3d 584 (9th Cir. 2019).*

g. Defendants' seizure of Plaintiff Jonathan Thomas Holdway's vehicular home, which was alleged to be in violation of California Vehicle Code § 22651 (o)-unregistered vehicle, without a warrant or evidence that the seizure was justified by consent, exigent circumstances, or the Community Caretaker doctrine, is unconstitutional.

h. Declares that excessive fines charged by Defendants and paid by Plaintiff Holdway to retrieve his vehicle after his vehicle was seized by Defendants for alleged lack of registration were excessive and violate the Eighth Amendment;

i. For a declaratory judgment that Defendants' policies, practices and conduct alleged herein violate Plaintiffs' rights under the United States and California constitutions and the laws of California;

j. For an order directing Defendants to provide replacement blankets, tents,

44

tarps, medication, food, clothing and replacement of critical personal documents to anyone whose property is seized;

k.  That the Court retain jurisdiction and exercise oversight as to defendants' compliance with its Orders;

l.  For costs of suit and attorney fees as provided by law;

m. For such further relief that the Court deems just and proper.


Dated:  April 21, 2022                                    Respectfully submitted,


                                                          By: /s/ Colleen S. O'Neal
                                                              Colleen S. O'Neal

Second Amended Complaint, Case No. 3:21-CV-10027-EMC

# EXHIBIT A

# EXHIBIT A

# 72 Hours Notice to Vacate Illegal Campsite & Debris Removal
## BY ORDER OF THE PETALUMA POLICE DEPARTMENT

Penal Code 602(h) thru (o) - willfully entering or remaining on the property of another.

Fish and Game Code 5652(a)-Unlawful to place any debris within 150 feet of the high-water mark of waters of the state, etc.

Penal Code 647(e) – Any person who lodges in any building, structure, vehicle or place, whether public or private, without the permission of the owner or person entitled to the possession or in control of it.

Petaluma Municipal Code 13.28.180 – No person shall camp in City Parks except in designated places.

## YOU HAVE 72 HOURS TO CLEAN UP YOUR PROPERTY AND VACATE THE AREA OR YOU MAY BE ARRESTED AND YOUR PROPERTY WILL BE SEIZED

POSTING DATE: 06|07|2021          OFFICER: VAN RIPER
LOCATION: STEAMER LANDING    EVENT or CASE NUMBER: PE 21158 0053

1. All encampments, personal property and debris are to be removed by: 06/10/2021 06/10/2021
2. Any personal property left at the site after this date will be considered abandoned and will be handled in accordance with PPD Policy.
3. Any personal property not disposed of will be stored for Ninety Days (90) without charge. After Ninety Days (90) days, unclaimed property will be disposed of.

The City of Petaluma will make a reasonable effort to identify all personal property left at the site but, City Staff will not open backpacks, boxes, and bags because of health and safety concerns. If personal items are left in plain view, the City of Petaluma will collect these items and store them for safe keeping for a period of not less than ninety (90) days. Food, perishables, and soiled, wet or moldy bedding materials will not be stored due to health and safety reasons. Individuals wishing to reclaim personal property may contact the Property Unit at the Petaluma Police Department, 969 Petaluma Blvd North call 707-778-4328 to schedule a date and time to claim their property.

## HOMELESS OUTREACH SERVICES:

COTS Mary Isaak Center-900 Hopper Street, Petaluma 707-765-6530
Sonoma Co. Housing & Shelter Services Coordinated Entry Managed by Catholic Charities 866-542-54
Salvation Army Petaluma 721 S. McDowell Blvd, 707-769-0716
Catholic Charities Homeless Services Center 600 Morgan Street, Santa Rosa 707-525-0226
Sam Jones Hall 4020 Finley Avenue, Santa Rosa, 707-523-3900

# 72 Hours Notice to Vacate Illegal Campsite & Debris Removal
### BY ORDER OF THE PETALUMA POLICE DEPARTMENT

**Penal Code 602(h) thru (o)** - willfully entering or remaining on the property of another.

**Fish and Game Code 5652(a)**-Unlawful to place any debris within 150 feet of the high-water mark of waters of the state, etc.

**Penal Code 647(e)** – Any person who lodges in any building, structure, vehicle or place, whether public or private, without the permission of the owner or person entitled to the possession or in control of it.

**Petaluma Municipal Code 13.28.180** – No person shall camp in City Parks except in designated places.

## YOU HAVE 72 HOURS TO CLEAN UP YOUR PROPERTY AND VACATE THE AREA OR YOU MAY BE ARRESTED AND YOUR PROPERTY WILL BE SEIZED

POSTING DATE: 06/07/2021       OFFICER: VAN RIPER
LOCATION: STEAMER LANDING   EVENT or CASE NUMBER: PE21158 0053

1. All encampments, personal property and debris are to be removed by: 08AM  06/10/2021.
2. Any personal property left at the site after this date will be considered abandoned and will be handled in accordance with PPD Policy.
3. Any personal property not disposed of will be stored for Ninety Days (90) without charge. After Ninety Days (90) days, unclaimed property will be disposed of.

The City of Petaluma will make a reasonable effort to identify all personal property left at the site but, City Staff will not open backpacks, boxes, and bags because of health and safety concerns. If personal items are left in plain view, the City of Petaluma will collect these items and store them for safe keeping for a period of not less than ninety (90) days. Food, perishables, and soiled, wet or moldy bedding materials will not be stored due to health and safety reasons. Individuals wishing to reclaim personal property may contact the Property Unit at the Petaluma Police Department, 969 Petaluma Blvd North call 707-778-4328 to schedule a date and time to claim their property.

## HOMELESS OUTREACH SERVICES:
**COTS Mary Isaak Center-900 Hopper Street, Petaluma 707-765-6530**
Sonoma Co. Housing & Shelter Services Coordinated Entry Managed by Catholic Charities 866-542-54
Salvation Army Petaluma 721 S. McDowell Blvd, 707-769-0716
Catholic Charities Homeless Services Center 600 Morgan Street, Santa Rosa 707-525-0226
Sam Jones Hall 4020 Finley Avenue, Santa Rosa, 707-523-3900

# EXHIBIT B

# EXHIBIT B

(First, Middle, Last)                    □ PM   S M T W T F S

□ Owner's Responsibility (Veh. Code, § 40001)

**Address** CONROY

ERIC CONROY

TRANSIENT PETALUMA

**City** PETALUMA   CA **State** 94952   **ZIP Code**   **Phone No.** ( )

**Driver Lic. No.** C4251207   **State** CA   **Class**   **Comm.** Yes (No)   **Birth Date** 3 18 1968

**Sex** M | **Hair** BRN | **Eyes** BLU | **Height** 5'9" | **Weight** 200 | **Race** W | **Other Description**

**Veh. Lic. No.**   **State**         □ COMMERCIAL VEHICLE (Veh. Code, § 15210(b))

**Yr. of Veh.** | **Make** | **Model** | **Body** | **Color**   □ HAZARDOUS MATERIAL (Veh. Code, § 353)

**Evidence of Financial Responsibility**

**Registered Owner or Lessee**                    □ Same as Driver

**Address**                                        □ Same as Driver

**City**                          **State**   **ZIP Code**

**Correctable Violation (Veh. Code, § 40610)**   □ Booking Required   Misdemeanor or Infraction (Circle)

| Yes | No | Code and Section | Description | | |
|-----|----|------------------|-------------|---|---|
| □ | ☑ | 9-15()()(C) - CAMPING | | M | I |
| □ | □ | PUBLIC PROPERTY | | M | I |
| □ | □ | | | M | I |
| □ | □ | | | M | I |

**Speed Approx.** ► | **P.F./Max Spd.** | **Veh. Lmt.** | **Safe** | **Radar/Laser** [Yes] [No]

**Location of Violation (s)** STEAMER LANDING PARK   **Beat**

| **Traffic Conditions** | **Road** | **Direction of Travel** | | |
|---|---|---|---|---|
| Light  Medium  Heavy | Dry  Wet | NB  SB  EB  WB | | |

□ Violations not committed in my presence, declared on information and belief.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct.

10 14, 20   Collins   5341

**Date**   **Arresting or Citing Officer**   **I.D. No.**

/ /   **Date**   Name of Arresting Officer, if different from Citing Officer   I.D. No.

WITHOUT ADMITTING GUILT, I PROMISE TO APPEAR AT THE TIME AND PLACE INDICATED BELOW.

**X Signature** Conn

**WHEN: Date:** 11/18 2020   **Time:** 0830   □ AM □ PM

I, GAIL SIMONS, am a representative of Homeless Action!, a Plaintiff in the above-entitled action. I am aware of the nature of the Second Amended Complaint being filed on Homeless Action!'s behalf, the legal bases for the Complaint, and the relief being sought. To the extent that the Petition is based upon facts known to me, I verify them to be true, and otherwise, I am informed and believe that all facts herein are true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 21st day of April, 2022, in Petaluma, California.

GAIL SIMONS

VERIFICATION OF JONATHAN HOLDWAY

I, JONATHAN HOLDWAY, am one of the Plaintiffs in the above-entitled action.  I am aware of the nature of the Second Amended Complaint being filed on my behalf, the legal basis for the Complaint, and the relief being sought.  To the extent that the Complaint is based upon facts known to me, I verify them to be true, and otherwise, I am informed and believe that all facts herein are true.  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 20th day of April, 2022, in Petaluma, California.

Jonathan Holdway

SECOND AMENDED COMPLAINT

## VERIFICATION OF JANINE NARETTO

I, JANINE NARETTO, am one of the Plaintiffs in the above-entitled action. I am aware of the nature of the Second Amended Complaint being filed on my behalf, the legal basis for the Complaint, and the relief being sought. To the extent that the Complaint is based upon facts known to me, I verify them to be true, and otherwise, I am informed and believe that all facts herein are true. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 20th day of April, 2022, in Petaluma, California.


_____
Janine Naretto

## VERIFICATION OF MATTHEW ERICKSON

I, MATTHEW EERICKSON, am one of the Plaintiffs in the above-entitled action. I am aware of the nature of the Second Amended Complaint being filed on my behalf, the legal basis for the Complaint, and the relief being sought. To the extent that the Complaint is based upon facts known to me, I verify them to be true, and otherwise, I am informed and believe that all facts herein are true. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 20th day of April, 2022, in Petaluma, California.

Matthew Erickson

## VERIFICATION OF TODD SIMONE

I, TODD SIMONE, am one of the Plaintiffs in the above-entitled action. I am aware of the nature of the Second Amended Complaint being filed on my behalf, the legal basis for the Complaint, and the relief being sought. To the extent that the Complaint is based upon facts known to me, I verify them to be true, and otherwise, I am informed and believe that all facts herein are true. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 20th day of April, 2022, in Petaluma, California.


_____

Todd Simone