1 | Kevin E. Gilbert, Esq. (SBN: 209236)
kgilbert@ohhlegal.com
2 | Kelly Houle-Sandoval, Esq. (SBN: 267958)
khoule-sandoval@ohhlegal.com
3 | Nicholas D. Fine, Esq. (SBN: 285017)
nfine@ohhlegal.com
4 | **ORBACH HUFF & HENDERSON LLP**
5 | 6200 Stoneridge Mall Road, Suite 225
Pleasanton, CA  94588
6 | Telephone: (510) 999-7908/Facsimile: (510) 999-7918
7 |
8 | Eric W. Danly, City Attorney (SBN: 201621)
Jordan M. Green, Assistant City Attorney (SBN: 247126)
jgreen@cityofpetaluma.org
9 | CITY OF PETALUMA/CITY ATTORNEY'S OFFICE
11 English Street
10 | Petaluma, CA  94952
Telephone: (707) 778-4362/Facsimile: (707) 206-6040
11 |
12 | Attorneys for Defendants
CITY OF PETALUMA (also erroneously sued as the "PETALUMA POLICE DEPARTMENT")
13 |
14 | UNITED STATES DISTRICT COURT
15 | NORTHERN DISTRICT OF CALIFORNIA
16 | SAN FRANCISCO DIVISION

| 17 | JANINE NARETTO, MATTHEW ERICKSON, JONATHAN THOMAS HOLDWAY, TODD SIMONE, individuals; HOMELESS ACTION! an unincorporated association, on behalf of itself and those it represents; | Case No.  21-cv-10027-EMC |
|---|---|---|
| 18 | | **DEFENDANT CITY OF PETALUMA'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| 19 | | |
| 20 | | |
| 21 | Plaintiffs, | |
| 22 | v. | DATE:       June 30, 2022 |
| 23 | CITY OF PETALUMA and PETALUMA POLICE DEPARTMENT, | TIME:       1:30 p.m.
DEPT:       Courtroom 5, 17th Floor
JUDGE:      Hon. Edward M. Chen |
| 24 | | |
| 25 | Defendants. | |

ORBACH HUFF & HENDERSON LLP

# TABLE OF CONTENTS

**Page(s)**

NOTICE OF MOTION ................................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES .............................................. 3

I.      SUMMARY OF ARGUMENT ........................................................................ 3

II.     FACTUAL AND PROCEDURAL BACKGROUND ....................................... 4

III.    LEGAL ARGUMENT ...................................................................................... 6

        A.      Legal Standard for a Motion to Dismiss Under F.R.C.P. 12(b)(1) ..................................... 6

        B.      Legal Standard for a Motion to Dismiss Under F.R.C.P. 12(b)(6) ..................................... 6

        C.      Plaintiff Todd Simone Must Be Dismissed Where He Was Added Without Leave
                of Court and the Claims of the Other Individual Plaintiffs Remain Moot ......................... 7

        D.      Plaintiff Homeless Action! Still Lacks Standing for Any of the Claims in the SAC ......... 8

                1.      HA! Still Has Not Pled Organizational Standing ......................................... 8
                2.      HA! Still Has Not Pled Representational Standing ...................................... 11

        E.      The Petaluma Police Department is Still Not a Separate Entity ...................................... 11

        F.      The First Cause of Action for Violation of the ADA Still Fails ...................................... 12

                1.      Plaintiffs Still Have Not Established They Were Discriminated Against
                        Because of Their Alleged Disabilities or That They Are
                        "Qualified Individuals" .............................................................................. 13
                2.      Plaintiffs Still Do Not Allege Any City Programs, Services or Activities
                        in Which They Were Discriminated Against ................................................ 15

        G.      The Second Cause of Action for Violation of the Fair Housing Act Still Fails ............... 18

        H.      Plaintiffs' Section 1983 Claims are Precluded by *Monell* .............................................. 20

        I.      The Third Cause of Action for Violation of the Eighth Amendment Still Fails ............... 22

        J.      Plaintiffs' Claims for Violation of the Fourth and Fourteenth Amendments Fail ........... 23

                1.      The Fourth Cause of Action Still Fails as a Matter of Law .......................... 24
                2.      The Fifth Cause of Action Still Fails as a Matter of Law ............................ 25

IV.     CONCLUSION ............................................................................................... 25

ORBACH HUFF & HENDERSON LLP

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

<u>**Federal Cases**</u>

3

*Access 123, Inc. v. Markey's Lobster Pool, Inc.*,
4
    2001 WL 920051 (D.N.H. Aug.14, 2001) .................................................................11

5

*American Diabetes Organization v. United States Department of Army*,
    938 F.3d 1147 (9th Cir. 2019) .....................................................................................8, 9
6

*Ashcroft v. Iqbal*,
7
    556 U.S. 662 (2009) ...................................................................................................6, 7

8
*Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
    459 U.S. 519 (1983) .........................................................................................................7
9

10
*Ayala v. Cnty. of Imperial*,
    2017 WL 469016 (S.D. Cal. Feb. 3, 2017) ..................................................................21

11

*Bender v. Williamsport Area Sch. Dist.*,
12
    475 U.S. 534 (1986) .........................................................................................................6

13
*Butcher v. City of Marysville*,
    2019 WL 918203 (E.D. Cal. Feb. 25, 2019)..........................................................2, 22
14

15
*Cain v. City of Sacramento*,
    2017 WL 4410116 (E.D. Cal. 2017) ...........................................................................21

16
*Caron Found. of Fla., Inc. v. City of Delray Beach*,
17
    879 F.Supp.2d 1353 (S.D. Fla. 2012) ........................................................................12

18
*Community House, Inc. v. City of Boise, Idaho*,
    490 F.3d 1041 (9th Cir. 2007) ..................................................................................2, 19
19

20
*Conley v. Gibson*,
    355 U.S. 41 (1957)...........................................................................................................6

21

*Coons v. Sec'y of U.S. Dep't. of Treasury*,
22
    383 F.3d 879 (9th Cir. 2004) .......................................................................................13

23
*Crago v. Knackle*,
    2020 WL 3073771 (E.D. Cal. 2020).............................................................................24
24

25
*Disabled in Action of Metropolitan New York v. Trump Intern. Hotel & Tower*
    2003 WL 1751785 (S.D.N.Y. 2003).............................................................................11

26
*Does 1–5 v. Chandler*,
27
    83 F.3d 1150 (9th Cir.1996) .......................................................................................1, 13

28

**TABLE OF AUTHORITIES**

**Page(s)**

*Ewbank v. Emrick*, No. 6:17-CV-00187-JR, 2018
WL 2392725 (D. Or. Apr. 16, 2018) ..................................................................................18

*Fair Employment Council v. BMC Marketing Corp.*,
28 F.3d 1268 (D.C. Cir. 1994) ..........................................................................................8

*Fair Hous. of Marin v. Combs*,
285 F.3d 899 (9th Cir. 2002) ........................................................................................1, 8

*Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*,
528 U.S. 167 (2000) ................................................................................................2, 8, 24

*FW/PBS, Inc. v. City of Dallas*,
493 U.S. 215 (1990) ..........................................................................................................6

*Garcia v. City of Merced*,
637 F.Supp.2d 731 (E.D. Cal. 2008) ...........................................................................1, 12

*Gladstone, Realtors v. Village of Bellwood*,
441 U.S. 91 (1979) ..........................................................................................................11

*Gomes v. County of Kauai*,
2020 WL 6937435 (D. Hawai'i November 24, 2020) .......................................................22

*A.E. ex rel. Hernandez v. Cnty. of Tulare*,
666 F.3d 631 (9th Cir. 2012) ..........................................................................................21

*Hous. is a Hum. Right Orange Cty. v. Cty. of Orange,* No. SAVC19388PAJDEX,
2019 WL6481311 (C.D. Cal. Aug. 12, 2019) ..................................................................10

*Hunt v. Wash. State Apple Adver. Comm'n*,
432 U.S. 333 (1977) ........................................................................................................11

*Ileto v. Glock, Inc.*,
349 F.3d 1191 (9th Cir. 2003) ...........................................................................................7

*Ingraham v. Wright*,
430 U.S. 651 (1977) ........................................................................................................22

*Jameson Beach Prop. Owners Ass'n v. United States*, No. 2:13-cv-01025-MCE-AC,
2014 WL 4925253 (E.D. Cal. Sept. 29, 2014) ...............................................................1, 7

*Ketab Corp. v. Mesriani & Assocs.*, 2:14-cv-07241-RSWL (MRW),
2015 WL 8022874 (C.D. Cal. Dec. 4, 2015) .................................................................1, 7

*La Asociacion de Trabajadores v. City of Lake Forest*,
624 F.3d 1083 (9th Cir. 2010) ......................................................................................8, 10

1

## TABLE OF AUTHORITIES

2

**Page(s)**

*Tennessee v. Lane,*
   541 U.S. 509 (2004)..............................................................................16

*Lavan v. City of Los Angeles,*
   693 F.3d 1022 (9th Cir. 2012) ...........................................................23

*Le Van Hung v. Schaaf,*
   2019 WL 1779584 (N.D. Cal. Apr. 23, 2019) ..................................23

*Leslie v. City of Sand City,*
   615 F.Supp.2d 1121 (N.D. Cal. 2009) .........................................2, 24

*Lewis v. Casey,*
   518 U.S. 343 (1996).......................................................................6, 10

*Lindsey v. Normet,*
   405 U.S. 56 (1972).......................................................................19, 20

*Los Angeles v. Lyons,*
   461 U.S. 95 (1983)................................................................................6

*Magdeleno v. Washington County,*
   277 Fed.Appx. 679 (2008) ............................................................13, 14

*Martin v. City of Boise,*
   902 F.3d 1031 (9th Cir. 2018) ........................................................3, 22

*McHenry v. Renne,*
   84 F.3d 1172 (9th Cir. 1996) ...........................................................13

*Miralle v. City of Oakland,*
   2018 WL 6199929 (N.D. Cal. Nov. 28, 2018) ...........................2, 3, 22

*Monell v. Dep't of Social Servs. of N.Y.,*
   436 U.S. 658 (1978)..................................................................2, 20, 21

*Murray v. City of Philadelphia*
   481 F.Supp.3d 461 (E.D. Penn. 2020) .............................................16

*O'Callaghan v. City of Portland, et al.*
   2020 WL 265197 (D. Or. Jan. 17, 2020) .........................................23

*Peterson v. City of Fort Worth,*
   588 F.3d 838 (5th Cir. 2009) ...........................................................21

*Plumeau v. Sch. Dist. No. 40 Cnty. Of Yamhill,*
   130 F.3d 432 (9th Cir. 1997) ...........................................................20

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

**Page(s)**

*Reed v. City of Emeryville,*
2021 WL 4974973 (N.D.Cal. October 26, 2021) ................................................................17, 18, 19

*Renne v. Geary,*
501 U.S. 312 (1991)................................................................................................................6

Robertson v. Dean Witter Reynolds, Inc.,
749 F.2d 530 (9th Cir. 1984) ................................................................................................7

Robinson v. City of San Diego, No. 18-CV-1918-AJB-AGS,
2019 WL 354688 (S.D. Cal. Jan. 29, 2019)........................................................................12

*Salisbury v. City of Santa Monica,*
998 F.3d 852 (9th Cir. 2021) ..............................................................................................19

*Sanchez v. County of San Diego,*
464 F.3d 916 (9th Cir. 2006) ..............................................................................................25

*Sandoval v. City of Sonoma,*
912 F.3d 509 (9th Cir. 2018) ..............................................................................................24

*Sierra Club v. Morton,*
405 U.S. 727 (1972)................................................................................................................8

*Smith v. City of Oakland,*
2020 WL 2517857 (N.D. Cal. April 2, 2020) ....................................................................18

*Smith v. Pac. Props and Dev. Corp.,*
358 F.3d 1097 (9th Cir. 2004) ........................................................................................1, 8

*St. Louis v. Praprotnik,*
485 U.S. 112 (1988)..............................................................................................................21

*Starr v. Baca,*
652 F.3d 1202 (9th Cir. 2011) ......................................................................................15, 24

*Steffen v. Rowland,*
972 F.2d 1343 (9th Cir. 1992) ............................................................................................22

*Sullivan v. City of Berkeley,*
2017 WL 4922614 (N.D. Cal. Oct. 31, 2017)........................................................2, 23, 24, 25

*Trevino v. Gates,*
99 F.3d 911 (1996)................................................................................................................21

*Vance v. County of Santa Clara,*
928 F.Supp. 993 (N.D. Cal. 1996) ......................................................................................12

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

*Warth v. Seldin*,
    422 U.S. 490 (1975)........................................................................................11

*Watson v. Chessman*,
    362 F.Supp.2d 1190 (S.D. Cal. 2005)..............................................................6

*Western Mining Council v. Watt*,
    643 F.2d 618 (9th Cir. 1981) ............................................................................7

*Where Do We Go Berkeley v. Cal. Dep't of Transportation,* No. 21-16790,
    2022 WL 1236360 (9th Cir. Apr. 27, 2022) ..............................................1, 17

*Young v. City of Visalia*,
    687 F.Supp.2d 1141 (E.D.Cal. 2009).............................................................21

**Federal Statutes**

36 U.S.C. section:
    3604(f)(3)(B)...................................................................................................18

42 U.S.C. section:
    1983........................................................................................................6, 11, 20
    3602(b)............................................................................................................19
    3603............................................................................................................2, 19
    3604..................................................................................................................6
    12102..............................................................................................................13
    12132..................................................................................................6, 12, 18

**Federal Rules**

F.R.C.P. Rule:
    8..............................................................................................................3, 13, 15
    12(b)(1) ........................................................................................................1, 6
    12(b)(6) ....................................................................................................1, 6, 7

**State Statutes**

California Government Code section:
    1135................................................................................................................18

California Vehicle Code section:
    22651(o).........................................................................................................21
    22651(o)(1)(A)...............................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

## **Regulations**

24 C.F.R. section:
    100.201 ...............................................................................................................19

28 C.F.R. section:
    35.130(b)(3) ........................................................................................................18
    35.130(b)(3) and (7) ...........................................................................................18
    35.130(b)(7) ........................................................................................................18
    35.130(b)(7)(i) ....................................................................................................18

29 C.F.R. section:
    1630.2(j) .............................................................................................................13

## **Other Authorities**

Petaluma Municipal Code:
    13.28.180(H) ....................................................................................................4, 5

# NOTICE OF MOTION

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 30, 2022, at 1:30 p.m., in Courtroom 5, 17th Floor, in the above-referenced Court, Defendant CITY OF PETALUMA (also erroneously sued as the "PETALUMA POLICE DEPARTMENT") ("City") will move this Court, pursuant to Federal Rules of Civil Procedure Rule 12(b)(1) and Federal Rules of Civil Procedure Rule 12(b)(6), for an order dismissing the Second Amended Complaint (Dkt. 70) filed by Plaintiffs JANINE NARETTO, MATTHEW ERICKSON, JONATHAN THOMAS HOLDWAY, TODD SIMONE, individuals (collectively, "Individual Plaintiffs"); and HOMELESS ACTION! an unincorporated association, on behalf of itself and those it represents (collectively, "Plaintiffs"). The specific issues for adjudication include the following:

1. Should Plaintiff Todd Simone's entire Second Amended Complaint be dismissed where Plaintiffs were not granted leave to amend the First Amended Complaint to add additional parties, and thus, the addition of Plaintiff Simone exceeds the scope of permitted amendment? And should the claims of the remaining Individual Plaintiffs be dismissed where they are still moot? *Ketab Corp. v. Mesriani & Assocs.*, 2:14-cv-07241-RSWL (MRW), 2015 WL 8022874, at *8 (C.D. Cal. Dec. 4, 2015); *Jameson Beach Prop. Owners Ass'n v. United States*, No. 2:13-cv-01025-MCE-AC, 2014 WL 4925253, at *3 (E.D. Cal. Sept. 29, 2014).

2. Should Plaintiff Homeless Action!'s entire Second Amended Complaint be dismissed where it has not alleged either organizational standing through direct injury to the organization or representational standing on behalf of its members? *Smith v. Pac. Props and Dev. Corp.*, 358 F.3d 1097, 1101 (9th Cir. 2004); *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002).

3. Should Plaintiffs' entire Second Amended Complaint be dismissed as to the Petaluma Police Department where it is a municipal department of the City of Petaluma, and not a separate legal entity? *Garcia v. City of Merced*, 637 F.Supp.2d 731, 760 (E.D. Cal. 2008).

4. Should Plaintiffs' First Cause of Action for violation of the Americans with Disabilities Act be dismissed because each Plaintiff has failed to allege they are a qualified individual with a disability who was denied the benefit of or participation in a public entity's "program, service, or activity" solely on the basis of their disability, and where the seven month injunction has fundamentally altered the nature of the City's abatement process? *Does 1–5 v. Chandler*, 83 F.3d 1150, 1154–1155 (9th Cir.1996); *Where Do We Go Berkeley v. Cal. Dep't of* Transportation, No. 21-16790, 2022 WL 1236360, at *7–8 (9th Cir. Apr. 27, 2022).

5. Should Plaintiffs' Second Cause of Action for violation of the Fair Housing Act be dismissed because Plaintiffs fail to allege that the Mary Isaak Center (and/or any of the shelter options that have been offered to Plaintiffs) is/are a "dwelling" for purposes of the Act, that their claims relate to the sale or rental of dwelling units, and also fail to allege that the Mary Isaak Center refused to make a reasonable modification in any of its "rules,

ORBACH HUFF & HENDERSON LLP

policies, or practices" that, had the modification been implemented, would have enabled Plaintiffs to use and enjoy the Mary Isaak Center?  42 U.S.C. § 3603; *Community House, Inc. v. City of Boise, Idaho*, 490 F.3d 1041, 1044 n. 2 (9th Cir. 2007).

6. Should Plaintiffs' Third Cause of Action for violation of the Eighth Amendment, Fourth Cause of Action for violation of the Fourth Amendment, and Fifth Cause of Action for violation of the Fourteenth Amendment be dismissed because Plaintiffs fail to adequately allege that the purported constitutional violations were caused by a City policy or custom?  *Monell v. Dep't of Social Servs. of N.Y.*, 436 U.S. 658 (1978).

7. Should Plaintiffs' Third Cause of Action for violation of the Eighth Amendment prohibition on cruel and unusual punishment be dismissed due to each Plaintiff failing to allege any facts that they have been criminally prosecuted for camping in the park or are at credible risk for criminal prosecution?  *Miralle v. City of Oakland*, 2018 WL 6199929, at *2 (N.D. Cal. Nov. 28, 2018); *Butcher v. City of Marysville*, 2019 WL 918203, at *1-2, 7 (E.D. Cal. Feb. 25, 2019).

8. Should the Fourth Cause of Action for violation of the Fourth Amendment by Plaintiff Holdway be dismissed because impounding a vehicle with expired registration is not a violation of the Fourth Amendment?  *Leslie v. City of Sand City*, 615 F.Supp.2d 1121, 1126 (N.D. Cal. 2009).

9. Should the Fourth Cause of Action for violation of the Fourth Amendment by Plaintiffs Erickson and Simone be dismissed because the allegations are too vague, but nevertheless establish that Plaintiffs were provided with adequate notice prior to any property being seized?  *Sullivan v. City of Berkeley*, 2017 WL 4922614, at *6 (N.D. Cal. Oct. 31, 2017).

10. Should the Fourth Cause of Action for violation of the Fourth Amendment by all other Plaintiffs be dismissed because they do not allege any injury, as necessary to plead a prima facia violation of the Fourth Amendment?  *Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.,* 528 U.S. 167, 180-181 (2000).

11. Should Plaintiffs' Fifth Cause of Action for violation of the Fourteenth Amendment be dismissed because the allegations of the Second Amended Complaint establish that Plaintiffs were provided with adequate notice prior to any property being seized?  *Sullivan v. City of Berkeley*, 2017 WL 4922614, at *6 (N.D. Cal. Oct. 31, 2017).

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, any matters subject to judicial notice, all pleadings, files and records in this matter together with all other argument and evidence as may be presented for the Court's consideration.

Dated:  May 5, 2022                Respectfully submitted,

**ORBACH HUFF & HENDERSON LLP**

By:____/s/ *Kevin E. Gilbert*_____
            Kevin E. Gilbert
            Kelly Houle-Sandoval
            Nicholas D. Fine
            Attorneys for Defendant
            CITY OF PETALUMA (also erroneously
            sued as the "PETALUMA POLICE DEPARTMENT")

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

**I.    SUMMARY OF ARGUMENT**

3      This case involves Defendant City of Petaluma's ("City") ongoing efforts to transition

4 unsheltered persons that are camping in Steamer Landing Park (the "Park") into shelters.  This lawsuit

5 was filed in response to the City's planned abatement of the encampments located on both public and

6 private property in the Park in October 2021.  The planned abatement is to address the serious public

7 safety threat posed by the Park's encampment.  Residents of the encampment continue to discard feces

8 into the public waterway, discard used needles in the Park, threaten members of the public who are

9 using the Park, and continue to pose a fire hazard by setting fires in and around their tents.

10      The Second Amended Complaint ("SAC") fares no better than the First Amended Complaint

11 ("FAC"), and remains based on the principles in *Martin v. City of Boise* ("*Martin*"), 902 F.3d 1031,

12 1048 (9th Cir. 2018), opinion amended and superseded on denial of reh'g, 920 F.3d 584 (9th Cir. 2019).

13 As a result, the specific legal violations alleged by Plaintiffs are still often difficult to ascertain.  See

14 F.R.C.P. Rule 8.  Aside from this, it is important to note that *Martin* does not establish a constitutional

15 right to occupy property indefinitely at Plaintiffs' option.  See *Miralle v. City of Oakland*, 2018 WL

16 6199929, at *2 (N.D. Cal. Nov. 28, 2018).  Further, as Plaintiffs concede in the SAC, each of them has

17 been offered placement in a non-congregate shelter (the People's Village), which is what they have

18 alleged is necessary for their disabilities.  Accordingly, their claims are moot.

19      There are numerous other deficiencies in the SAC which require its dismissal.  First, Plaintiffs

20 added a Plaintiff, Todd Simone, without being granted leave of Court to do so, and he must be

21 dismissed.  Second, Plaintiff HA! still has not alleged organizational or representational standing.

22 Third, the First Cause of Action for violation of the Americans with Disabilities Act fails where the

23 Plaintiffs must state *facts* identifying how the City has discriminated against the Plaintiffs *on the basis*

24 *of* their particular disabilities, which they still fail to do.  Further, the seven month injunction has

25 already fundamentally altered the nature of the City's encampment abatement process.  The Second

26 Cause of Action fails where a failure to transform an existing congregate emergency shelter into the

27 type of non-congregate housing Plaintiffs desire is not a violation of the Fair Housing Act ("FHA").

28 Plaintiffs' constitutional claims also fail as matters of law.  The Motion to Dismiss must be granted.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

The Park is a 9.7-acre public park located in the City.  SAC, ¶¶ 3, 16.  Plaintiffs Janine Naretto, Matthew Erickson, and Jonathan Thomas Holdway are unsheltered individuals who allegedly lived in an encampment in the Park.[1]  Id., ¶ 3.  The residents of the encampment have not received written permission to camp in the Park, as required by Petaluma Municipal Code 13.28.180(H).  Id., ¶¶ 23, 41.

Plaintiff Homeless Action! ("HA!") is an unincorporated association which is made up of housed and unhoused persons and advocates and is dedicated to "ending the suffering of people who do not have a home." Id, ¶ 4.  The named Plaintiffs are members of HA!.  Id.  Ms. Naretto claims she lived at the Park for two years. Id., ¶ 51.  She previously stayed at MIC, a congregate emergency shelter.  Id., ¶¶ 13, 52.  Ms. Naretto allegedly has severe high blood pressure and has mobility issues which she claims require assistance for daily needs such as cooking. Id., ¶ 54.  In December 2021, Ms. Naretto accepted placement in the Petaluma Temporary Placement Center ("PTPC").[2]  See id., ¶ 55.  Thereafter, on or about April 1, 2022, she accepted placement in the People's Village, where she is currently residing.  Id.  Plaintiff Matthew Erickson previously camped in a small trailer at the Park.  Id., ¶ 56.  Mr. Erickson alleges to have brain damage from a car accident, and has anxiety, schizophrenia and personality disorders.  *Id*.  Mr. Erickson accepted placement in the PTPC in or about January 2022, until April 4, 2022, when he accepted placement at the People's Village, where he is currently residing.[3]  Id., ¶ 58.  Plaintiff Jonathan Thomas Holdway camped at the Park for a year, until December 2, 2021.  Id., ¶ 62.  Mr. Holdway alleges to suffer from PTSD.  Id., ¶ 63.  He previously stayed at the MIC.  Id., ¶ 63.  On September 29, 2021, Mr. Holdway's vehicle was allegedly impounded for lack of registration, which he paid to retrieve.  Id., ¶¶ 65, 66.  Mr. Holdway subsequently accepted placement in the PTPC.  Id., ¶ 68.  He then accepted placement in the People's Village, where he is currently residing.  Id.

[1] The SAC contains no allegations that Plaintiff Simone currently lives in or has ever lived in the Park. See generally, SAC.
[2] Although omitted from the SAC, Plaintiffs referenced in the FAC that in December 2021, the City opened the PTPC, a non-congregate shelter with eleven (11) rooms where residents may stay for up to 90 days.  FAC, ¶ 37.  Another non-congregate shelter with an additional nine (9) units called the Petaluma People's Village has also opened and where nearly all of the Plaintiffs are now residing, as discussed herein.  See FAC, ¶ 38; SAC, ¶¶ 11, 55, 48, 58, 68.  The People's Village allegedly replaced the PTPC, which is now allegedly closed, and will hold 25 units.  SAC, ¶ 11, 48.
[3] Kamonchanok Chomwangnapi and Eugene Reilly Drake are no longer named Plaintiffs.

- 4 -

1    Plaintiff Todd Simone is a new Plaintiff in the SAC, whom Plaintiffs were not granted leave to

2    add.  Mr. Simone and his claims should be dismissed on that basis alone.  Nevertheless, Mr. Simone

3    alleges to suffer from PTSD and anxiety.  Id., ¶¶ 69-70.  Plaintiffs do not allege that Mr. Simone is

4    residing or has ever resided at the Park.  See generally SAC.  On or about December 17, 2021, Mr.

5    Simone accepted placement at the PTPC.  Id., ¶ 71.  He alleges he was then asked to leave after having a

6    "meltdown" that included him yelling, losing control, and damaging property in the facility.  Id.

7    The MIC is an emergency congregate shelter that is operated by the Committee on the Shelterless

8    ("COTS").  Id., ¶¶ 13-14.  Of the 80 total beds at MIC, 20-25 are generally available.  Id., ¶ 108; see also

9    FAC, ¶ 36.  To be admitted, MIC requires unsheltered persons to complete a pre-application to be added

10   to MIC's internal waitlist, or go through the coordinated entry process.  Id., ¶¶ 14, 36; see also FAC, ¶

11   34.  Placement in the shelter allegedly takes between a week and a month.  SAC, ¶ 15.

12   The City first removed the encampment at the Park in 2020 and conducted additional abatements

13   in April 2021 and June 2021.  Id., ¶ 29.  Plaintiffs claim that the City destroyed the personal property of

14   the unsheltered individuals who were residing in the Park as part of the abatements.  Id., ¶ 33.  However,

15   Plaintiffs also allege that prior to each abatement, the City issued a 72-Hour Notice to Vacate.  Id., ¶ 22.

16   Plaintiffs attach the 72-hour notice for the June 2021 abatement as Exhibit A to the SAC, which states

17   that any property confiscated would be stored for 90 days, and also provided information for how to

18   recover any property that was seized.  See id., Ex. A.  Another 72-hour notice to vacate with similar

19   language was posted at the Park on October 2, 2021.  Id., ¶ 35; see also FAC, Ex. A.  Plaintiffs then filed

20   a request for a preliminary injunction/temporary restraining order, which the Court granted.

21   On December 15, 2021, Plaintiffs filed their FAC.  Dkt. 48.  On January 21, 2022, the City (and

22   Ken Savano, who is no longer a named defendant in the SAC) filed a Motion to Dismiss the FAC, which

23   Plaintiffs opposed.  Dkt. 58, 61.  On March 31, 2022, the Court issued a Civil Minute Order in which it

24   granted the Motion to Dismiss "for lack of subject matter jurisdiction…because Plaintiffs had not

25   established standing."  Dkt. 69.  Specifically, the claims of the Individual Plaintiffs were moot and

26   Plaintiff HA! did not adequately allege organizational standing.  Id., at p. 1.  However, the Court granted

27

28

1   HA! leave to amend to attempt to allege facts supporting organizational standing. Id., at p. 2.  On April

2   21, 2022, Plaintiffs filed the SAC.  Dkt. 70.  Plaintiffs allege the same six claims.[4]

3   **III.    LEGAL ARGUMENT**

4     **A.    Legal Standard for a Motion to Dismiss Under F.R.C.P. 12(b)(1)**

5      To invoke the subject matter jurisdiction of the federal courts pursuant to the U.S. Constitution

6   Article III's case-or-controversy requirement, a plaintiff must provide sufficient facts to demonstrate his

7   or her standing to sue.  *Los Angeles v. Lyons*, 461 U.S. 95, 101-102 (1983).  When it is clear from the

8   face of the complaint that a plaintiff cannot prove any set of facts in support of his claim of standing, the

9   court must grant a motion to dismiss under F.R.C.P. 12(b)(1).  *Watson v. Chessman,* 362 F.Supp.2d

10  1190, 1194 (S.D. Cal. 2005).  The burden of proof for a Rule 12(b)(1) motion to dismiss *is on the party*

11  *asserting jurisdiction.  Watson*, 362 F.Supp.2d at 1194.  When the defendant challenges standing, a

12  court must presume lack of jurisdiction "unless the contrary appears affirmatively from the

13  record."  *Renne v. Geary*, 501 U.S. 312, 316 (1991), quoting *Bender v. Williamsport Area Sch. Dist.*,

14  *475 U.S. 534, 546 (1986)* (internal quotation marks omitted).[5]

15    **B.    Legal Standard for a Motion to Dismiss Under F.R.C.P. 12(b)(6)**

16     A motion to dismiss under Federal Rules of Civil Procedure Rule 12(b)(6) tests the legal

17  sufficiency of the claims asserted in the complaint and measures whether "plaintiff can prove no set of

18  facts that would entitle him or her to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  In order to

19  state a claim, the *non-conclusory factual content* of a complaint, and reasonable inferences from that

20  content, must be plausibly suggestive of a claim entitling a plaintiff to relief.  *Ashcroft v. Iqbal*, 556 U.S.

21

22  [4] (1) Violation of Americans with Disabilities Act (42 U.S.C. § 12132); (2) Violation of the Fair

23  Housing Act (42 U.S.C. § 3604); (3) Violation of Eighth Amendment (42 U.S.C. §§ 1983); (4) Right to
    Be Secure From Unreasonable Seizures (42 U.S.C. § 1983 – Fourth Amendment; Art. 1, §13, California

24  Constitution); (5) Right to Due Process of Law (Fourteenth Amendment of the United States
    Constitution – 42 U.S.C. § 1983); and (6) Injunctive Relief.

25  [5] "It is a long-settled principle that standing cannot be inferred argumentatively from averments in the
    pleadings, but rather must affirmatively appear in the record."  *FW/PBS, Inc. v. City of Dallas*, 493 U.S.

26  215, 231 (1990) (internal citations and quotation marks omitted).  A plaintiff must demonstrate
    standing separately for each form of relief sought.  See, e.g., *Lyons*, 461 U.S. at 109, 103 S. Ct.

27  1660 (notwithstanding the fact that plaintiff had standing to pursue damages, he lacked standing to
    pursue injunctive relief); see also *Lewis v. Casey*, 518 U.S. 343, 358, n. 6 (1996) ("[S]tanding is not

28  dispensed in gross.").

1   662 (2009).  In ruling on a Rule 12(b)(6) motion, the court need not accept legal conclusions as true

2   simply because they are asserted as factual contentions.  *See Ashcroft*, 556 U.S. at 678; *Ileto v. Glock,*

3   *Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003); *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.

4   1981).  It is also improper for a court to assume "the [plaintiff] can prove facts that [he or she] has not

5   alleged."  *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526

6   (1983).  A claim may be dismissed where it presents a viable legal theory but fails to plead essential

7   facts under that theory.  *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

8          **C.    Plaintiff Todd Simone Must Be Dismissed Where He Was Added Without Leave of**

9                  **Court and the Claims of the Other Individual Plaintiffs Remain Moot**

10         The SAC exceeds the scope of permitted amendment where Plaintiffs now attempt to assert

11  claims for the first time on behalf of Plaintiff Todd Simone, who was not previously a named Plaintiff.

12  "[W]here leave to amend is given to cure deficiencies in certain specified claims, courts have held that

13  new claims alleged for the first time in the amended pleading should be dismissed or stricken."  *Ketab*

14  *Corp. v. Mesriani & Assocs.*, 2:14-cv-07241-RSWL (MRW), 2015 WL 8022874, at *8 (C.D. Cal. Dec.

15  4, 2015).  "Thus, whether a district court will accept new claims and/or parties in an amended complaint

16  after a motion to dismiss will depend on whether the plaintiff was granted leave to amend with or

17  without limitation."  *Jameson Beach Prop. Owners Ass'n v. United States*, No. 2:13-cv-01025-MCE-

18  AC, 2014 WL 4925253, at *3 (E.D. Cal. Sept. 29, 2014).

19         Here, in granting the City's prior Motion to Dismiss, the Court specifically granted Plaintiffs

20  leave to amend to allege facts in support of standing. Dkt. 69, at p. 1 ("Plaintiffs conceded that the

21  claims of individual plaintiffs are now moot because all five…have obtained adequate housing

22  placements. … Plaintiffs contend that, if granted leave to amend, they can allege facts…to establish

23  organizational standing [on the part of HA!]. …  The Court GRANTED Defendants' motion to

24  dismiss…because Plaintiffs had not established standing.  The Court granted Plaintiffs leave to amend

25  their complaint.").  Plaintiffs *were not* granted leave to add new parties and Plaintiff Todd Simone must

26  be dismissed.  Id.  As for the other Individual Plaintiffs, their claims remain moot.  They admit they

27  have been placed in the People's Village, which is the non-congregate housing they demanded.  SAC, ¶¶

28  55, 58, 68.

**D.    Plaintiff Homeless Action! Still Lacks Standing for Any of the Claims in the SAC**

An organization may have standing to sue on behalf of its members ("representational" or "associational" standing) or on its own behalf ("organizational" standing). *See Smith v. Pac. Props and Dev. Corp.,* 358 F.3d 1097, 1101 (9th Cir. 2004). HA! still has not alleged facts supporting either.

**1.    HA! Still Has Not Pled Organizational Standing**

To demonstrate standing, a plaintiff must show injury in fact. *Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*, 528 U.S. 167, 180-181 (2000). Direct organizational injury is typically cognizable where there has been: (1) a diversion of organizational resources to counteract the allegedly unlawful action, *and* (2) frustration of the organization's mission. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002). "An organization may sue only if it was forced to choose between suffering an injury and diverting resources to counteract the injury." *La Asociacion de Trabajadores v. City of Lake Forest*, 624 F.3d 1083, 1088, fn. 4 (9th Cir. 2010), citing to *Fair Employment Council v.* BMC Marketing Corp., 28 F.3d 1268, 1277 (D.C. Cir. 1994) (rejecting the idea that a plaintiff organization has standing to sue based solely on its own decision regarding resources allocation, and requiring that the plaintiff be forced to divert resources in order to avoid an injury caused by defendant's conduct). An organization's abstract interest in a problem, without direct harm, is insufficient to establish standing. *Sierra Club v. Morton*, 405 U.S. 727, 738–39 (1972).

An organization cannot claim a diversion of resources where the conduct undertaken in response to the purported violation is "business as usual" for the organization. In *American Diabetes Organization v. United States Department of Army*, 938 F.3d 1147 (9th Cir. 2019), the plaintiff organization conducted advocacy for laws, regulations and policies to keep children with diabetes safe at school and provided legal information and assistance to persons claiming diabetes-related discrimination. *Id.,* at 1150. The organization sued based on the defendant's new and allegedly discriminatory policy for children with diabetes in defendant's childcare programs. *Id.* at 1150. The diversion of resources claimed by the organization was the time of one of its staff attorneys to a single intake call from a parent concerning the new policy, because it allegedly prevented the attorney from taking other calls concerning discriminatory practices. *Id.* The Court found that the plaintiff could not establish organizational standing because expending resources to provide counseling to parents on the

new, allegedly discriminatory policy was "business as usual" for the organization, which already

dedicated some of its staff attorneys' time to taking calls.  *Id.*

Plaintiffs here allege that HA! experienced a "diversion of…resources" when HA! volunteer

attorney Victoria Yanez ("Yanez") donated her time to interview residents of the Park and assist in

taking them to or meeting them at the MIC to apply for admission.  SAC, ¶ 80.  Therefore, Plaintiffs

contend that "Ms. Yanez's time serving as a volunteer attorney for HA!, being available for speaking

engagements with other organizations and/or advocating with government agencies on behalf of

homeless people and policies were diverted to hands-on support of Steamer Landing residents."  Id.

HA! also contends it diverted financial resources to reimburse Ms. Yanez gas for her trips to the Park

and MIC.  Id., ¶ 82.  Finally, HA! claims that it provided "direct advocacy" to multiple Park residents in

the form of a motel room, food, money for repairs to a trailer, money for a phone bill, tarps during heavy

rains, as well as providing a Park resident with trips to the hospital, storage for his belongings, food, and

money for medication and supplies.  Id., ¶¶ 81, 82.

However, providing "advocacy and support" to unsheltered persons is exactly the type of work

to which HA! already dedicates its resources.  Id., ¶ 76.  Plaintiffs expressly allege in the SAC that HA!

is an unincorporated association of activists "working towards ending the suffering of people who do not

have a home" in Sonoma County, and is "made up of housed and unhoused individuals and advocates,"

including Plaintiffs.  Id., ¶ 4.  HA! "functions primarily as an advocacy (Board of Supervisors,

Continuum of Care, City Council, etc.) and educational (providing speakers, articles, reports, resource

guides, etc.) group, and has as its primary goal easing the suffering of homeless people through

changing homeless policy through its advocacy and educational functions."  Id., ¶ 79.  HA! also

provides "direct advocacy" (the provision of food, clothing, tents, etc.) to unsheltered persons.[6]  Id.

_____

[6] HA! now alleges, without any explanation, that a non-profit organization related to HA!, the Sonoma
Applied Village Services (SAVS), now performs the direct advocacy that HA! used to perform. Id.
This is a convenient allegation which is obviously intended to get around the "business as usual"
problem Plaintiffs face, and it should be disregarded.  HA! clearly still provides "direct advocacy" as
part of its usual functions where it claims to have provided "direct advocacy" to numerous Park
residents.  Id., ¶¶ 81-82.  And, such "direct advocacy" is consistent with HA!'s mission to end homeless
suffering.  If SAVS now performs HA!'s "direct advocacy," then SAVS would have performed such
advocacy for the Park's residents, not HA!.  HA!'s attempt to disclaim what is clearly a normal and

Defs' Notice of Motion and Motion to Dismiss Plts' Second Amended Complaint; Memo of P&A [21-cv-10027-EMC]

1          Accordingly, supporting, advocating for, and assisting unsheltered persons in locating and

2   transitioning to adequate shelter is exactly what HA! is intended to do as an organization, or "business as

3   usual," and exactly what it has done in response to the planned abatement of the Park's encampment.[7]

4   Further, Plaintiffs still allege no facts regarding any diversion of resources by HA! due to each of the

5   specific violations alleged in the First through Fifth Causes of Action, as required to establish a direct

6   and concrete injury to the organization.[8]  See *Lewis*, 518 U.S. at 358, n. 6 (1996) ("[S]tanding is not

7   dispensed in gross.").  In other words, HA! has not pled that it was forced to divert resources to avoid an

8   injury to the organization.  See *La Asociacion de Trabajadores*, 624 F.3d at 1088.

9          This exact issue was addressed in *Hous. is a Hum. Right Orange Cty. v. Cty. of Orange*, in which

10  the Court found that because San Clemente had no affirmative constitutional obligation to provide

11  shelter to individuals experiencing homelessness, there was no injury to a homeless advocacy

12  organization based on the enforcement of an anti-camping ordinance or the creation of a temporary

13  campground, and no standing.  *Id.*, No. SACV19388PAJDEX, 2019 WL 6481311, at *14 (C.D. Cal.

14  Aug. 12, 2019).  The Court also found that the organization failed to allege facts specifically supporting

15  standing to pursue an ADA claim.  Id.  Likewise, Plaintiffs here do not and cannot allege that the City

16  has an affirmative obligation to provide shelter to unsheltered persons and do nothing to explain how the

17  City's actions here caused an injury to HA!.  As such, HA! fails to allege organizational standing.

18  ─────────────────────

19  usual function solely to get around a motion to dismiss should not be tolerated.  In fact, in the FAC,
    Plaintiffs expressly alleged direct advocacy was a normal and usual function of HA!.  FAC, ¶ 19, 20, 66.

20  [7] Consider the alleged "interviews" of Park residents by Ms. Yanez, which Plaintiffs claim were "helpful
    in determining the actual availability, or lack thereof, of placements at the MIC emergency shelter, and

21  the difficulty Steamer Landing residents have had actually accessing admission to the MIC emergency
    shelter."  SAC, ¶ 80.  In other words, Ms. Yanez was clearly engaged in HA!'s "educational" functions,

22  whereby she was obtaining reports and information from unsheltered persons concerning living at the
    Park and obtaining shelter, which HA! is obviously using and intended to use as part of its "advocacy"

23  functions in attempting to support, assist, and advocate for Park residents.  This could not be more
    "business as usual" than it is for HA!.

24  [8] Again, the only attempt HA! makes to allege organizational standing specific to each cause of action is
    in the First Cause of Action for Violation of the ADA, wherein HA! alleges in conclusory fashion that

25  "the [ADA] discrimination has caused injury to Plaintiff Homeless Action! via the frustration of its
    mission and the diversion of its resources."  SAC, ¶ 93.  This is a conclusion, not an allegation

26  containing facts supporting standing, and HA! cannot rely on a general claim of standing, but rather
    must allege facts establishing standing for each cause of action.  See *Lewis*, 518 U.S. at 358, n. 6

27  (1996) ("[S]tanding is not dispensed in gross.").  And, HA! makes no specific attempts to allege
    organizational standing within the other causes of action.

28

- 10 -

1

### 2.     HA! Still Has Not Pled Representational Standing

2    HA! also has not pled facts that would establish associational standing on behalf of its members.

3    An association has standing to sue on behalf of its members only if each of the following conditions are

4    met: (1) the association's members would otherwise have standing in their own right, (2) the interest the

5    association is seeking to protect is germane to the association's purpose, and (3) neither the claim

6    asserted, nor the relief requested, requires participation of individual members in the lawsuit.  *Hunt v.*

7    *Wash. State Apple Adver. Comm'n*, 432 U.S. 333 (1977).  An association can only have standing to seek

8    a declaration, injunction, or some other form of prospective relief on behalf of its members; it does not

9    enjoy standing to seek damages for monetary injuries peculiar to individual members.  *Warth v. Seldin,*

10   *422 U.S. 490, 515-16 (1975).*  Thus, HA! cannot have standing to seek damages on any claim, including

11   the Third Cause of Action.  See SAC, ¶ 112 ("…the Named Plaintiffs were injured and damaged…").

12   Further, even when seeking injunctive relief, an organization's representational standing is still

13   limited by prudential considerations, including the general prohibition on a litigant's raising another

14   person's legal rights.  See, e.g., *Warth v. Seldin,* 422 U.S. 490, 499 (1975).  Courts "limit access to the

15   federal courts to those litigants best suited to assert a particular claim."  *Gladstone, Realtors v. Village of*

16   *Bellwood,* 441 U.S. 91, 100 (1979).  Here, the only unsheltered persons HA! identifies as members are

17   the named Plaintiffs, who are asserting their own claims.  Importantly, *HA! does not allege that any*

18   *other resident of the Park is a member of the organization*; from the allegations, it appears the other

19   members of HA! are activists, advocates, and possibly unhoused individuals residing in other

20   geographic areas.  See SAC, ¶¶ 4, 79-82.  The relief sought by HA! is therefore still identical to the

21   relief sought by the named Plaintiffs.  Where an organizational plaintiff merely repeats the claims of

22   individual plaintiffs, and seeks the same relief, the individuals are the better plaintiffs and the

23   organization lacks standing.  *Disabled in Action of Metropolitan New York v. Trump Intern. Hotel &*

24   *Tower* 2003 WL 1751785 at * 10 (S.D.N.Y. 2003); *Access 123, Inc. v. Markey's Lobster Pool,*

25   *Inc.*, 2001 WL 920051, at *4 (D.N.H. Aug.14, 2001).  Thus, HA! lacks representational standing.

26   ### E.     The Petaluma Police Department is Still Not a Separate Entity

27   Further, Plaintiffs assert three 42 U.S.C. section 1983 claims for violation of the Eighth, Fourth

28   and Fourteenth Amendments.  FAC, ¶¶ 91-99; 100-103; 104-107.  Section 1983 creates liability for

- 11 -

"persons" who violated constitutional or federal rights when acting under of color law.  The term "person" covers "state and local officials sued in their individual capacities, private individuals and entities..., and local governmental entities," but not "municipal departments." *Garcia v. City of Merced*, 637 F.Supp.2d 731, 760 (E.D. Cal. 2008), citing *Vance v. County of Santa Clara,* 928 F.Supp. 993, 995-996 (N.D. Cal. 1996).  Here, there is no claim against the Petaluma Police Department ("PPD"); the proper party is the City of Petaluma.  Therefore, the Third, Fourth and Fifth Causes of Action must be dismissed with prejudice against the PPD.

Additionally, courts have recognized two types of ADA claims in the context of a police encounter: (1) wrongfully arresting someone with a disability because the police misperceive the effects of that disability as a criminal activity; and (2) failing to reasonably accommodate the person's disability in the course of investigation or arrest, causing the person to suffer greater injury or indignity in that process than other arrestees.  *Robinson v. City of San Diego*, No. 18-CV-1918-AJB-AGS, 2019 WL 354688, at *3 (S.D. Cal. Jan. 29, 2019).  Neither claim applies here where none of the Plaintiffs alleges he or she was arrested or "investigated" as part of the abatements of the Park's encampment, let alone by reason of their alleged disabilities or that they were injured in the process as a result of their disabilities. And, considering that the ADA and FHA are so similar that federal courts analyze the two statutes as one, both Plaintiff's First and Second Causes of Action must be dismissed as against the PPD, as well. *Caron Found. of Fla., Inc. v. City of Delray Beach*, 879 F.Supp.2d 1353, 1364 (S.D. Fla. 2012).

### F.     The First Cause of Action for Violation of the ADA Still Fails

Plaintiffs allege that the removal of unsheltered persons from the Park without having "adequate alternative placements" to accommodate their disabilities violates 42 U.S.C. section 12132, which states that "... no qualified individual with a disability shall, *by reason of such disability,* be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  (*Id.*, § 12132.)

To prove a public program or service violates Title II of the ADA, a plaintiff must show: (1) he or she is a "qualified individual with a disability"; (2) he or she was either excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (3) *such exclusion, denial of benefits, or discrimination*

- 12 -

1   *was by reason of his or her disability.*  *Chandler*, 83 F.3d at 1154–1155.  Plaintiffs' allegations of

2   purported ADA violations are still unclear and confusing, and do not comply with F.R.C.P. Rule 8,

3   which requires a "short and plain statement" that states "which wrongs were committed by which

4   defendant."  *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996).  Nevertheless, there remains no

5   viable claim under the ADA.

6                    1.        **Plaintiffs Still Have Not Established They Were Discriminated Against**

7                              **Because of Their Alleged Disabilities or That They Are "Qualified**

8                              **Individuals"**

9           While all of the named Plaintiffs have made the conclusory statements that they are "qualified

10  persons with disabilities" under the ADA (see SAC, ¶ 86), none come close to alleging facts (1)

11  establishing a disability and (2) that they were discriminated against in the provision of public services

12  or activities because of that disability.  The ADA defines "disability" as "(A) a physical or mental

13  impairment that substantially limits one or more major life activities of such individual; (B) a record of

14  such an impairment; or (C) being regarded as having such an impairment ..."  42 U.S.C. § 12102.  A

15  person is substantially limited in a major life activity when that person is "unable to perform the major

16  life activity" or is "significantly restricted as to condition, manner or duration under which [she] can

17  perform a particular major life activity as compared to ... the average person in the general."  *Coons v.*

18  *Sec'y of U.S. Dep't. of Treasury*, 383 F.3d 879, 885 (9th Cir. 2004); 29 C.F.R. § 1630.2(j).

19          Ms. Naretto alleges that she has "severe high blood pressure" and alleged cellulitis in her feet,

20  but still does not allege how any specific disability substantially limits a major life activity, other than a

21  single conclusory contention that she "relies on assistance from others for things such as assistance with

22  cooking and other daily living needs…"  SAC, ¶ 54.  Mr. Erickson alleges that he suffered brain damage

23  in a car accident 11 years ago that left him with alleged anxiety, schizophrenia and personality disorders,

24  but likewise fails to allow how these substantially limit any major life activity.  Id., ¶¶ 62-68.  Similarly,

25  Mr. Holdway alleges he suffers from PTSD (id., ¶ 63), yet fails to allege how this substantially limits

26  any major life activity.  *Magdeleno v. Washington County*, 277 Fed.Appx. 679, 680-681 (2008) (finding

27  that PTSD did not constitute a disability under the ADA).  The new Plaintiff, Todd Simone, who was

28

Defs' Notice of Motion and Motion to Dismiss Plts' Second Amended Complaint; Memo of P&A [21-cv-10027-EMC]

added without leave of Court, alleges that he suffers from PTSD and anxiety but also fails to allege how

they substantially limit any major life activity.[9]  SAC, ¶ 70; see *Magdeleno*, 277 Fed.Appx. at 680-681.

More significantly, none of the Plaintiffs allege how their claimed disabilities are related

whatsoever to their placement offers.  The MIC and now the People's Village are available to all

unsheltered members of the community, without or without disabilities, as was the PTPC.[10]  There are

no allegations in the SAC that Plaintiffs have been excluded from participating in MIC, PTPC, the

People's Village, or any other shelter, solely on the basis of their alleged disabilities.  Ms. Naretto

alleges she previously stayed at MIC but refuses to go back because of her prior experience of allegedly

"being subject to eviction without due process" (for which she provides no explanation or factual

allegations).  SAC, ¶ 52.  Accordingly, her self-exclusion from the MIC is not due to her alleged

disability, but her own preferences and personal desires.  Moreover, she admits she subsequently

received placement in the PTPC before being placed in the People's Village (the non-congregate

housing she demanded), where she is currently residing. Id., ¶ 55.  Mr. Erickson initially alleged he was

offered shelter at the PTPC but did not want to go if he could not take his trailer.  FAC, ¶ 50.  Therefore,

his self-exclusion from shelter placement also had nothing to do with his claimed disabilities, but rather

his personal preferences.  Moreover, Mr. Erickson now admits that he in fact accepted placement at the

PTPC before accepting placement at the People's Village (the non-congregate housing he demanded),

where he is currently residing.  SAC, ¶ 58.  Mr. Holdway previously alleged that he stayed at MIC

before but would not go back because he did not want to be "subjected to harassment by the police"

(without explanation).  FAC, ¶ 61.  Accordingly, Mr. Holdway's exclusion from MIC was likewise due

to his personal desires and preferences, not his purported disabilities.  And, Mr. Holdway also now

admits to accepting placement in the PTPC before subsequently being placed in the People's Village,

where he currently resides and which is the non-congregate housing he demanded.[11]  SAC, ¶ 68.

---

[9] The most that HA! alleges about its members is that "the Named Plaintiffs and those similarly situated parties represented by Homeless Action! were each 'qualified persons with disabilities' as defined under the ADA."  SAC, ¶ 86, see also ¶ 103 (same regarding the FHA).  This is conclusory and insufficient.
[10] Plaintiffs allege that the City closed the PTPC when it opened the People's Village.  SAC, ¶ 48.
[11] As for Mr. Simone, he admits he was admitted to PTPC on or about December 17, 2021, but was asked to leave after having a "meltdown" that involved him losing control and damaging facility property.  Id., ¶ 71.  Mr. Simone was upset that he was not afforded the level of freedom and privacy

- 14 -

1

2. **Plaintiffs Still Do Not Allege Any City Programs, Services or Activities in Which They Were Discriminated Against**

2

3    Moreover, Plaintiffs fail to specifically identify the City "programs, services and activities" that

4    purportedly discriminate against them, which makes it impossible to ascertain exactly what is being

5    alleged against the City.  Plaintiffs even still summarily identify *all of the actions alleged in the SAC* as

6    the "services, programs and activities under Title II" of the ADA (SAC, ¶ 90), which is far too vague to

7    state a claim under F.R.C.P. Rule 8.  Even Plaintiffs' new attempt to identify the programs, services and

8    activities in which they were allegedly discriminated against is far too vague and overbroad to maintain

9    a claim, contending that they include "the City's encampment abatement, homeless housing placement

10   programs which include their shelter and permanent supportive programs, park programs, [and]

11   enforcement of parking, quality of life ordinances, and anti-camping ordinances…"  SAC, ¶ 90.  The

12   allegations must be both "sufficiently detailed to give fair notice to the opposing party of the nature of

13   the claim so that the party may effectively defend against it" and sufficiently plausible "such that it is

14   not unfair to require the opposing party to be subjected to the expense of discovery and continued

15   litigation."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).   Nevertheless, Defendants will

16   endeavor to examine the allegations and how they fail to state a claim.

17   First, Plaintiffs still make no attempt to actually allege how each individual Plaintiff was

18   supposedly denied access to these purported "services, programs, and activities" due to their alleged

19   disabilities.  As for the encampment abatement process, which denies unsheltered persons the ability to

20   camp at the Park over extended periods of time, it is applied to all unsheltered people residing at the

21   Park, regardless of disability.  Nor do Plaintiffs even attempt to explain how the mere enforcement of

22   parking, quality of life, or anti-camping ordinances somehow discriminate against Plaintiffs, let alone

23

24

25

26   that he preferred.  Id., ¶¶ 72, 74.  Indeed, it is because of his concerns about freedom and privacy that he
     has self-excluded himself from the MIC.  Id., ¶ 74.  Therefore, to the extent Mr. Simone is not presently

27   residing in a shelter, it is because he personally prefers more privacy and freedom (to the point that he
     "erupted" and damaged the City's PTPC facility when he felt he did not receive enough of either) – not

28   due to his alleged disabilities.  Regardless, he must be dismissed as an improper Plaintiff where he was
     added without leave of Court.

solely on the basis of their alleged disabilities.[12]  There are no allegations that the City only enforced these ordinances against disabled persons or that the enforcement was in any way tied to Plaintiffs' alleged disabilities.  There is simply no connection alleged with Plaintiffs' purported disabilities.

Plaintiffs also argue that the City's alleged failure to offer "adequate alternative [shelter] placements" amounts to discriminatory action.  SAC, ¶¶ 91, 93.  However, such arguments have been considered and rejected.  In *Murray v. City of Philadelphia*, on a request for a temporary restraining order, the Court considered an identical claim that the dissolution of the city's homeless encampments would violate the ADA.  *Id.*, 481 F.Supp.3d 461, 474 (E.D. Penn. 2020).  The plaintiffs alleged the encampment residents had "been denied access to shelters or hotel rooms because they do not provide adequate disability accommodations" but the Court found that the plaintiffs had "not offered sufficient evidence to support a finding that the City's encampment dissolution process is a 'program, service, or activity' that excludes or discriminates against Plaintiffs on the basis of disability…" *Id.*

The same reasoning applies here.  There are no allegations in the SAC to support a claim that the City's encampment abatement process is a "program, service, or activity" that excludes or discriminates against Plaintiffs on the basis of disability.  A general allegation that the City "knew, or should have known, that the incidence of disabilities for people who are homeless is extremely high" (SAC, ¶ 94) does not suffice to allege that the planned abatement would discriminate against Plaintiffs *on the basis of* their alleged disabilities.

Moreover, to the extent the City's abatements of the Park could be considered a program, the ADA requires "only 'reasonable modifications' that would not fundamentally alter the nature of the service provided." *Tennessee v. Lane*, 541 U.S. 509, 532 (2004).  The stated purpose of the abatements is to address the serious health and public safety threats posed by the Park's encampment, including feces in the public waterway, used needles, fire hazards, and members of the encampment threatening members of the public.  Considering the Court granted the TRO on October 5, 2021, which was later converted to a preliminary injunction, the injunction has now been in place for seven months.  An

---

[12] For example, with respect to "parking" ordinances, the City assumes Plaintiffs are referring to the impounding of Mr. Holdway's vehicle.  SAC, ¶¶ 65-66.  However, Plaintiffs expressly allege the vehicle was impounded for lack of registration, not because of Mr. Holdway's alleged disability.  Id.

injunction of this length fundamentally alters the City's abatement process (which is to provide for expedient clearing of the encampment to address the health and safety concerns the encampment poses), into what is essentially the compelled provision of public housing.  *See Where Do We Go Berkeley v. Cal. Dep't of* Transportation, No. 21-16790, 2022 WL 1236360, at *7–8 (9th Cir. Apr. 27, 2022) ("But Caltrans does not provide people with housing solutions and cannot make clearing level 1 encampments dependent on when the people living there can relocate.").  The ADA claim fails for this reason as well.

Finally, any argument that the shelters or other programs and services provided by COTS are the "program, service, or activity" in which Plaintiffs have been discriminated against, fares no better.  At the outset, there are still no allegations establishing that MIC (or any other shelter), and the services provided by COTS at MIC, are *City* programs, services or activities.  There are no factual allegations in the SAC establishing an agency relationship, other than a single cursory conclusion that COTS is an agent of "Defendants."[13]  SAC, ¶ 25.  Leaving this aside, a "Title II claim cannot be based on allegations that given their particular mental health disabilities, plaintiffs need[] *more* support or *additional* services… that are not provided to other homeless people."[14]  *Reed v. City of Emeryville,* 2021 WL 4974973 at * 9 (N.D.Cal. October 26, 2021).  The Court in *Reed* explained:

> Here the benefit, as alleged by plaintiffs, is the "homeless strategy
> program" to "serve and house homeless residents" that – as operated
> through Operation Dignity – includes "Rapid Rehousing, Emerging Needs
> Fund and outreach services including access to St. Vincent de Paul shelter
> beds for homeless individuals." FAC ¶¶ 22-23, 27; *see also id.* ¶ 29 ("the
> City and its contractor do not operate the City's homelessness program in a
> way that is accessible to people with disabilities. As a result, people with
> severe mental and physical disabilities suffer outright exclusion from the
> program or are denied equal access to the benefits of the program,
> including case management, services, and permanent housing that
> appropriately accommodate their disabilities."). These are neutral policies
> with neutral benefits provided to all homeless individuals. What plaintiffs

---

[13] Regarding the People's Village, the link to COTS that Plaintiffs provided at footnote 9 of the SAC (https://cots.org/need-help/ (last visited April 17, 2022)) directs the user to a website for COTS, which expressly states, "The People's Village is be located at 900 Hopper Street, Petaluma, and will be operated by COTS," not the City.  (https://cots.org/interim-housing-faq/.)

[14] According to Plaintiffs' allegations, they have actually been offered *more* and *better* services than other unsheltered community members, including other residents of the Park.  Because of the Court's injunction, the Named Plaintiffs and other *non-party* Park residents have received priority access to the limited non-congregate spaces in PTPC, which was opened specifically to meet the Plaintiffs' demands. See, e.g., FAC, ¶ 37; SAC, ¶¶ 48, 55, 58, 68, 71-73.

complain about is the failure of the City through its Program to provide additional services (*e.g.*, single room shelter beds, more frequent appointment reminders, additional time to complete tasks). The failure to provide additional services, however, is not a denial of a benefit under Title II.  2021 WL 4974972 at * 9.

The exact same invalid claim is pled here.  The outreach and placement services and shelter options offered to Plaintiffs are the same as offered to all unsheltered persons in the community.[15]  A failure to provide additional services in the form of non-congregate housing is not a denial of a benefit under Title II of the ADA.  As such, Plaintiffs still have not stated a claim under the ADA.

**G.    The Second Cause of Action for Violation of the Fair Housing Act Still Fails**

The Second Cause of Action for violation of the FHA still fails to state a claim.  Discrimination under the FHA includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [a handicapped person] equal opportunity *to use and enjoy a dwelling*."  36 U.S.C. § 3604(f)(3)(B); emph. added.

The first deficiency in this claim is that Plaintiffs do not allege any facts showing that each of them are handicapped, as that term is defined in the Act.  See SAC, ¶ 103.  The second deficiency is that Plaintiffs do not identify the "dwelling" that they have been denied the use of due to a refusal to make reasonable accommodations in rules, policies or practices.  Id.  At most, Plaintiffs offer conclusory allegations that "permanent supportive housing, motels, and other housing Placements…including COTS

---

[15] To the extent Plaintiffs seemingly attempt to allege separate claims within their ADA cause of action for failure to make reasonable modifications as required by the ADA's implementing regulations, 28 C.F.R. sections 35.130(b)(3) and (7) (see SAC, ¶¶ 91, 94), despite explicitly bringing the First Cause of Action under 42 U.S.C. section 12132 (see id., at p. 29:21-30:6), the allegations are deficient to support a cause of action. See *Smith v. City of Oakland*, 2020 WL 2517857 at *6 (N.D. Cal. April 2, 2020) (noting that claims under 42 U.S.C. § 12132 and 28 C.F.R. § 35.130(b)(7) are two separate causes of action); *Ewbank v. Emrick*, No. 6:17-CV-00187-JR, 2018 WL 2392725, at *4 (D. Or. Apr. 16, 2018), report and recommendation adopted, No. 6:17-CV-00187-JR, 2018 WL 2392502 (D. Or. May 25, 2018) (same regarding 28 C.F.R. § 35.130(b)(3)).  Plaintiffs do not identify, *inter alia*, the reasonable modification to existing "policies, practices, or procedures" they requested that was refused by the City.  See 28 C.F.R. § 35.130(b)(7)(i).  To the extent they claim to have asked the City to "postpone" the sweep (SAC, ¶ 97), the premise of this claim is that a failure to "reasonably accommodate" Plaintiffs by offering placement in non-congregate shelter is an ADA violation, which is plainly contrary to the law under *Reed*.  Along these lines, the SAC's remaining throwaway reference to California Government Code section 1135, *et. seq.*, with a general allegation that "violations of the ADA are also state law violations" is insufficient to state a separate claim for a state law violation, if this is what Plaintiffs intended to do.  See SAC, ¶ 87.

- 18 -

permanent supportive housing and Integrity Housing Programs" constitute "dwellings" for purposes of the FHA.  SAC, ¶ 101.  This is a red-herring.  All of Plaintiffs' allegations in the SAC pertain to their issues with the congregate MIC and desire to be placed in non-congregate housing due to their alleged disabilities, which they have been.  Plaintiffs do not and cannot allege that they have been excluded from permanent supportive housing on the basis of their alleged disabilities.  There are no allegations in the SAC concerning *any* specific permanent supportive housing facilities from which Plaintiffs have allegedly been excluded, let alone on the basis of their alleged disabilities, and the fact Plaintiffs desire placement in permanent supportive housing is not a discrimination claim.[16]

As for homeless shelters, such as the transitional housing facility at issue here, they have never been characterized as a "dwelling" within the context of the FHA.  See *Community House, Inc. v. City of Boise, Idaho* 490 F.3d 1041, 1044 n. 2 (9th Cir. 2007) ("[w]e have never squarely addressed the issue of whether all temporary shelters fit within the Act's definition of dwelling...; nevertheless, we decline to do so here.").  The FHA defines a "dwelling" as "any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a *residence* by one or more families, and any vacant land which is offered for sale or lease for the construction or location thereon of any such building, structure, or portion thereof."  42 U.S.C. § 3602(b) (emph. added); *see* 24 C.F.R. § 100.201 (defining "dwelling unit" as including "sleeping accommodations in shelters intended for occupancy as a *residence* for homeless persons" (emph. added)).  At the very least, there are no factual allegations in the SAC that MIC is a *residence* sufficient to bring it within the definition of "dwelling."

The meaning of "dwelling" aside, the FHA only applies to the *sale or rental* of dwelling units.  42 U.S.C. § 3603; *Salisbury v. City of Santa Monica*, 998 F.3d 852 (9th Cir. 2021).  Plaintiffs' use of the bed offered by COTS at its MIC was pursuant to a license agreement, not a tenancy.  No sale or rental of the dwelling occurred, a conclusion that is inescapable based on Plaintiffs' admission that they received

---

[16] Again, there is no fundamental right to housing.  *Lindsey v. Normet*, 405 U.S. 56, 74 (1972).  Further, Plaintiffs are not entitled to more, new, or additional services that are not provided to other homeless people on the basis of their alleged disabilities.  *Reed*, 2021 WL 4974973 at *9.  Nevertheless, Plaintiffs concede that they have all received housing in the People's Village, which is accommodating non-congregate housing, except for Mr. Simone, who in addition to being an improperly named Plaintiff, concedes he was asked to leave the PTPC because he erupted in anger and damaged the facility, not due to his alleged disability.

Defs' Notice of Motion and Motion to Dismiss Plts' Second Amended Complaint; Memo of P&A [21-cv-10027-EMC]

1    nothing more than a temporary bed at the facility.  See generally SAC (no allegations concerning a sale

2    or rental) and ¶ 58 (alleging that the People's Village "is not permanent supportive housing" and that its

3    residents are "not afforded due process rights normally available to a tenant.").

4          The SAC is also devoid of any factual allegations that MIC refused to make reasonable

5    accommodations in any of its "rules, policies, or practices" that, had they been implemented, would

6    have enabled Plaintiffs to *use and enjoy the "dwelling"* (MIC).  For instance, there are no allegations

7    that MIC refused a request to modify intake procedures, its common areas, the assigning of top/bottom

8    bunks, or any other aspect of the existing congregate shelters' rules and practices to accommodate

9    Plaintiffs' purported disabilities.  There are also *zero* allegations that any modification to the assessment,

10   prioritization and placement of homeless individuals would allow Plaintiffs – who, by their own

11   allegations refuse to use congregate shelters – to use the congregate MIC.[17]  Instead, this claim

12   apparently seeks to impose liability on the theory that an emergency congregate shelter is required to

13   fundamentally change *what it is* (as opposed to modifying any specific rule, policy, practice, or service)

14   and become a non-congregate shelter, so that Plaintiffs can use that shelter.  This is not an FHA claim.[18]

15        **H.    Plaintiffs' Section 1983 Claims are Precluded by *Monell***

16        Plaintiffs' claims under section 1983 (including the Third, Fourth, and Fifth Causes of Action)

17   are further precluded by *Monell v. Dep't of Social Servs. of N.Y.*, 436 U.S. 658 (1978).  A plaintiff

18   pleading a section 1983 claim against a municipality must show: "(1) that the plaintiff possessed a

19   constitutional right of which she was deprived; (2) that the municipality had a policy; (3) that

20   this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that

21   the policy is the moving force behind the constitutional violation."  *Plumeau v. Sch. Dist. No. 40 Cnty.*

22   *Of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997).  Further, "[l]iability for improper custom may not be

23   predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration,

24   frequency, and consistency that the conduct has become a traditional method of carrying

25

26   [17] In fact, the *only* alleged "accommodation" mentioned in the SAC (which is in the First Cause of
     Action for violation of the ADA) is that Plaintiffs allegedly requested, and the City allegedly refused, to
27   postpone the abatement of the Park.  SAC, ¶ 97.  Plaintiffs make no attempt to explain how postponing
     the abatement of the Park to allow unsheltered persons to continue residing *in the Park*, would have
28   somehow enabled Plaintiffs *to use and enjoy the MIC*.
     [18] *Lindsey*, 405 U.S. at 74 (no fundamental right to housing).

out policy." *Trevino v. Gates,* 99 F.3d 911, 918 (1996); see *Peterson v. City of Fort Worth*, 588 F.3d 838 (5th Cir. 2009) (27 incidents of excessive force in 4 years, with no context as to the total number of arrests or any comparisons to other cities, is insufficient evidence of a pattern rising to a policy).

To survive a motion to dismiss, a *Monell* claim must: (1) "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively;" and (2) "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *A.E. ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012). "Facts regarding the specific nature of the alleged policy, custom, or practice are required; merely stating the subject to which the policy relates (i.e., excessive force) is insufficient." *Cain v. City of Sacramento*, 2017 WL 4410116, at *3 (E.D. Cal. 2017), citing *A.E.*, 666 F.3d at 637. Plaintiffs allege that the policies, practices and customs at issue include: (1) evicting unhoused individuals from public places and failing to provide adequate alternative placements (SAC, ¶¶ 27, 29, 40, 91, 107); (2) destroying the personal property of unhoused individuals in abating homeless encampments (id., ¶¶ 31, 33, 115, 121); (3) taking away water access and trash services at encampments prior to an impending abatement, before offering shelter options (id., ¶ 32); and (4) seizing unregistered vehicular homes whose drivers were violating California Vehicle Code section 22651(o), without a warrant or exigent circumstances (id., ¶¶ 50, 116-117). These do not suffice.

As discussed herein, Plaintiffs have not pled any deprivation of their constitutional rights. However, even if they had, Plaintiffs have simply not pled facts that the vague "policies," "practices" or "customs" asserted in the SAC are adopted official policies or customs of such widespread practice of the City that, "although not authorized by written law or express municipal policy, [are] so permanent and well-settled as to constitute a custom or usage with the force of law." See *Young v. City of Visalia*, 687 F.Supp.2d 1141, 1147 (E.D.Cal. 2009); citing *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). Plaintiffs' allegations on these points are merely conclusions, not actual facts, and they have only alleged a total of three abatements and one vehicle seizure. *See, Ayala v. Cnty. of Imperial*, 2017 WL 469016 at *7 (S.D. Cal. Feb. 3, 2017); see *Peterson*, 588 F.3d 838. Indeed, no supporting facts are alleged at all regarding the claim that the City takes away water access and trash services. Finally,

1    Plaintiffs have failed to plead how any alleged City policy, practice or custom is connected to their

2    constitutional claims.  As such, Plaintiffs' Third, Fourth, and Fifth Causes of Action must be dismissed.

3    **I.        The Third Cause of Action for Violation of the Eighth Amendment Still Fails**

4              The Eighth Amendment "limits the kinds of punishment that can be imposed on those convicted

5    of crimes…proscribes punishment grossly disproportionate to the severity of the crime…and…imposes

6    substantive limits on what can be made criminal and punished as such."  *Ingraham v. Wright,* 430 U.S.

7    651, 667 (1977).  The Eighth Amendment was designed to protect those convicted of crimes.

8    *See Steffen v. Rowland*, 972 F.2d 1343, at *3 (9th Cir. 1992), citing *Ingraham v. Wright*, 430 U.S. 651,

9    668 (1977).  In *Martin v. City of Boise*, a Boise city ordinance made it a misdemeanor to use "any of the

10   streets, sidewalks, parks, or public places as a camping place at any time."  902 F.3d at 1048.  The Ninth

11   Circuit held that "the Eighth Amendment prohibits the imposition of criminal penalties for sitting,

12   sleeping, or lying outside on public property for homeless individuals who cannot obtain shelter" within

13   a jurisdiction.  *Id*. at 1048.  However, the Ninth Circuit cautioned that *Martin* "in no way dictate[d] to

14   the City that it must provide sufficient shelter for the homeless, or allow anyone who wishes to sit, lie, or

15   sleep on the streets ... at any time and at any place."  *Id*.  As explained by the Court in *Miralle v. City of*

16   *Oakland*, when considering a similar Eighth Amendment claim*,* "Plaintiffs are not faced with

17   punishment for acts inherent to their unhoused status that they cannot control.... Plaintiffs' theory would

18   therefore require the Court to extend the right described in *Martin* well beyond the parameters set by the

19   Ninth Circuit.  *Martin does not establish a constitutional right to occupy public property indefinitely at*

20   *Plaintiffs' option*."  2018 WL 6199929, at *2 (N.D. Cal. Nov. 28, 2018) (emph. added).

21             The SAC again purports to bring this case within the self-described "narrow" holding of *Martin*

22   (*Martin,* 902 F.3d at 1048) by alleging that the City's anti-camping ordinance, which prohibits camping

23   in public parks, is a wholesale criminalization of sleeping that punishes the status of homelessness.

24   SAC, ¶ 108.  Numerous courts have rejected similar attempts to expand *Martin* in this way.  In *Butcher*

25   *v. City of Marysville*, in which the defendant city had evicted homeless occupants and destroyed their

26   property, the court rejected the plaintiffs' Cruel and Unusual Punishment claim because the Eighth

27   Amendment does not extend beyond the criminal process.  2019 WL 918203, at *1-2, 7 (E.D. Cal. Feb.

28   25, 2019); *see also Gomes v. County of Kauai*, 2020 WL 6937435 at *3 (D. Hawai'i November 24,

1   2020) (ordinance criminalizing sleeping in one specific public park did not violate Eighth Amendment

2   because neither the "simple act of sleeping outside" nor someone's status as homeless were

3   criminalized); *Le Van Hung v. Schaaf*, 2019 WL 1779584, at *5 (N.D. Cal. Apr. 23, 2019) (no Eighth

4   Amendment claim because a "clean and clear" of the park did not require the arrest of the plaintiffs).[19]

5            Here, there is no allegation that the City's anti-camping ordinance provides for criminal

6   prosecution, or that any of the named Plaintiffs have been charged with or convicted of a crime due to

7   camping in the Park.  Plaintiffs have not alleged they were arrested, charged, or convicted of any crime,

8   nor have they asserted any facts showing a credible risk of prosecution. SAC, ¶ 29.  The only references

9   in the SAC that any person has been prosecuted for a crime are: (1) Exhibit B, which appears to be a

10  picture of a misdemeanor citation issued to Eric Conroy on October 14, 2020 (SAC, ¶ 30; Ex. B); and

11  (2) Mr. Simone was allegedly cited for trespassing at some unspecified place, at some unspecified time

12  "a number of years ago" (id., ¶ 75).  However, Mr. Conroy is not a plaintiff in this case, this case is not a

13  class action, and Mr. Conroy is not alleged to be a member of HA! (which lacks standing, anyway).

14  Any citation Mr. Conroy received is irrelevant and insufficient to confer standing *on the Plaintiffs*.[20]  As

15  for Mr. Simone, he alleges no facts in support of his claim that he was cited for trespassing, such as

16  where it occurred, and makes no connection to the encampment abatement at the Park.  The anti-

17  camping ordinance does not criminalize homelessness and the Eighth Amendment claim fails.

18          **J.      Plaintiffs' Claims for Violation of the Fourth and Fourteenth Amendments Fail**

19          If unsheltered individuals are provided with meaningful notice and an opportunity to be heard

20  before their unattended but unabandoned property is seized and destroyed, there will be no Fourth or

21  Fourteenth Amendment violations.  *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1032 (9th Cir. 2012).

22

23  _____

    [19] In *O'Callaghan v. City of Portland*, the Court noted that while the ordinance in question *did* provide
24  for criminal prosecution, the plaintiff had not alleged that he was arrested, charged, or convicted, or
    asserted any facts showing a "credible risk of prosecution" despite his camps being swept twenty-five
25  times.  *Id.*, 2020 WL 265197, at *1 (D. Or. Jan. 17, 2020).
    [20] To the extent Plaintiffs claim their passing mention of state trespass laws in ¶ 35 (which do provide
26  for criminal prosecution) are sufficient to allege a threat of criminal prosecution, the enforcement of
    trespass laws on private property does not constitute an Eighth Amendment violation.  See *Sullivan*,
27  2017 WL 4922614 at *4 (involving a transit district); see FAC, Ex. A (notice of trespass on private
    property).  Regardless, there are no allegations any properly named Plaintiff has been charged with
28  criminal trespass or has a credible risk of prosecution.

Defs' Notice of Motion and Motion to Dismiss Plts' Second Amended Complaint; Memo of P&A [21-cv-10027-EMC]

1

### 1.   The Fourth Cause of Action Still Fails as a Matter of Law

2

Plaintiffs allege only two instances of potential violations of the Fourth Amendment: (1) the

3

seizure of Plaintiff Jonathan Thomas Holdway's vehicle (SAC, ¶ 116); and (2) the seizure of Plaintiffs

4

Erickson's and Simone's property (id., ¶ 115).  They are the only three Plaintiffs who could potentially have

5

standing to assert a Fourth Amendment claim and none of the three has alleged sufficient facts to state a claim.

6

See *Friends of the Earth,* 528 U.S. at 180-181 (plaintiff must allege injury to have standing).

7

First, the impounding of Mr. Holdway's vehicle is completely unrelated to the City's planned

8

abatement and/or the efforts to help Plaintiffs obtain shelter.  Plaintiffs admit Mr. Holdway's vehicle

9

was impounded for lack of registration, in violation of the Vehicle Code.  SAC, ¶ 116.  One exception to

10

the general rule that a warrantless seizure is unreasonable under the Fourth Amendment is the

11

"community caretaking" doctrine, which allows police officers to impound "vehicles from the streets

12

when they 'jeopardize public safety and the efficient movement of vehicular traffic.'"  *Sandoval v. City*

13

*of Sonoma*, 912 F.3d 509, 516 (9th Cir. 2018).  Impounding a vehicle whose registration has expired

14

falls under the community caretaking exception and is a reasonable seizure under the Fourth

15

Amendment.  See *Leslie v. City of Sand City*, 615 F.Supp.2d 1121, 1126 (N.D. Cal. 2009); see also

16

Vehicle Code § 22651(o)(1)(A); *Crago v. Knackle*, 2020 WL 3073771 at * 3 (E.D. Cal. 2020).

17

Second, the alleged seizure and destruction of Plaintiff Erickson's "building materials" at some

18

unspecified point in time is far too vague to state a claim for unreasonable seizure.  See SAC, ¶ 59.  See

19

*Starr*, 652 F.3d at 1216 (allegations of the complaint must be "sufficiently detailed to give fair notice to

20

the opposing party of the nature of the claim so that the party may effectively defend against it").  The

21

same is true of Mr. Simone's claim that he lost unspecified "artwork and other personal items" at

22

unspecified times.  SAC, ¶ 75.  Nevertheless, Plaintiff Erickson already conceded in the FAC that his

23

property was seized *after* a notice to vacate and debris removal had been placed and Plaintiffs concede

24

generally that such notices are issued as part of City's encampment abatement process.  FAC, ¶ 49 and

25

Ex. A; SAC, ¶¶ 22, 27, 31, 35, 107.  Mr. Simone also specifically indicates that he received notice.  Id.,

26

¶ 75.  In *Sullivan v. City of Berkeley*, the Court found the plaintiffs were not likely to succeed on the

27

merits of their claim for seizure of property in violation of the Fourth and Fourteenth Amendment where

28

the City policy was to give Plaintiffs "an opportunity to remove their personal effects," via a 72-hour

1  notice, and to "notif[y] of the location of any seized property" that was stored.  2017 WL 4922614, at *6

2  (N.D. Cal. Oct. 31, 2017).  Here, the SAC alleges that the City has posted 72-hour notices to vacate and

3  debris removal prior to conducting abatements of the Park.  See SAC, ¶¶ 22, 27, 31, 35, 107, Ex. A.

4  These notices indicated that all personal property is to be removed by a certain date, and any property

5  not removed by that date will be considered abandoned.  Id.  The notices further indicated that the

6  property would be stored and held for safekeeping for ninety (90) days and included information about

7  how to reclaim any property that was seized.  Id.  Thus, any seizure of property was not unreasonable.[21]

8  ### 2.  The Fifth Cause of Action Still Fails as a Matter of Law

9  Plaintiffs similarly fail to allege a due process violation.  At the outset, Plaintiffs fail to allege

10  how any specific property of any specific Plaintiff was allegedly taken without due process.  All

11  Plaintiffs allege is that the City "seized and destroyed unhoused residents personal property including

12  Plaintiffs Simone, Holdway, Erickson's, and others similarly situated persons Homeless Action!

13  represents."  SAC, ¶ 121.  This is a conclusion.  There is no Fourteenth Amendment violation alleged,

14  and therefore this cause of action does not state a claim by any Plaintiff against the City.  Nevertheless,

15  as a matter of law there has not been, nor will there be, a due process violation for any seizure of

16  property, because the City has provided sufficient notice and a method to recover any seized property.

17  See Sullivan, 2017 WL 4922614, at *6; see SAC, ¶¶ 22, 27, 31, 35, 107, Ex. A.

18  ## IV.    CONCLUSION

19  For the foregoing reasons, the City respectfully requests this Motion to Dismiss be granted in its

20  entirety and that Plaintiffs' claims be dismissed in their entirety.

21  Dated:  May 5, 2022          **ORBACH HUFF & HENDERSON LLP**

22                                             By:____/s/ *Kevin E. Gilbert*_____
23                                                      Kevin E. Gilbert
                                                         Kelly Houle-Sandoval
24                                                      Nicholas D. Fine
                                                         Attorneys for Defendant
25                                                      CITY OF PETALUMA (also erroneously
                                                         sued as the "PETALUMA POLICE DEPARTMENT")

26

27  [21] Plaintiffs reference Art. 1 § 13 of the California Constitution in the caption to the cause of action.
Although Plaintiffs do not attempt to state a separate claim, the rights protected under § 13 of the
28  California Constitution are the same as those protected by the Fourth Amendment.  See, e.g., *Sanchez v. County of San Diego*, 464 F.3d 916, 929 (9th Cir. 2006).

Defs' Notice of Motion and Motion to Dismiss Plts' Second Amended Complaint; Memo of P&A [21-cv-10027-EMC]